1  DONALD KARPEL (SBN NO.61678)
2  ZELLER AND KARPEL
   16633 VENTURA BLVD. SUITE 735
3  ENCINO, CA 91346
   310-273-8444 (TEL.)
4  323-720-8852 (FAX.)

5
6  ATTORNEYS FOR GARY LEFKOWITZ

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 10 2016

Sherri R. Carter, Executive Office/Clerk
By: _____, Deputy
Ishayla Chambers

7

8

9

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA
11             COUNT OF LOS ANGELES-CENTRAL DISTRICT

12                                        BC 623352
13  GARY LEFKOWITZ,              )   Case No:
                                 )
14      PLAINTIFF,               )
                                 )
15  VS.                         )   COMPLAINT
                                 )
16                               )   Breach of Contract
    LESLIE WESTREICH, CITI       )   Breach of Fiduciary Duty
17  MANHATTAN PARTNERS I A       )   Fraud
    CALIFORNIA LIMITED PARTNERSHIP; )  Unfair Competition
18  CITI MANHATTAN PARTNERS II A )
    CALIFORNIA LIMITED PARTNERSHIP; )
19  CITI MANHATTAN PARTNERS III A )
    CALIFORNIA LIMITED PARTNERSHIP; )
20  CITI FRONTIERS PARTNERS A     )   Jury Trial Demanded.
    CALIFORNIA LIMITED PARTNERSHIP; )
21  CITI SOUTH A CALIFORNIA LIMITED )
22  PARTNERSHIP, CITI EQUITY FUND A )
    CALIFORNIA LIMITED            )
23  PARTNERSHIP;CITI USA PARTNERS A )
    CALIFORNIA LIMITED PARTNERSHIP; )
24  AND DOES 1-20,
25
26      DEFENDANTS
27  _____

              GARY LEFKOWITZ V. LESLIE WESTREICH
28                      COMPLAINT
                            1

Plaintiff Alleges:

1) Gary Lefkowitz (referred to herein as Gary Lefkowitz or Lefkowitz) is a resident of the State of California, County of Los Angeles.

2) That Leslie Westreich (referred to herein as Leslie Westreich or Westrich) is a resident of the State of New York. However, the matters asserted herein all occurred in the State of California. The documents evidencing this transaction require that any litigation dealing with the partnership interests and money due thereon is to be commenced in the Los Angeles Superior Court, Central District.

3) That the matters alleged herein occurred in the County of Los Angeles, State of California.

4) That the contracts alleged herein all were entered into in the County of Los Angeles, State of California.

5) That Gary Lefkowitz hired Leslie Westreich as his attorney in 1986 regarding the purchase and operation of the beneficial interests in Columbus Manor Apartments, Westwood House Apartments, Townhouse West Apartments, Highbridge House Apartments.

6) That in connection with Westreich being hired as Lefkowitz's attorney, Westreich obtained confidential information, trade secrets and information relating to the relationship which was and is protected by the Attorney Client Priviledge.

7) That Westreich represented Lefkowitz in securities closings, on the properties Manhattan and other properties.

8) That Westreich represented Lefkowitz in the Transfer of Physical Assets with the Department of Housing and Urban Development.

9) That Westreich represented Lefkowitz in the financing of the investor notes on each of the partnerships which notes were financed by First Women's Bank which was represented by Robinson Silverman, Pearce, Aronsohn and Berman, LLP.

10) That from 1984 through 1994 Westreich represented Lefkowitz in connection with payments issues and disputes with the sellers of the equitable interest that were purchased by Lefkowitz from the sellers of the properties.

11) That Citi Manhattan Partners I, A California Limited Partnership was formed by Lefkowitz in 1986. The entity number with the Secretary of State is 19862800018 and it was formed on

GARY LEFKOWITZ V. LESLIE WESTREICH
COMPLAINT
3

October 7, 1986. The entity is still active with the State of California. Gary Lefkowitz remains the agent for service of process. The Citi Manhattan Partners I limited partnership raised $3,801,600 from 64 investors. Citi Manhattan Partners I, Limited Partnership purchased an equitable interest in and to the Columbus Manor Apartments located at 70 West 93rd Street in New York City, comprising 202 Apartments. That from inception of the Partnership to today, Lefkowitz remains the only General Partner of this partnership that has an equity interest in the partnership.

12) That Citi Manhattan Partners II, A California Limited Partnership was formed by Lefkowitz in 1986. The entity number with the Secretary of state is 19862800017 and it was formed on October 7, 1986. The entity is active with the State of California Secretary of State. Lefkowitz remains the Agent for Service of Process. The Citi Manhattan II Limited Partnership purchased an equitable ownership interest in the Westwood House Apartments located at 50 West 93rd Street in New York City and comprising 154 apartment units. Citi Manhattan Partners, II raised $2,475,000 from 50 investors. That from inception of the Partnership to today, Lefkowitz remains the only General Partner

EXHIBIT A, PAGE 13

of this partnership that has an equity interest in the
partnership.

13) That Citi Manhattan Partners, III a California Limited
Partnership was formed by Lefkowitz in 1986. That Citi Manhattan
Partners III has an entity number with the California Secretary
of State of 19862800020 and was formed on October 7, 1986. The
entity is active in the State of California. Lefkowitz remains
the Agent for Service of process. That Citi Manhattan Partners
III, purchased an equitable interest in the Townhouse House West
Apartments located at 5 West 91st Street in New York city and
comprising 47 apartments. That Citi Manhattan Partners III
raised $920,500 from 33 investors. That from inception of the
Partnership to today, Lefkowitz remains the only General Partner
of this partnership that has an equity interest in the
partnership.

14) That Citi Frontiers Partners, a California Limited
Partnership was formed by Lefkowitz in 1986. That Citi Frontiers
Partners raised $1,202,500 from 33 investors. Citi Frontiers
purchased an equitable interest in and to the Highbridge House
apartments located at 1131-33 Ogden Avenue in New York City and
comprising 400 apartments. That from inception of the
Partnership to today, Lefkowitz remains the only General Partner

EXHIBIT A, PAGE 14

of this partnership that has an equity interest in the partnership.

15) That Citi South Partners, a California Limited Partnership was formed by Lefkowitz in 1986. Citi South Partners raised $125,000 from 3 investors. Citi South Partners purchased on equitable interest in and to the Highbridge House Apartments located at 1131-33 Ogden Avenue in New York City and comprising 400 apartments. That from inception of the Partnership to today, Lefkowitz remains the only General Partner of this partnership that has an equity interest in the partnership.

16) That Citi USA Partners was formed by Lefkowitz in the State of California in 1986. That Citi USA Partners was formed on October 7, 1986 by Lefkowitz under California Secretary of State number 19862810005. That Citi USA Partners is active in the State of California and Lefkowitz is the registered agent for service of process of Citi USA Partners. Citi USA raised $1,612,500 from 37.5 investors. Citi USA Partners purchased an equitable interest in and to the Highbridge House Apartments located at 1131-33 Ogden Avenue, in New York City. That from inception of the Partnership to today, Lefkowitz remains the only General Partner of this partnership that has an equity interest in the partnership.

17) That Citi Equity Fund, a California Limited Partnership was formed by Lefkowitz in 1986 and raised $3,750,000 from 75 investors. That Citi Equity Fund has an entity number of 19860920007 with the California Secretary of State, and was formed on March 31, 1986. Citi Equity Fund is active with the State of California. Lefkowitz remains the Agent for Service of process at the Citi Equity Fund. That Citi Equity Fund purchased an equitable interest in the Columbus Manor Apartments, in the Westwood House Apartments, in the Townhouse West apartments and in the Highbridge House apartments. That from inception of the Partnership to today, Lefkowitz remains the only General Partner of this partnership that has an equity interest in the partnership.

18) That Citi New York Partners I, a California Limited Partnership was formed by Lefkowitz in 1986. That the Citi New York Partners, I, has an entity number of 19862800030 with the California Secretary of States office and is active in the State of California. Lefkowitz remains the Agent for Service of Process on this Limited Partnership. That Citi New York I partners raised 473,668 from 9.666 investors. That from inception of the Partnership to today, Lefkowitz remains the

EXHIBIT A, PAGE 16

1  only General Partner of this partnership that has an equity

2  interest in the partnership.

4  19) That Westreich as Lefkowitz' attorney formed a

5  corporation called TMR, Inc. for Lefkowitz to act as the General

6  Partner in the lower tier Limited Partnerships. TMR, Inc.  was

7  formed in the State of New York, and did business in New York

8  but had as its home base and corporate head quarters in Los

9  Angeles, County. Since inception Gary Lefkowitz has been the

10 sole shareholder in TMR, and has been its sole officer and

11 director. TMR assigned all of is ownership interest in and to

12 the General Partnership interest to Gary Lekowitz. Since the

13 date of inception of TMR, it held legal title to these General

14 Partnership interests for the benefit of Lefkowitz who at all

15 times has been the equitable owner of the General Partnership

16 interests in the Lower Tier Limited Partnerships. That Citi

17 Equity Group, a California Corporation owned a non economic

18 interest in the lower tier partnerships and the actual ownership

19 interest lies in TMR which is still owned by Lefkowitz.

20 20) That in 1984 Lefkowitz formed Citi Equity Group, a

21 California Corporation (hereinafter CEG)

22 21) That CEG was formed to act as a corporate General

23 Partner in Limited Partnerships that would be formed by Gary

GARY LEFKOWITZ V. LESLIE WESTREICH
COMPLAINT
8

Lefkowitz, to purchase, build, syndicate, and operate real estate, primarily apartments buildings in the United States. At all times CEG was headquarted in Los Angeles County.

22) From 1984 to the present, Lefkowitz served as the General Partner in over 270 Limited Partnerships.

23) That the various lower tier partners in which TMR held its interest as a General Partner in the lower tier Limited Partnership Agreements provide that TMR held a 3% interest as a general partner in all items of income, loss, deduction or credit. That Lefkowitz was given a 100% interest in the 3% and this was reflected in annual tax returns with no other portion of the 3% interest being held by anyone. That Lefkowitz held a 25% interest in all sale or refinancing proceeds in the event of a sale of the real estate or a sale of the equitable interest in and to the real estate owned beneficially by each Limited Partnership.

24) That the Limited Partnership agreements for Citi Manhattan I, Citi Manhattan II, Citi Manhattan III, and Citi New York Partners provide that Lefkowitz is entitled to 1% of all items of income, loss deduction or credit until the limited partners receive the return of their invested Capital (not including interest on the investor notes), defined as a priority

return, and thereafter that Lefkowitz was entitled to 25% of each item of income, loss, deduction or credit, including all proceeds from the sale or refinancing of the property or the ownership interest in the property.

25) That the Limited Partnership Agreements for Citi South and Citi Frontiers Partners provides that Lefkowitz is entitled to 1.5% of all items of income, loss, deduction, or credit until the partners received a return of 100% of their invested capital (not including interest on the investor notes), defined as a priority return, and thereafter that Lefkowitz is entitled to a 25% return of all items of income, loss deduction or credit, including proceeds from the sale or refinancing o the property or the ownership interest in the property.

26) That the Limited Partnership Agreements for Citi Equity Fund provides that Lefkowitz is entitled to a 5% interest in all items of income, loss, deduction or credit, until the limited partners received the return of 100% of their invested capital (not including interest on their investor notes), defined as a priority return, and then Lefkowitz was entitled to 25% of all items of income, loss, deduction or credit, including proceeds from the sale or refinancing of the properties or the ownership interest in and to the properties.

EXHIBIT A, PAGE 19

27) That each of the Limited Partnership Agreements for each of the Limited Partnerships (Citi Manhattan Partners I, Citi Manhattan Partners II, Citi Manhattan Partners III, Citi South Partners, Citi Frontiers Partners, Citi New York Partners, and Citi Equity Fund provides that in the event of the removal of Gary Lefkowitz as a General Partner, that the removed General Partner shall retain his interest in the partnership profits, income, losses, deductions and credits as though he remained a General Partner. Lefkowitz has never been removed as the General Partner of these partnerships and TMR has never been removed as the only equity owner of the General Partnership interests at the lower tier Partnerhips.

28) That in or about 1996, Westreich purchased the interest in each of the properties owned by Citi Equity Group, Inc and held title the properties in the name of Affordable Housing General Partnership, LLC. The Citi Equity Group interest held no title or equity in the real estate, but merely held a 0% interest in the partnerships. Westreich utilized information obtained through Lefkowitz as Lefkowitz's attorney and in breach of his fiduciary duty to Lefkowitz to purchase the Citi Equity Group, interest. That Westreich used the confidential information disclosed to him by Lefkowitz to purchase one other

EXHIBIT A, PAGE 20

real estate properties in which Lefkowitz held an interest as well, Stevenson Towers Housing Co, Inc and of Meadow Manor Inc. Westreich now claims to be the chief executive officer of Columbus Manor Inc, Highbridge House, Inc., Westwood House, Inc. and Columbus Manor Inc, and of Meadow Manor Inc.

29) That Westreich was hired by Lefkowitz to purchase the deed of trust on the Manhattan properties owned by a company called Coby, Inc. associated with Integrated Resources. That Westreich used this information to purchase the deed of trust on the properties for 8 cents on the dollar, in or about 1996-1997.

30) That when Westreich purchased the Coby debt, Coby and Affordable Housing General Partners, LLC agreed to leave the limited partners in the partnership with an interest sufficient to cover their basis so that no Limited Partner would have the tax termination of the Partnership or recapture of their interest by the IRS in to the Limited Partnership. That Westreich and his co-conspirator Baruch Singer threatened the Limited Partners that if they did not agree to their proposal that Westreich, Singer and Affordable Housing General Partner and Coby, Inc. would cause the limited partners to be subject so tax recapture and tax liabilities in excess of $40,000,000. That Baruch Singer was well aware that Westreich represented

EXHIBIT A, PAGE 21

Lefkowitz and that the information they were utilizing came from the representations made by Lefkowitz to Westreich. That Westreich suggested to Lefkowitz that Lefkowitz hire Mitchell Green at Robinson Borg to assist with the negotiations and with approaching Coby, Inc. That Westreich did this and benefited from Lefkowitz information and fees paid to Michell Green at Robinson Borg.

31) That Lefkowitz never consented to any reduction of his interest in the upper tier General Partner interest held by Lefkowitz or as to his ownership interest in the 100% interest in each of the lower tier partnerships owned by TMR. Lefkowitz never agreed or to any reduction of his General Partner interest.

32) That Westreich represented to Lefkowitz that this agreement dealt with the limited partners, that the agreement would have no effect on Lefkowitz interest in each of the Limited Partnerships. With Westreich using confidential and attorney client information, and having formed Affordable Housing General Partners, Westreich and Affordable Housing General Partners owed a duty to the Limited Partnership not to purchase debt owed the partnership, except to only earn the actual return on the money invested, but no priority return on

GARY LEFKOWITZ V. LESLIE WESTREICH
COMPLAINT
13

the purchase. The conduct of Westreich and the persons acting in concert with him violates the rule laid down in BT-I v. Equitable Life Assurance Society (1999) 75 Cal.App.4th 1406, which forbids general partners to use other entities to take advantage of the Limited Partners or of the General Partners.

33) That a reasonable person in Lefkowitz shows would not have known that the representations of Westreich were false.

34) That in or about 1993 and in 1994 Westreich asked Lefkowitz to place $500,000 with Westreich for Westreich to hold for Lefkowitz. That Westreich has paid to Lefkowitz $500 per month from June of 1996 to July of 2014 as pro rata payments. That the amount now owned with legal interest in well in excess of $2,000,000 according to proof at trial.

35) That the agreement was for Lefkowitz to hold 75% of the interests in the partnerships and for Westreich to hold a 25% interest in each of the partnerships. By virtue of the fact that Westreich is now attempting to hold 100% of the interests in the partnerships and is using confidential attorney client information and confidential information to thwart Lefkowitz valid demands, he should be entitled to nothing on the limited partnerships.

EXHIBIT A, PAGE 28

36) That the agreement between Lefkowitz and Westreich was that Westreich would be entitled to one quarter of the management fees and that the 75% was to be held by Lefkowitz. The agreement was for the fees to be held by Westreich for Lefkowitz and invested by Westreich for Lefkowitz. That Westreich never paid Lefkowitz the amount of money held by him for Lefkowitz after demand in 2015.

37) That the pattern of Westrich deceiving investors began in 1998 when Sini Partners Invested $800,000 in Sini Asscociates, LTC which was formed to be a General Partner in Henry Street Associates. Henry Street Associates owned a parcel of land in New York City. The $800,000 was to be used along with a mortgage to purchase the Henry Street property. The purpose of the partnership was to purchase the Henry Street Property which was an apartment building and to convert the apartment building into cooperative apartments or condominium apartments.

38) That the offering materials and scheme were developed by Leslie Westreich who prepared the offering materials for Henry Street.

39) That the offering materials developed by Westreich stated that Westriech would guarantee up to $500,000 of the Sini Limited Partners investment.

40) That the offering materials were sent through the mails and by the wires to the Sini Limited Partners in or about 1988 by Westreich. That these representations were not true when made by Westreich. That Westreich did not disclose that he lacked any ability to perform on the $500,000 guarantee. That Westreich fails to inform Sini that the mortgage to be placed on the Henry Street property was to be a secret profit to Westreich all to the detriment of the Sini Limited Partners. That Westriech thereafter caused Henry Street to file a Bankruptcy Action in the Southern District of New York.

41) That in or about April of 1990 an action was filed against Westreich claiming that he had committed a violation of the anti fraud provisions of the United States Securities laws and particularly a violation of Section 19(a) and Rule 10b-5 of the Federal Securities laws in connection with Westreich's involvement and non-discloure of the true facts relating to a loan made by Granulation Technologies, Inc. and bearing civil case no. 88-3316 in the United States District Court for the District of New Jersey.

42) That in or about 1988 Jane Holzer and Lenny Holzer and East Side Development Corp and HS Realty filed a civil action against Leslie Westreich and Baruch Singer relating to $500,000

EXHIBIT A, PAGE 25

invested by Jane and Lenny Holzer and East Side Development Corp and HS Realty Corp. The suit alleged that a $1,300,000 phony mortgage was placed on the property by Westreich and Singer which was not disclosed to Jane Holzer, Lenny Holzer, East Side Development and HS Realty Corp and HS Realty Corp. She suit alleged that $500,000 had been deposited into the Westreich's attorney client trust account and dissipated by Westriech for his own needs rather than for the clients as agreed upon.

43) That in or about 1990 Westreich transferred all of his ownership interest in and to the cooperative apartment located at 210 W. 90th St. Apt. 3B, to his wife Shira Westreich. That this transfer of the cooperative apartment was made for inadequate consideration and with the intent to defraud investors. That the subject of this apartment was and is the primary residence of Leslie Westreich and his then wife Shira Westreich at the time.

44) That in or about July of 1991, that Westreich filed a chapter 11 Bankruptcy in the Southern District of New York.

45) That on or about May 17, 1991 that Westreich borrowed $212,000 from Morgan Guarantee Trust and thereafter transferred said funds to a secret numbered account at the Liechtensteinish Landesbank in Vadus, Liechenstein bearing account number 17344.

46) That this account number 17344 was in the name of Ian Markofsky who was at the time a client of Westreich, a partner of Westreich in business transactions and a close personal friend of Westreich who lived at 219 W. 90th St. in New York. By participating with Westreich in this fraud, and deceipt, Westreich and Markofsky formed a criminal conspiracy.

47) That on January 24, 1992 a meeting of creditors and an examination of Westreich occurred. At this hearing and examination of Westreich he stated he had no bank accounts abroad within 2 years of the date of his bankruptcy petition.

48) That in the Westreich Bankruptcy Petitions, filed with the Federal Bankruptcy Courts, under penalty of perjury, Westreich declared he had not transferred any property to any insiders within one year of the bankruptcy and had not made any voidable preferences or transfer's within 90 days of the Bankruptcy. These representations were false when made.

49) That the transfer account 17344 was not disclosed by Westreich in the Bankruptcy Petition, or in the Bankruptcy Schedules or in the post petition discovery proceedings in which Westreich was a party.

50) That Westreich's co-conspirator, Ian Markofsky on or about January 14, 1992 filed a chapter 7 bankrupcy in his name in the Southern District of New York. This Bankruptcy was filed approximately 7 months after the receipt by Markofsky of the $212,000 from Westreich on or about May 17, 1991. That Markofsky did not disclose the secret bank account in his name at the Liechtensteinisch Landesbank in Vaduz Liechtenstein into which Westreich had transferred the $212,000.

51) That in or about 1992 a criminal complaint was filed in Liechtenstein against Westreich at the request of Morgan Guarantee Trust.

52) That the Westreich Bankruptcy case was converted from one under Chapter 11 to one under Chapter 7 or about July 30, 1993.

54) That in or about 1994, Westreich was the subject of a complaint filed by the New York State Bar Association wherein the State of New York sought to discipline Westreich for fraud and for conflict of interest along with failure to make truthful disclosures to clients in a conspiracy to defraud clients along with Westreich's brother. Westreich's brother ended doing prison time.

55) That in or about 1994 Westreich was disbarred by the New York Bar Association and thereby prohibited from practicing law in the State or Federal Courts in New York.

56) That these facts were as set forth in paragraphs 37 to paragraph 55 were material and were not disclosed to Lefkowitz prior to Lefkowitz depositing and entrusting Westreich with $500,000 in or about 1993-1994 which was to be held by Westreich in trust for Lefkowitz.

57) That had Lefkowitz known of these facts he would not have deposited and entrusted Westriech with the $500,000.

58) That in or about 2006, Westreich with the consent of Lefkowitz sold the Citi Manhattan I building, the Citi Manhattan II building and the Citi Manhattan III building for a price represented by Westreich to be in excess of $135,000,000. Lefkowitz has learned that the amount actually paid was well in excess of that amount, and will seek leave of court to reflect the actual amount gained by the sale of the properties.

59) That at or after the time of the sale, Westriech began to invest in numerous real estate projects, each time representing to Lefkowitz that Lefkowitz owned 75% and that

EXHIBIT A, PAGE 29

Westreich owned 25%. Westriech bought Lefkowitz legal books and supported Lefkowitz as he made money for Lefkowitz.

60) That Westreich formed Coby Group, LLC, Coby Housing Group, Coby Realty Corp, The Copy Group,LLC, Coby LP, Coby Grand Concourse LLC, 1777 Grand Consourse, Suncor Communications Group, Portofino Biscayne II, LLC, Coburn Delaware Trust, KND Equity LLC, Nile MM, Gold Seal LLC, Concord Building Services, Inc., Pershing Fertilizer and Nutrients LLC, Portofino Biscayne I LLC, Portofino Biscayne III LLC, Sea Gold LLC, Portofino Biscayne LLC, Vitalis Health Minerals, LLC, The Coby Group, LLC of Florida, Woodhaven Realty Corp a Pennsylvania Corporation, Kelzyme Mining Partners, Kelsyme Partners, Coby Kelzyme Partners, LLC. With funds from the $135,000,000 in sales proceeds belonging to Lefkowitz as to 75%.

61) That in or about 2014, Leslie Westriech took some $10,000,000 from the sale of the Manhattan properties and invested in the Kelzyme Mine located in Mill City Nevada. The Kelzyme Mine is a seabed of coral calcium that is enriched with 56+ Minerals. The coral calcium has been lying beneath the Nevada desert for over 200 million years. It was not until the last 40 years that Kelzyme was discovered by Milton Chrisensen. Lesie Westreich now claims that his interests in the mine at the

EXHIBIT A, PAGE 30

Kelzyme mine is worth over $2,000,000,000. This property was bought with Lefkowitz monies.

62) That since the sale of the Manhattan properties Westreich and his son Adam and his ex wife Shira have invested in over 100 or more real estate transactions with funds coming from the sale of the Manhattan properties. Westreich brags that he uses his son Adam Westreich to invest, as Westriech's disbarment and other bad acts have hampered his ability to do deals or close deals and he used his son Adam Westreich close the deals. That Westreich proudly states that his company does well over $520,000,000 to a billion dollars of sales a year with funds from the sale of the Manhattan properties.

## BREACH OF CONTRACT

63) Lefkowitz realleged paragraphs 1-62 as though fully set forth herin.

64) That Lefkowitz and Westreich had a contract for the holding and safe keeping of the $500,000 from 1993-1994 to present.

65) That Lefkowitz and Westreich had an agreement with respect to the confidential and attorney client information given to Westriech.

EXHIBIT A, PAGE

66) That Lefkowitz and Westreich had an agreement share the mangagement fees from managing the real estate.

67) That Westreich breached the contract in May to June of 2015 by not paying over to Lefkowitz the $500,000 plus accrued interest.

68) That Westreich breached the contract by not giving to Lefkowitz his 75% of the mangagment fees.

69) That Westreich breached his contract with Lefkowitz by not giving to him his 75% interest in the proceeds of the sale of the Manhattan properties and all that was made by Westreich on investing the sums to the amount of over $2,000,000,000.

### Breach of Fiduciary Duty

70) That Lefkowitz reallges paragraphs 1-62 as though fully set forth herein.

71) That there was a fiduciary duty between Lefkowitz and Westreich.

72) That Westreich breached that duty.

73) That damages in excess of $2,000,000,000 are due to Lefkowitz.

EXHIBIT A, PAGE 32

74) That Lefkowitz is entitled to punitive damages as awarded by the court.

## Fraud

75) Lefkowitz realleges paragraphs 1-62 as though fully set forth herein.

76) That Westreich made the promises to Lefkowitz without the intention to perform them.

77) That Lefkowitz only learned of Westreich's intention not to support his agreements between May and June of 2015.

78) That Lefkowitz has been damaged in the amount of over $2,000,000,000 for the fraud.

79) That Lefkowitz is entitled to punitive damages by the court for Westreich's fraud.

## Unfair Competition

80) That Lefkowitz reallges paragraphs 1-62 as though fully set forth herein.

81) That by Westreich's conduct as allged herein he has violated the provisions of California Business and Professions Code section 17200.

EXHIBIT A, PAGE 33

82) That Westreich's conduct was of unfair competition, practices that are unlawful and practices that were unfair and fraudulent.

83) That Lefkowitz is entitled to damages for the breach of this section in an amount in excess of $2,000,000,000.

84) That Lefkowitz is entitled to punitive damages as determined by the court.

That Lefkowitz is entitled as follows:

1) For damages in excess $2,000,000,000 as to each cause of action.

2) For punitive damages as awarded by the court as to all but the Breach of Contract action.

3) For such other relief as is proper.

Dated: July 10, 2016

Donald Kampel, Attorney
Attorney for Gary Lefkowitz