GARY LEFKOWITZ
7447 N. Figueroa St. Suite 200
Los Angeles, CA 90041
213-820-0303
Gershonne@gmail.com

Plaintiff in Pro Se

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-16-16

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GARY LEFKOWITZ,** )<br>)<br>**PLAINTIFF,** )<br>)<br>**VS.** )<br>)<br>**LESLIE WESTREICH;SHIRA SEIDEL** )<br>**WESTREICH; ADAM WESTREICH;** )<br>**BARUCH SINGER; TRIAD, INC. A NEW** )<br>**YORK COPRORATION, THE TRIAD** )<br>**GROUP, LLC; THE COBY GROUP, LLC,** )<br>**A DELAWARE LIMITED LIABLITY** )<br>**COMPANY; AFFORDABLE HOUSING LLC** )<br>**A NEW YORK LIMITED LIABILITY** )<br>**COMPANY, DELANCY INDUSTRIAL RE-** )<br>**HAB. CORP. A NEW YORK** )<br>**CORPORATION.** )<br>)<br>**DEFENDANTS.** | Case No: 1:16-cv-06845-JGK<br><br>FIRST AMENDED COMPLAINT<br><br>Breach of Contract<br>Breach of Fiduciary Duty<br>Fraud<br>RICO<br><br><br>Jury Trial Demanded. |

Plaintiff Alleges:

1)     Gary Lefkowitz (referred to herein as Gary
Lefkowitz or Lefkowitz) is a resident of the State of

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

California, County of Los Angeles.

2) That Leslie Westreich (referred to herein as Leslie Westreich or Leslie Mark Westreich) is a resident of the State of New York. The documents evidencing this transaction require that any litigation dealing with the partnership interests and money due thereon is to be commenced in the Los Angeles Superior Court, Central District. After Westreich admitted to service of process in California, this case was transferred to the Southern District of New York by the Los Angeles Federal Court, for the convenience of the witnesses. Westreich operates his business under various names, such as the Triad Group, Triad Capital Management, The Coby Group, Affordable Housing LLC (dba Aries Management) and many others. Westreich was a co-conspirator as alleged herein. Westreich as person trained as a lawyer, knows that a General Partner in a Partnership or those acting in concert with him, cannot purchase a partnership debt and foreclose as against the Partnership, as this would be a breach of fiduciary duty, a breach of contract, fraud, unfair competition, and would allow the court to cancel the transaction under the laws set forth to Quiet Title to Real

2

Estate. That from 1995 Westreich and Lefkowitz entered into a business arrangement, where Lefkowitz would not oppose Westreich and Singer buying the Citi Equity Group General Partner interest in numerous partnerships, and that Westreich and Singer would be entitled to a 25% ownership interest and Lefkowitz would have a 75% ownership interest. That this agreement existed from 1995 to 2016, and that Lefkowitz was not damaged until 2016, as alleged herein.

3) Shira Seidel Westreich (Shira Westreich) was a citizen of the State of New York when the actions alleged herein occurred. Shira Westreich served as the President of Defendant The Triad Group, as alleged herein and acted as a co-conspirator, and as an aider and abettor, as alleged herein.

4) Adam Westreich is a citizen of the State of New York. Adam Westreich is the vice president of the Triad Group as alleged herein and is the vice president of The Triad Group Management, LLC and of the Triad Group as alleged herein, and a control person at Affordable Housing LLC and of Aries Capital a DBA by which Affordable Housing did Business. Adam Westreich was a co-conspirator as alleged herein and as an aider and abettor, as alleged

herein.

5) That Baruch Singer is a resident of the State of New York. That Singer owns by himself or with Leslie Westreich, Triangle Management located at 95 Delaney Street, in Manhattan. That according to the New York Post, in an article by Jack Newfield, Singer claims to own a 25% interest in and to three apartment buildings at issue in this case, but was never a general or limited partner. Those buildings are Columbus Manor located at 70 West 93rd St, Manhattan, and owned by Citi Manhattan Partners I, a California Limited Partnership, and by Citi Equity Fund. Both Citi Manhattan Partners I and Citi Equity Fund are entities in which Gary Lefkowitz is a General Partner. That Singer claims an ownership interest in the Westwood Apartments located at 50 West 93d Street in Manhattan, and owned by Citi Manhattan Partners I and by Citi Equity Fund, in which Gary Lefkowitz is a General Partner and in which Baruch Singer is not a limited or General Partner. Singer also claims to own a 25% interest in the Townhouse West apartments, located at 5 West 91st Street, in Manhattan, and is owned by Citi Manhattan Partners III, and by Citi Equity Fund. Gary Lefkowitz is a general partner in both Citi

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

Manhattan Partners III, and of Citi Equity Fund. Singer is
neither a limited or general partner in either Citi
Manhattan Partners III, or in Citi Equity Fund. This claim
as to ownership in the 3 Manhattan Properties (Columbus,
Westwood and Townhouse West) were also claimed in a
publication called TenantNet Forum found at
WWW.tenant.net/phpBB3/viewtop.php?f=3&t=3445. Baruch Singer
is alleged to be, one of the worst slum lords in Manhattan.
Singer is a co-conspirator as alleged herein. That in the
paperwork purchasing the Citi Equity Group interests in the
partnerships from the Bankruptcy Court in Minnesota, Baruch
Singer was identified as a partner of Affordable Housing,
LLC, as was Leslie Westreich.

6) That Morty (Morte) Yashar is a resident of the
State of New York. Mr. Yashar is a principal and partner of
Leslie Westreich in an entity called The Coby Group, LLC.
Mr. Yashar is a co-conspirator as alleged herein.

7) That Brian Glicksman is a resident of the State of
New York and acted as a co-conspirator with the other named
Defendants.

8) That Triad Inc., is believed to be a New York
Corporation or a Delaware Corporation, licensed to do

business in the State of New York, and is a co-conspirator as alleged herein.

9) The Triad Group, LLC is a New York Limited Liability Company, and is also a New York Corporation, and is a co-conspirator as alleged herein.

10) The Coby Group, LLC is a Delaware Limited Liability Company and is a co-conspirator as alleged herein.

11) The Coby Group, LLC is a New York Limited Liability Corporation and is a co-conspirator as alleged herein.

12) Coby Housing Corp. is a New York Limited Corporation and or a Delaware Corporation licensed to do business in the State of New York, and is a co-conspirator as alleged herein.

13) The Jonathan Company-TW is a New York Limited Partnership or Corporation, and is a co-conspirator as alleged herein.

14) The Jonathan Company-CM is a New York Limited Partnership or Corporation, and is a co-conspirator as alleged herein.) The Highbridge House Company, is a New

York Corporation or Limited Partnership, and is a co-conspirator as alleged herein.

15) Delancy Industrial RE-HAB. Corporation is a New York Corporation, controlled by Baruch Singer and by Leslie Westreich.

16) That Columbus Manor Inc, is a New York Corporation, and is a co-conspirator as alleged herein.

17) That Westwood House, Inc. is a New York Corporation, and is a co-conspirator as alleged herein.

18) That Highbridge House, Inc. is a New York Corporation, and is a co-conspirator as alleged herein.

19) That Affordable Housing, LLC is a New York Limited Liability Company, and is a co-conspirator as alleged herein.

20) At all times herein mentioned, each of the Defendants and each of their Parents, Officers, Employees, Directors, Subsidiaries, Affiliates, Successors, Predecessors, Agents, or Members, have pursued a common course of conduct, acted in concert with, and conspired with, and aided and abetted one another to accomplish the wrongs complained of herein. Each Defendant was the agent

of each of the other Defendants, and was at all times
herein mentioned, acting within the course and scope of
that agency relationship. Each of the Defendants are liable
as the direct participant in, and a co-conspirator and
aider and abettor of, the wrongs alleged in this complaint.
That each person knowingly participated the conduct
alleged. That as aiders and abettors each defendants aided
and abetted two of the predicate acts. That each person
actually knew of the breach, and did not have constructive
knowledge of the Breach. That the persons acting as co-
conspirators or aiders and abettors are Morte Yashir, Brian
Glucksman, and the persons listed in paragraphs 6, 7, 11,
12, 13, 14, 15, 16, 17, 18. That the conduct described
herein, existed until 2016, as Leslie Westreich with the
assistance of the other co-conspirators, and as their co-
conspirator supported Lefkowitz at the rate of $500 per
month from 2006 until 2015, and sent checks to Lefkowitz's
cousin Irvin Rushall to support Lefkowitz dozens of times
from 1996 to 2015. For Example, in 2003, Westriech sent
Lefkowitz $2,0000. For example, there was a $2,000 dollar
check made payable by Westreich for Lefkowitz, on an
account at Washington Mutual on September 2, 2004 bearing

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

check number 6090. That there was a check made payable by
Westreich for Lefkowitz on July 6, 2006 in the amount of
$4,000 bearing check number 105 on Chase Bank. That on
September 6, 2006 there was a check made payable by
Westreich for Lefkowitz on September 20, 2006 in the amount
of $2,000, check number 109 on Chase Bank. That on December
15, 2009 Westreich made a check for Lefkowitz for $3,400
bearing check number 231 on HSBC Premier. That on October
29, 2010 Westreich made a check for $2,000 for Lefkowitz,
bearing check number 331 on HSBC Premier. That on February
8, 2011 Westreich made a check for $2,000 for Lefkowitz
bearing check number 606 written on HSBC Premier. That on
October 12, 2011 Westreich made a check for Lefkowitz in
the amount of $2,000 bearing check number 652 written on
HSBC Premier. That on March 27, 2012 Westreich made a check
for Lefkowitz in the amount of $2,500 bearing check number
693 and written on HSBC Premier. That on February 6, 2013
Westreich made a check for Lefkowitz in amount of $3,000
bearing check number 747 written on HSBC Premier. That on
August 6, 2013 Westreich made a check for Lefkowitz in the
amount of $2500 bearing check number HSBC Premier and
bearing check number 791. That on March 7, 2014 Westreich

made a check for Lefkowitz in the amount of $2,500 bearing
check number 7026 and written on Chase Bank. All of these
checks were send through the United States Mails to another
state other than New York, and were written on Federally
insured banks.

21) That Westreich bought religious books for
Lefkowitz at Artscroll/Mesorah Press from 1996 to 2015,
including the entire Talmud which would arrive twice per
month to Lefkowitz. Westreich also bought Lefkowitz
religious books at West Side Judiacia. This was all part of
the scheme to prevent Lefkowitz from knowing he had been
defrauded, that a breach of fiduciary duty had taken place,
that the contracts had been breached and to prevent
Lefkowitz from suing under RICO.

22) That each of these payments and books or magazines
of gifts were understood that they were part of a
conspiracy and overt acts to make Lefkowitz believe he had
not been damaged by Westreich, Shira Westreich, Adam
Westreich and by Baruch Singer, and their co-conspirators
or aiders and abettors.  Westreich continually stated to
Lefkowitz that "if I had f-cked you, then why would I be
sending you money and religious books and gifts." That the

10

conspiracy continued until its aim had been achieved, or it was abandoned, or otherwise terminated, and absent any withdrawal, a conspirators participation in the conspiracy is presumed to continued until the last overt act by any of the conspirators. The last act was in June of 2016. That these mailings of checks and of religious books and Newspapers were all done in the limitations period and were plausibly done in furtherance of the conspiracy. Every act in furtherance of the conspiracy is regarded as a renewal of the unlawful agreement and the conspiracy continued so long as overt acts in furtherance of the conspiracy were done. It is axiomatic that acts of the conspirator are attributable to his co-conspirators and may be considered for purposes of determining the Statute of Limitations. Because Lefkowitz offers at least one act in furtherance of the conspiracy scope within the statute of limitations, the actions is not barred by any statute of limitations. Subsequent acts designed to "Lull" a victim into believeing no scheme occurred, is sufficient to constitute an act in furtherance of the scheme. The checks and books and papers and gifts can support a continuing conspiracy where they were designed to lull the victim into a false sense of

security, postpone their ultimate complaint to authorities, and therefore make the apprehension of the defendants less likely than if no such mailings had taken place. The mailings need not contain misrepresentations, nor must they contribute directly to the deception of the Plaintiff. Even mailings which are innocent or routine where the mailing is part of the execution of the scheme as conceived by the perpetrators at the time. Even mailings that take place after a scheme has been effectuated may continued within the prohibition so long as they are necessary to the scheme.

23) As General Partners to Lefkowitz, both Leslie Westreich and Baruch Singer owed Lefkowitz a duty as fiduciaries to Lefkowitz, since they controlled Affordable Housing LLC, which purchased the general partner interests owned by Citi Equity Group, Inc. from the Federal Bankruptcy Courts in 1995. The statute of limitations should be tolled because both Leslie Westreich and Baruch singer fraudulently concealed certain crucial facts despite the defendants duty to disclose them to Lefkowitz, and therefore engaged in passive concealment. As General Partners of Affordable Housing LLC, both Leslie Westreich

12

and Baruch Singer owed Lefkowitz a fiduciary duty and were obligated to conduct the partnership affairs with the utmost good faith, fairness and loyalty. In such a fiduciary situation, fraudulent concealment occurs if the party under the fiduciary duty fails to meet its obligation to inform the other party of facts underlying the claim. Even where there is no fiduciary relationship, "it is nonetheless fundamental that a person who speaks has a duty to disclose enough to prevent his words from being misleading. A statement disclosing favorable information, but omitting all reference to material adverse or unfavorable facts breaches that duty. The principal is applicable here, as it is plainly the fact that the Defendants engaged in fraudulent concealment. In the present case, Lefkowitz has plead out a case of for passive concealment. Leslie Westreich and Baruch Singer were General partners of Affordable Housing LLC, which then controlled the entities in which Citi Equity Group was then a General Partner, along with Lefkowitz. The other Defendants assisted them in the fraud. As such the General Partners and those assisting them owed Lefkowitz a fiduciary duty in that capacity. Lefkowitz pleads that the

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-iGK

Defendants engaged in a campaign of misrepresentations and omissions which was calculated to cover up the fraud, breach of fiduciary duty, breach of contract and RICO counts themselves.

24) Lefkowitz has pled a claim for RICO, in that he has allged that the defendants concluded an enterprise through a pattern of racketeering activity based on at least two predicate acts committed within a ten year period, 18 U.S.C. 1961(5), 1962(b),(c) and (d) and through the use of the mails to mail matters to Lefkowitz in an from New York to Lefkowitz in states other than New York to effectuate their fraud and by the sending of legal instruments through the interstate mails to Lefkowitz, and to others, all in violation of 18 U.S.C. 1341, of wire fraud in violation of 18 U.S.C. 1343 and of travel fraud under 18 U.S.C. 2314.

25) That Westreich bought subscriptions to the New York Times for Lefkowitz, a subscription to the Jewish Press, The Wall Stree Journal, and gave Lefkowitz daughter money and bought gifts as Lefkowitz directed. In 2009 Westreich came to Terminal Island Prison and shook hands with Lefkowitz that Lefkowitz had not been damaged and that

14

Westreich was holding over a billion dollars for Lefkowitz. A photo was taken of this meeting. Then again in 2014 Westreich visited Lefkowitz at the Taft prison and once again stated that Westreich was holding Lefkowitz money, and that Lefkowitz had not been damaged. That prior to 2006, Westreich always claimed he was running the properties as the General Partner, and that Lefkowitz had not been damaged. Westreich as a General Partner or controlling person to the General Partner in each of the Partnerships never told Lefkowitz that he or persons acting with him had purchased the notes securing the properties at issue and had foreclosed. Westreich as a General Partner or controlling person of a General Partner had a duty to and a fiduciary duty to inform Lefkowitz that the properties were subject of a foreclosure. Westreich as the General Partner and or controlling person of a General Partner had a duty to inform Lefkowitz of a foreclosure and of the fact that Westreich or persons aligned with Westreich had purchased Partnership or corporate debt and were foreclosing on the properties or on the corporation that held the properties at a lower tier. This lawsuit is timely in that Lefkowitz did not discover these events until 2016, and the

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

applicable statute is 6 years or 2 years from the date that
Lefkowitz discovered the fraud, the breach of fiduciary
duty, the breach of contract, and the unfair business
practices, and issues dealing with the quiet title. Since
the original suit was filed on June 10th, 2016, the
complaint is timely and is not barred by any Statute of
Limitations issue.

26) That under the doctrine of fraudulent concealment,
the statute of limitations will be tolled if the Plaintiff
pleads with particularity, either active concealment or
passive concealment. In order to establish active
concealment, Lefkowitz must prove that the Defendants took
subsequent affirmative steps in addition to the original
fraud to prevent Lefkowitz from discovering the fraud.
Where there is a case of active concealment, the plaintiff
is not required to establish due diligence, the statute of
limitations is tolled until the plaintiff has actual
knowledge of the defendants fraudulent conduct.

Passive concealment occurs when the defendant commits fraud
but then takes no action to disguise the fraud from the
plaintiff. In order the establish passive concealment, the
plaintiff must prove that the defendants were general

16

partners or an attorney who owes Lefkowitz a fiduciary duty in that capacity. Then the plaintiff must prove that the defendants engaged in a detailed active campaign of misrepresentations and omissions which was calculated to cover up the fraud itself. For example, the plaintiff must prove that the defendants actively misrepresented, or concealed certain material facts. Lefkowitz has done this as to Westreich as his partner, as his attorney, and the fiduciary duty's that arise therein. Lefkowitz has done this as to Baruch Singer as to his becoming a General Partner or a person that controlled a general partner and thus created a fiduciary duty. Lefkowitz has done this as to Baruch Singer Company Triangle Industrial Re-Hab Corp in which the $500,000 given to Westriech was maintained, as Westreich stated the amounts used to buy the interests at the foreclosure sail were Lefkowitz's own money, as to the Citi Manhattan I Partners, Citi Manhattan II Partners, Citi Manhattan III Partners, Citi Equity Fund, and the Highbridge Apartments. Lefkowitz has made out his case against Adam Westreich who is a chief operating officer of Affordable Housing LLC of Aries and of Triad and as against Shira Westreich who acted as the president of Triad and who

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

actively assisted Leslie Westreich in concealing these events from Lefkowitz. Westreich acknowledged to Lefkowitz that it was Lefkowitz's efforts that had led to his great wealth. Shira Westreich often thanked Lefkowitz for the opportunity for Leslie Westreich as he was broke when Lefkowitz went to jail, and Shira knew that Lefkowitz had allowed Leslie to get rich off of Gary Lefkowitz. Adam Westreich also thanked Lefkowitz for his help in getting Leslie Westreich back on his feet by allowing Leslie to run the New York properties. Leslie Westreich stated that his wife Shira and Adam stated that if Westreich did not see Lefkowitz in California in 2009 and in 2014, that he need not come back home. Shira stated to Lefkowitz how much Lefkowitz had helped her family and made them financially independent and that they owned it all to Lefkowitz. That these people were conspirators with Westreich and Singer and aided and abetted the fraud alleged herein and the breach of fiduciary duty as alleged herein.

27) That Lefkowitz is allowed to plead the Delayed Discovery Rule during the time that Lefkowitz was unaware of the claim or that a claim had accrued. Leslie Westreich continually told Lefkowitz that Lefkowitz had not been

18

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

damaged in any manner and that Westreich and the other co conspirators or aiders and abettors had made Lefkowitz money of over $2,000,000,000 from the sale of the properties, and that the money was safe. The delayed discovery rule applies in this case where the injury or the act causing the injury for the Plaintiff is difficult to detect, and it does not require that the injury be impossible to detect. The delayed discovery rule applies from the date of the last overt act committed in furtherance of the conspiracy. Since these are California Limited Partnerships the rules set forth in *Gryczman v. 4550 Pico Partners, Ltd*, apply, 147 Cal App. 3d 805 (200?_, *People v. Anthar* 5 Cal Rptr.3d 9 )2003). The statute of Limitations is tolled until the Plaintiff sustains damage and discovers it or it should have been discovered against the defendants., *Bekins Wide Word Van Services* 45 Cal. App. 3d 984 (1975), *April Enterprises v. KTTV* 147 Cal.App.3d 805 (1983), *Angeles Chemical Co. v. Spencer and Jones* 44 Cal.App.4th 112 (1996). In California the statute of limitations is 3 years for fraud and 4 years for breach of fiduciary duty, Wyatt v. Union Mortgage Co. 74 Cal.App.3d 104 (1977). There is also a 2 year window extending the

19

statute for 2 years when a person is in jail under Code of Civil procedure 352.1. Thus any statute is extended by two years. The statute is 2 years for Inducing Breach of Contract, *Kenworthy v. Brown* 248 Cal.App.2d 298 (1967). However the California rule is that a civil conspiracy accrues on the date of the last commission of the last overt act, *Schessler v. Keck* 125 Cal.App.2d 827, 832-33. In California under Code of Civil Procedure 338, the statute is 3 years. However there is an exception where the wrongful taking is by a fiduciary and he or she has concealed material facts that give rise to the cause of action, *Bono v. Clark*, 103 Cal. App.4th 1409 )2002). The statute of limitations is tolled until the Plaintiff discovers or should have discovered the existence of the conversion claims against a fiduciary, *Strasberg v. Odyssey Group, Inc.* 51 Cal.App.4th 906 (1996). Thus, in California, accrual is delayed until the plaintiff is aware of his or her injury and its cause, *Jolly v. Eli Lilly & Co.* 44 Cal.3d 1103, 1109 (1988). This discovery rule protects those who are ignorant of their causes of action through no fault of their own. *Naftzger v. American Numismatic Society* 42 Cal.App.4th 421 (1996). In California, so long as

the person continues to commit a wrongful acts in furtherance of the conspiracy to harm another, he or she cannot claim unfair prejudice at the filing of a claim against him or her due to the disturbance of any justifiable repose built on the passage of time. In California it is not only the date of the last overt act, but it is the date on which the plaintiff discovers that such an act has occurred which controls *Eenack v. County of Los Angeles* 60 Cal. App. 4th 637. In the present case, since the defendants did not admit that Lefkowitz has lost anything and continued to admit he was not damaged and continued to send him money, religious books, newspapers, magazines, and gifts, it is the sending of these items constituted a new overt act in furtherance of the conspiracy, at which time the statute would begin to run against, *People v. Beaumont*, 111 Cal.App.4[th] 102 (2003), *Wyatt v. Union Mortgage Co.* 24 Cal.3d at p.766. Thus, the conspiracy did not end until the date of the last act pursuant to the conspiracy. Here, each time a check was received or a book or magazine was received until July of 2015, did the conspiracy begin to run for the statute of limitations, *Schlesser v. Keck* 125 Cal.App.2dd 827. And in

California, the delayed accrual is viewed as particularly appropriate where the relationship between the parties is one of a special trust involving a fiduciary relationship or a privileged relationship. Here we have a partner in a partnership breaching their fiduciary duty to Lefkowitz and the acts by Leslie Westreich of obtaining confidential information as Lefkowitz's attorney and using that information with the co-defendants to damage Lefkowitz. *Moreno v. Sancnez* 106 Cal. App.4[th] 1423. Here the discovery rule protects Lefkowitz whose cause of action is preserved despite his diligent investigation, and he is blameless of his injuries due to the conduct of the Defendants. In California there is an estoppel to prevent the defendants from pleading the Statute of Limitations under Evidence Code 623 which states that whether there is an estoppel depends on these facts, 1) representation or concealment of a material fact, 2) With knowledge of the actual facts, 3) the other party was ignorant of the facts, 4) with the intent to harm the later, 5) the party must have been induced to act upon it, *Campbell v. Scripps* 78 Cal.App.4[th] 1328, 1335 (2000). In California the statute of limitations does not begin to run until the plaintiff has reason to

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

suspect an injury and some wrongful cause. A plaintiff is required to conduct a reasonable investigation after becoming aware of the injury and is charged with knowledge of the information that would have been revealed by such an investigation. *Fox v. Ethicon Endo-Surgery* 35 Cal.4th 7971 (2005).

28) That Gary Lefkowitz hired Leslie Westreich as his attorney in 1986 regarding the purchase and operation of the beneficial interests in Columbus Manor Apartments, Westwood House Apartments, Townhouse West Apartments, Highbridge House Apartments.

29) That in connection with Westreich being hired as Lefkowitz's attorney, Westreich obtained confidential information, trade secrets and information relating to the relationship which was and is protected by the Attorney Client Privilege.

30) That Westreich represented Lefkowitz in securities closings, on the properties Manhattan and other properties.

31) That Westreich represented Lefkowitz in the Transfer of Physical Assets with the Department of Housing and Urban Development.

32) That Westreich represented Lefkowitz in the financing of the investor notes on each of the partnerships which notes were financed by First Women's Bank which was represented by Robinson Silverman, Pearce, Aronsohn and Berman, LLP.

33) That from 1984 through 1994 Westreich represented Lefkowitz in connection with payments issues and disputes with the sellers of the equitable interest that were purchased by Lefkowitz from the sellers of the properties.

34) That Westreich represented Gary Lefkowitz and Mortgage Conduit of America in 1992-1994 in connection with obtaining long term financing on Partnerships in which Gary Lefkowitz was a General Partner.

35) That Citi Manhattan Partners I, A California Limited Partnership was formed by Lefkowitz in 1986. The entity number with the Secretary of State is 19862800018 and it was formed on October 7, 1986. The entity is still active with the State of California. Gary Lefkowitz remains the agent for service of process. The Citi Manhattan Partners I limited partnership raised $3,801,600 from 64 investors. Citi Manhattan Partners I, Limited Partnership purchased an equitable interest in and to the Columbus

Manor Apartments located at 70 West 93rd Street in New York City, comprising 202 Apartments. That from inception of the Partnership to today, Lefkowitz remains the only General Partner of this partnership that has an equity interest in the partnership.

36) That Citi Manhattan Partners II, A California Limited Partnership was formed by Lefkowitz in 1986. The entity number with the Secretary of state is 19862800017 and it was formed on October 7, 1986. The entity is active with the State of California Secretary of State. Lefkowitz remains the Agent for Service of Process. The Citi Manhattan II Limited Partnership purchased an equitable ownership interest in the Westwood House Apartments located at 50 West 93rd Street in New York City and comprising 154 apartment units. Citi Manhattan Partners, II raised $2,475,000 from 50 investors. That from inception of the Partnership to today, Lefkowitz remains the only General Partner of this partnership that has an equity interest in the partnership.

37) That Citi Manhattan Partners, III a California Limited Partnership was formed by Lefkowitz in 1986. That Citi Manhattan Partners III has an entity number with the

25

California Secretary of State of 19862800020 and was formed on October 7, 1986. The entity is active in the State of California. Lefkowitz remains the Agent for Service of process. That Citi Manhattan Partners III, purchased an equitable interest in the Townhouse House West Apartments located at 5 West 91st Street in New York city and comprising 47 apartments. That Citi Manhattan Partners III raised $920,500 from 33 investors. That from inception of the Partnership to today, Lefkowitz remains the only General Partner of this partnership that has an equity interest in the partnership.

38) That Citi Frontiers Partners, a California Limited Partnership was formed by Lefkowitz in 1986. That Citi Frontiers Partners raised $1,202,500 from 33 investors. Citi Frontiers purchased an equitable interest in and to the Highbridge House apartments located at 1131-33 Ogden Avenue in New York City and comprising 400 apartments. That from inception of the Partnership to today, Lefkowitz remains the only General Partner of this partnership that has an equity interest in the partnership.

39) That Citi South Partners, a California Limited Partnership was formed by Lefkowitz in 1986. Citi South

Partners raised $125,000 from 3 investors. Citi South
Partners purchased on equitable interest in and to the
Highbridge House Apartments located at 1131-33 Ogden Avenue
in New York City and comprising 400 apartments. That from
inception of the Partnership to today, Lefkowitz remains
the only General Partner of this partnership that has an
equity interest in the partnership.

40) That Citi USA Partners was formed by Lefkowitz in
the State of California in 1986. That Citi USA Partners was
formed on October 7, 1986 by Lefkowitz under California
Secretary of State number 19862810005. That Citi USA
Partners is active in the State of California and Lefkowitz
is the registered agent for service of process of Citi USA
Partners. Citi USA raised $1,612,500 from 37.5 investors.
Citi USA Partners purchased an equitable interest in and to
the Highbridge House Apartments located at 1131-33 Ogden
Avenue, in New York City. That from inception of the
Partnership to today, Lefkowitz remains the only General
Partner of this partnership that has an equity interest in
the partnership.

41) That Citi Equity Fund, a California Limited
Partnership was formed by Lefkowitz in 1986 and raised

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

$3,750,000 from 75 investors. That Citi Equity Fund has an entity number of 19860920007 with the California Secretary of State, and was formed on March 31, 1986. Citi Equity Fund is active with the State of California. Lefkowitz remains the Agent for Service of process at the Citi Equity Fund. That Citi Equity Fund purchased an equitable interest in the Columbus Manor Apartments, in the Westwood House Apartments, in the Townhouse West apartments and in the Highbridge House apartments. That from inception of the Partnership to today, Lefkowitz remains the only General Partner of this partnership that has an equity interest in the partnership.

42) That Citi New York Partners I, a California Limited Partnership was formed by Lefkowitz in 1986. That the Citi New York Partners, I, has an entity number of 19862800030 with the California Secretary of States office and is active in the State of California. Lefkowitz remains the Agent for Service of Process on this Limited Partnership. That Citi New York I partners raised 473,668 from 9.666 investors. That from inception of the Partnership to today, Lefkowitz remains the only General Partner of this partnership that has an equity interest in

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

the partnership.

43) That Westreich as Lefkowitz' attorney formed a
corporation called TMR, Inc. for Lefkowitz to act as the
General Partner in the lower tier Limited Partnerships.
TMR, Inc. was formed in the State of New York, and did
business in New York but had as its home base and corporate
head quarters in Los Angeles, County. Since inception Gary
Lefkowitz has been the sole shareholder in TMR, and has
been its sole officer and director. TMR assigned all of is
ownership interest in and to the General Partnership
interest to Gary Lefkowitz. Since the date of inception of
TMR, it held legal title to these General Partnership
interests for the benefit of Lefkowitz who at all times has
been the equitable owner of the General Partnership
interests in the Lower Tier Limited Partnerships. That Citi
Equity Group, a California Corporation owned a non economic
interest in the lower tier partnerships and the actual
ownership interest lies in TMR which is still owned by
Lefkowitz.

44) That in 1984 Lefkowitz formed Citi Equity Group, a
California Corporation (hereinafter CEG).

45) That CEG was formed to act as a corporate General

Partner in Limited Partnerships that would be formed by Gary Lefkowitz, to purchase, build, syndicate, and operate real estate, primarily apartments buildings in the United States. At all times CEG was headquarter in Los Angeles County.

46) From 1984 to the present, Lefkowitz served as the General Partner in over 270 Limited Partnerships.

47) That the various lower tier partners in which TMR held its interest as a General Partner in the lower tier Limited Partnership Agreements provide that TMR held a 3% interest as a general partner in all items of income, loss, deduction or credit. That Lefkowitz was given a 100% interest in the 3% and this was reflected in annual tax returns with no other portion of the 3% interest being held by anyone. That Lefkowitz held a 25% interest in all sale or refinancing proceeds in the event of a sale of the real estate or a sale of the equitable interest in and to the real estate owned beneficially by each Limited Partnership.

48) That the Limited Partnership agreements for Citi Manhattan I, Citi Manhattan II, Citi Manhattan III, and Citi New York Partners provide that Lefkowitz is entitled to 1% of all items of income, loss deduction or credit

30

until the limited partners receive the return of their invested Capital (not including interest on the investor notes), defined as a priority return, and thereafter that Lefkowitz was entitled to 25% of each item of income, loss, deduction or credit, including all proceeds from the sale or refinancing of the property or the ownership interest in the property.

49) That the Limited Partnership Agreements for Citi South and Citi Frontiers Partners provides that Lefkowitz is entitled to 1.5% of all items of income, loss, deduction, or credit until the partners received a return of 100% of their invested capital (not including interest on the investor notes), defined as a priority return, and thereafter that Lefkowitz is entitled to a 25% return of all items of income, loss deduction or credit, including proceeds from the sale or refinancing o the property or the ownership interest in the property.

50) That the Limited Partnership Agreements for Citi Equity Fund provides that Lefkowitz is entitled to a 5% interest in all items of income, loss, deduction or credit, until the limited partners received the return of 100% of their invested capital (not including interest on their

31

investor notes), defined as a priority return, and then
Lefkowitz was entitled to 25% of all items of income, loss,
deduction or credit, including proceeds from the sale or
refinancing of the properties or the ownership interest in
and to the properties.

51) That each of the Limited Partnership Agreements
for each of the Limited Partnerships (Citi Manhattan
Partners I, Citi Manhattan Partners II, Citi Manhattan
Partners III, Citi South Partners, Citi Frontiers Partners,
Citi New York Partners, and Citi Equity Fund provides that
in the event of the removal of Gary Lefkowitz as a General
Partner, that the removed General Partner shall retain his
interest in the partnership profits, income, losses,
deductions and credits as though he remained a General
Partner. Lefkowitz has never been removed as the General
Partner of these partnerships and TMR has never been
removed as the only equity owner of the General Partnership
interests at the lower tier Partnerships.

52) That in or about 1995, Westreich purchased the
interest in each of the properties owned by Citi Equity
Group, Inc and held title the properties in the name of
Affordable Housing, LLC. The Citi Equity Group interest

32                FIRST AMENDED COMPLAINT
          Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

held no title or equity in the real estate, but merely held a 0% interest in the partnerships. Westreich utilized information obtained through Lefkowitz as Lefkowitz's attorney and in breach of his fiduciary duty to Lefkowitz to purchase the Citi Equity Group, interest. That Westreich used the confidential information disclosed to him by Lefkowitz to purchase one other real estate properties in which Lefkowitz held an interest as well, Stevenson Towers Housing Co, Inc and of Meadow Manor Inc. Westreich now claims to be the chief executive officer of Columbus Manor Inc, Highbridge House, Inc., Westwood House, Inc. and Columbus Manor Inc, and of Meadow Manor Inc.

53) That Westreich was hired by Lefkowitz to purchase the deed of trust on the Manhattan properties owned by a company called Coby, Inc. associated with Integrated Resources. That Westreich used this information to purchase the deed of trust on the properties for 8 cents on the dollar, in or about 1995-1997.

54) That when Westreich purchased the Coby debt, Coby and Affordable Housing General Partners, LLC agreed to leave the limited partners in the partnership with an interest sufficient to cover their basis so that no Limited

33

Partner would have the tax termination of the Partnership
or recapture of their interest by the IRS in to the Limited
Partnership. That Westreich and his co-conspirator Baruch
Singer threatened the Limited Partners that if they did not
agree to their proposal that Westreich, Singer and
Affordable Housing General Partner and Coby, Inc. would
cause the limited partners to be subject so tax recapture
and tax liabilities in excess of $40,000,000. That Baruch
Singer was well aware that Westreich represented Lefkowitz
and that the information they were utilizing came from the
representations made by Lefkowitz to Westreich. That
Westreich suggested to Lefkowitz that Lefkowitz hire
Mitchell Green at Robinson Borg to assist with the
negotiations and with approaching Coby, Inc. That Westreich
did this and benefited from Lefkowitz information and fees
paid to Michell Green at Robinson Borg.

55) That Lefkowitz never consented to any reduction of
his interest in the upper tier General Partner interest
held by Lefkowitz or as to his ownership interest in the
100% interest in each of the lower tier partnerships owned
by TMR. Lefkowitz never agreed or to any reduction of his
General Partner interest.

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

56) That Westreich represented to Lefkowitz that this agreement dealt with the limited partners, that the agreement would have no effect on Lefkowitz interest in each of the Limited Partnerships. With Westreich using confidential and attorney client information, and having formed Affordable Housing General Partners, Westreich and Affordable Housing General Partners owed a duty to the Limited Partnership not to purchase debt owed the partnership, except to only earn the actual return on the money invested, but no priority return on the purchase. The conduct of Westreich and the persons acting in concert with him violates the rule laid down in *BT-I v. Equitable Life Assurance Society* (1999) 75 Cal.App.4th 1406, which forbids general partners to use other entities to take advantage of the Limited Partners or of the General Partners. Similar provisions exist under New York law, that forbids General Partners from purchasing partnership debt and foreclosing against it.

57) That the rules in the State of California where the operative Partnerships were formed, and which still exist and in which Gary Lefkowitz remains a General Partner state in *BT-I that Equitable* no longer willing to be a

general partner learned that a bank as a creditor of the partnership was interested in selling a loan that was owed by the Partnership. That Equitable agreed to buy the loan at a discount. Then Equitable foreclosed on the note, but did not try to sell the projects or file a bankruptcy for the Partnerships. The courts stated that a "Partnership is a fiduciary relationship, and partners are held to the standards of duty of a trustee in their dealings with each other. Partners are trustees for each other and in proceedings connected with the with the conduct of the partnership and every partner is bound to act in the highest and good faith to his co-partner and may not obtain any advantage over him in the partnership by the slightest misrepresentation, concealment, threat of adverse pressure of any kind." *Leff v. Gunther* 33 Cal.3d 508, 514 ) (1983). This "duty extents to all aspects of the relationship and all transactions between the partners. Each partner occupies the position of a trustee to the other with regard to all the partnership transaction, including the transactions by the firm and constituting the object or purpose for which the partnership was formed. A general partner of a limited partnership is subject to the same

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

restrictions and has the same liabilities to the
partnership and to other partners, as in a general
partnership. One of those things is the duty to account to
the partnership for any benefit, and hold it as a trustee
for any profits, derived without the consent of the other
partners from any transaction connected with the conduct of
the partnership. Quite simply, a general partner or those
acting for the general partner, that purchases a
partnership obligation, cannot foreclose on partnership
property.

58) Since Leslie Westreich and Baruch Singer bought
the Citi Equity General Partnership interest, in an entity
owned by them and foreclosed on it with an entity
controlled by them or one of them, that upon purchasing the
Citi Equity Group interest, they then had a duty as co-
partners or between joint adventures, of a fiduciary
character. *Nelson v. Abraham* 29 Cal. 2d 745, 750 (1947).
*City of Hope Nat. Medical Center v. Genetech* 43 Cal. 4th
375, 386 (2008) (a partnership and joint venture are among
the relationships that impose a "fiduciary obligation to
act on behalf of each other for the benefit of each other
as a matter of law). As such, Leslie Westreich and Baruch

Singer through themselves or persons acting for them or in conspiracy with them in violating the fiduciary relationship are liable as a fiduciaries and as partners and duties as a trustee in their dealings with each other.

59) The rule in the State of California is that there is an obvious and essential unfairness in one partner's attempted exploitation of a partnership opportunity for his own benefit and to the resulting detriment of his copartner. *Leff v. Gunter* 33 Cal.3d 508, 514 (1983). Thus a partner who seeks a business advantage over another person bears the burden of showing complete good faith and fairness to the other. *Laux v. Freed* 53 Cal.2d 512, 522 (1960). *Smith v. Tele-Communications, Inc.* 134 Cal.App.3d 338, 345 (1983)(a fiduciary has the burden of justifying his conduct). This fiduciary relationship extends to the dissolution and liquidation of partnership affairs, as well as to the sale by one partner to another of any interest in the Partnership. *Laux v. Freed* at p 522. The rule in the State of California is that a partner many not dissolve the partnership to gain the business for himself, unless he fully compensates his copartner for his share of the prospective business relationship. *Leff v. Guntner* at p.

515. Such a partnership opportunity may not be appropriated by one partner to the detriment of a copartner even after dissolution. Yet this is what was done by Leslie Westreich by Baruch Singer, by persons that were their co-conspirators and aiders and abettors, such that Leslie Westreich and Baruch Singer got wealthy and Lefkowitz shared nothing on their purchase and foreclosure against a partnership in which they through their entity, Affordable Housing LLC was a co general partner with Lefkowitz. It is also California law in the corporate setting that directors breach their fiduciary relationship to minority stockholders by using their corporate control of the company to obtain an unfair advantage not available to all the stockholders to the detriment of the minority stockholder and without a compelling business purpose for the directors conduct. *Fisher v. Pennsylvania Life Co.* 69 Cal. 2d 506, 523. "Majority shareholders may not use their power to control the corporate activities to benefit themselves alone or in a manner detrimental to the minority. Any use to which they put the corporation to control the corporation must be beneficial to all stockholders and must not conflict with the proper conduct

39

of the corporations business, *Jones v. H.F. Ahmanson & Co.*
1 Cal.3d 93, 108 (1969) In the present case, the order
allowing Affordable Housing run by Leslie Westreich and
Baruch Singer to buy the Citi Equity Group interest
contained a provision that Lefkowitz would not control the
entity. Westreich told Lefkowitz that this was the only way
he and Singer could buy the Citi Equity Group interests.
Yet the law in the State of California is that self dealing
in whatever form it occurs should be handled with rough
hands for what it is-dishonest dealing. And while it is
often difficult to discover self dealing in mergers,
consolidations, sale of all assets or dissolution and
liquidation, the difficulty makes it even more imperative
that the search be thorough and relentless, Jones at p.111.

60) That Leslie Westreich and Baruch Singer as members
of Affordable Housing LLC, and then as the general partner
of the entitles in which Citi Equity had been a General
partner were employees and members of Affordable Housing
and were bound to treat the other partners in the Citi
Equity partnerships fairly, including Lefkowitz as other
general partner. As the members of Affordable Housing they
had duties to the partnership. When Leslie Westreich and

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

Singer foreclosed through Singer's company, while still being general partners, they breached their duty as fiduciaries and under the *contract to Lefkowitz. Oaktree* Capital Management v. Bernard 182 Cal. App.4[th] 60 (2010). Leslie Westreich and Baruch Singer knew through their business dealings that purchasing a general partner interest from Citi Equity Group would then include a duty to treat all the partners in the partnership with a duty of good faith and fair dealing, and they should know that the claim by Lefkowitz does not begin to accrue until Lefkowitz discovers the fraud, *Day v. Greene*, 59 Cal. 2d 404, 411 (1963). The delayed discovery rule applies here to breaches of contract and to causes of action for fraud and misrepresentation because Lefkowitz could not reasonably discover the fraud flowing from breaches committed in secret until a future time. *April Enterprises Inc. v. KTTV* 147 Cal.App.3d 805, 832 (1983). In this case where the general partner is defrauding Lefkowitz, in a situation involving a breach of a fiduciary duty, Lefkowitz is entitled to rely upon the assumption that his fiduciary is acting in his behalf, meaning Leslie Westriech and Baruch Singer and their entities they controlled were acting in

Lefkowitz behalf as General Partners with a fiduciary duty. *Bedolla v. Logan & Frazier* 52 Cal. App.3d 118, 131 (1975).

61) Under California law since Leslie Westreich and Baruch Singer did acts to benefits themselves and not towards Gary Lefkowitz the foreclosure of the deeds against the Partnerships was invalid as it was a violation of their contractual rights and their fiduciary rights. The foreclosure did not bind the partnerships under California Corporations Code 16301 because the foreclosure was unauthorized and not under the course of business of the partnerships. Lefkowitz is entitled to recover all the amounts that Leslie Westreich and Singer or their affiliates gained from the foreclosure under Corporations Code 16302(b). Indeed, California has a law that when a fiduciary breaches his duty as a trustee that the party suing (here Lefkowitz), can recover all that was gained, even the profits realized by Leslie Westreich and by Baruch Singer or corporations or partnerships in which they controlled. *Women's Fed. Sav. & Loan Ass'n. v. Nevada National Bank*, 811 F. 2d 1255 (19876) which establishes that when a fiduciary's personal interests compete with those of the party to whom the fiduciary duty is owned,

creating the risk that needs of the party may be subordinated to those of the fiduciary , the slighted party may be awarded profits earned from the disloyalty. Thus, Lefkowitz is entitled to all profits earned by Leslie Westreich and by Baruch Singer or their affiliates, for their wrongful conduct, even if above what they received from selling the partnership and investing the proceeds in other business interests.

62) That the conduct of Leslie Westreich and of Baruch Singer violated the provisions of California Law in Corporations Code 15611 which states that the word partner in the California Revised Limited Partnership Agreement means both a general or a limited partner. Thus the liability of Leslie Westreich and of Baruch Singer apply to a limited partner and to another general partner and is identical to his liability to another general partner as well. *Kazanjian v. Rancho Estates* 235 Cal.App.3d 1621 (1991). And their violation violated Corporations Code 15021(1) as Every partner must account to the his partners for any benefit and hold as trustee any profits derived by him without the consent of the other partner. This is in line with the concept that a misappropriating partner holds

as "a trustee" the profits improperly derived. Partnership Law thus incorporates concepts generated in trust law, see *Tri-Growth Center City, Ltd. V. Sildoff Burdman Duignan & Eisenberg* 216 Cal.App.3d 1139, 1150 (1989). When a partnership is created the parties acquire rights and duties based on a fiduciary relationship, Cal. Civil Code 2239.

63) That Leslie Westreich, Baruch Singer and the other co-defendants are found by the law that in California that and the sensible proposition that a partner who buys up a secured obligation of a partnership cannot use the position of a partnership cannot use the position of a secured creditor to subject his or his other partners for immediate repayment of indebtedness. *Thomas v. Schmelzer* 796 P.2d 1026, and *AB Group v. Wertin* 59 Cal. App.4th 1022, 1032 (1997). This is true to the effect that partners are not free to make agreements which destroy the fiduciary character of the partnership relationship. *Appletree Square I, v. Investment Inc.* 494 N.W. 2d 899, 893, and cited as good law in California.

64) That a reasonable person in Lefkowitz shows would not have known that the representations of Westreich were

44

false.

65) That in or about 1993 and in 1994 Westreich asked
Lefkowitz to place $500,000 with Triangle Industrial Re-
Hab. Corp. just in case Lefkowitz went to jail. Leslie
represented he would account for the funds given to
Triangle as if it was a client trust account. That
Westreich has paid to Lefkowitz $500 per month from June of
1996 to July of 2014 as pro rata payments. That it was part
of the conspiracy, that Westreich would support Lefkowitz,
and that it was designed so that Lefkowitz would not
complaint and would not realized that Westreich and his co-
conspirators had done to Lefkowitz. Westreich kept on
telling Lefkowitz from 1995-2016, that Westreich would not
be supporting Lefkowitz if Westreich had hurt or damaged
Lefkowitz. Westreich kept telling Lefkowitz that the
payments each month, proved that Westreich had not damaged
Lefkowitz, and that Lefkowitz could trust Westreich and the
Co-Defendants in that Lefkowitz had not been damaged. That
the amount now owned with legal interest in well in excess
of $2,000,000,000 according to proof at trial. That
Westreich stated that the $1,000 paid at each auction was
from Lefkowitz's funds. Triangle was controlled then by

Baruch Singer and by Leslie Westreich.

66) That the agreement was for Lefkowitz to hold 75%
of the interests in the partnerships and for Westreich to
hold a 25% interest in each of the partnerships. By virtue
of the fact that Westreich is now attempting to hold 100%
of the interests in the partnerships and is using
confidential attorney client information and confidential
information to thwart Lefkowitz valid demands, he should be
entitled to nothing on the limited partnerships.

67) That the agreement between Lefkowitz and Westreich
was that Westreich would be entitled to one quarter of the
management fees and that the 75% was to be held by
Lefkowitz. The agreement was for the fees to be held by
Westreich for Lefkowitz and invested by Westreich for
Lefkowitz. That Westreich never paid Lefkowitz the amount
of money held by him for Lefkowitz after demand in 2015.
That it was only in 2015 that Lefkowitz realized he had
been damaged by Westreich and his co-conspirators.

68) That the pattern of Westreich deceiving investors
began in 1998 when Sini Partners Invested $800,000 in Sini
Associates, LTC which was formed to be a General Partner in
Henry Street Associates. Henry Street Associates owned a

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

parcel of land in New York City. The $800,000 was to be used along with a mortgage to purchase the Henry Street property. The purpose of the partnership was to purchase the Henry Street Property which was an apartment building and to convert the apartment building into cooperative apartments or condominium apartments.

69) That the offering materials and scheme were developed by Leslie Westreich who prepared the offering materials for Henry Street.

70) That the offering materials developed by Westreich stated that Westreich would guarantee up to $500,000 of the Sini Limited Partners investment.

71) That the offering materials were sent through the mails and by the wires to the Sini Limited Partners in or about 1988 by Westreich. That these representations were not true when made by Westreich. That Westreich did not disclose that he lacked any ability to perform on the $500,000 guarantee. That Westreich fails to inform Sini that the mortgage to be placed on the Henry Street property was to be a secret profit to Westreich all to the detriment of the Sini Limited Partners. That Westriech thereafter caused Henry Street to file a Bankruptcy Action in the

47

Southern District of New York.

72) That in or about April of 1990 an action was filed against Westreich claiming that he had committed a violation of the anti fraud provisions of the United States Securities laws and particularly a violation of Section 19(a) and Rule 10b-5 of the Federal Securities laws in connection with Westreich's involvement and non-disclosure of the true facts relating to a loan made by Granulation Technologies, Inc. and bearing civil case no. 88-3316 in the United States District Court for the District of New Jersey.

73) That in or about 1988 Jane Holzer and Lenny Holzer and East Side Development Corp and HS Realty filed a civil action against Leslie Westreich and Baruch Singer relating to $500,000 invested by Jane and Lenny Holzer and East Side Development Corp and HS Realty Corp. The suit alleged that a $1,300,000 phony mortgage was placed on the property by Westreich and Singer which was not disclosed to Jane Holzer, Lenny Holzer, East Side Development and HS Realty Corp and HS Realty Corp. The suit alleged that $500,000 had been deposited into the Westreich's attorney client trust account and dissipated by Westreich for his own needs

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

rather than for the clients as agreed upon.

74) That in or about 1990 Westreich transferred all of his ownership interest in and to the cooperative apartment located at 210 W. 90th St. Apt. 3B, to his wife Shira Westreich. That this transfer of the cooperative apartment was made for inadequate consideration and with the intent to defraud investors. That Shira Westreich admitted this was a fraudulent transfer in a deposition held on April 29, 1992. The subject of this apartment was and is the primary residence of Leslie Westreich and his then wife Shira Westreich at the time.

75) That in or about July of 1991, that Westreich filed a chapter 11 Bankruptcy in the Southern District of New York. That the Chapter 11 proceeding was converted to a Chapter 7. That in 1991-1992 Westreich was Broke. His wife Shira Westreich called Lefkowitz and asked and pleaded that Lefkowitz employ Leslie Westreich as Shira Westreich was afraid that Leslie Westreich might kill himself. That what followed was that Lefkowitz employed Leslie Westreich and Westreich used his position with Lefkowitz to get rich by using confidential information obtained from Lefkowitz to Leslie Westreich's sole advantage.

76) That on or about May 17, 1991 that Westreich borrowed $212,000 from Morgan Guarantee Trust and thereafter transferred said funds to a secret numbered account at the Liechtensteinish Landesbank in Vadus, Liechenstein bearing account number 17344.

77) That this account number 17344 was in the name of Ian Markofsky who was at the time a client of Westreich, a partner of Westreich in business transactions and a close personal friend of Westreich who lived at 219 W. 90th St. in New York. By participating with Westreich in this fraud, and deceits, Westreich and Markofsky formed a criminal conspiracy.

78) That on January 24, 1992 a meeting of creditors and an examination of Westreich occurred. At this hearing and examination of Westreich he stated he had no bank accounts abroad within 2 years of the date of his bankruptcy petition.

79) That in the Westreich Bankruptcy Petitions, filed with the Federal Bankruptcy Courts, under penalty of perjury, Westreich declared he had not transferred any property to any insiders within one year of the bankruptcy and had not made any voidable preferences or transfer's

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

within 90 days of the Bankruptcy. These representations were false when made.

80) That the transfer account 17344 was not disclosed by Westreich in the Bankruptcy Petition, or in the Bankruptcy Schedules or in the post petition discovery proceedings in which Westreich was a party.

81) That Westreich's co-conspirator, Ian Markofsky on or about January 14, 1992 filed a chapter 7 bankruptcy in his name in the Southern District of New York. This Bankruptcy was filed approximately 7 months after the receipt by Markofsky of the $212,000 from Westreich on or about May 17, 1991. That Markofsky did not disclose the secret bank account in his name at the Liechtensteinisch Landesbank in Vaduz Liechtenstein into which Westreich had transferred the $212,000.

82) That in or about 1992 a criminal complaint was filed in Liechtenstein against Westreich at the request of Morgan Guarantee Trust.

83) That the Westreich Bankruptcy case was converted from one under Chapter 11 to one under Chapter 7 or about July 30, 1993. Thus, at the time of Lefkowitz criminal case, Leslie Westreich was broke and only made money on the

51

fraud, breach of fiduciary duty, breach of contract and
RICO allegations alleged herein.

84) That in or about 1994, Westreich was the subject
of a complaint filed by the New York State Bar Association
wherein the State of New York sought to discipline
Westreich for fraud and for conflict of interest along with
failure to make truthful disclosures to clients in a
conspiracy to defraud clients along with Westreich's
brother. Westreich's brother ended doing prison time.

85) That in or about 1995 Westreich was disbarred by
the New York Bar Association and thereby prohibited from
practicing law in the State or Federal Courts in New York.

86) That these facts were material and were not
disclosed to Lefkowitz prior to Lefkowitz depositing and
entrusting Westreich with $500,000 in or about 1993-1994
which was to be held by Westreich in trust for Lefkowitz.

87) That had Lefkowitz known of these facts he would
not have deposited and entrusted Westreich and Baruch
Singer and Triangle Management with the $500,000.

88) That in or about 2006, Westreich with the consent
of Lefkowitz sold the Citi Manhattan I building, the Citi

Manhattan II building and the Citi Manhattan III building for a price represented by Westreich to be in excess of $135,000,000. Lefkowitz has learned that the amount actually paid was well in excess of that amount, and will seek leave of court to reflect the actual amount gained by the sale of the properties.

89) That at or after the time of the sale, Westreich began to invest in numerous real estate projects, each time representing to Lefkowitz that Lefkowitz owned 75% and that Westreich owned 25%. Westreich bought Lefkowitz legal books and supported Lefkowitz as he made money for Lefkowitz.

90) That Westreich formed Coby Group, LLC, Coby Housing Group, Coby Realty Corp, The Copy Group, LLC, Coby LP, Coby Grand Concourse LLC, 1777 Grand Consourse, Suncor Communications Group, Portofino Biscayne II, LLC, Coburn Delaware Trust, KND Equity LLC, Nile MM, Gold Seal LLC, Concord Building Services, Inc., Pershing Fertilizer and Nutrients LLC, Portofino Biscayne I LLC, Portofino Biscayne III LLC, Sea Gold LLC, Portofino Biscayne LLC, Vitalis Health Minerals, LLC, The Coby Group, LLC of Florida, Woodhaven Realty Corp a Pennsylvania Corporation, Kelzyme Mining Partners, Kelzyme Partners, Coby Kelzyme Partners,

LLC., A show and concert ticket broker in New York, A
Medical Staffing Company in California, The Kelzyme Mine
and Research Center in California, The Coby Kelzyme Mine.
All with funds from the $135,000,000 in sales proceeds
belonging to Lefkowitz as to 75%.

91) That in or about 2014, Leslie Westreich took some
$10,000,000 from the sale of the Manhattan properties and
invested in the Kelzyme Mine located in Mill City Nevada.
The Kelzyme Mine is a seabed of coral calcium that is
enriched with 56+ Minerals. The coral calcium has been
lying beneath the Nevada desert for over 200 million years.
It was not until the last 40 years that Kelzyme was
discovered by Milton Chrisensen. Leslie Westreich now
claims that his interests in the mine at the Kelzyme mine
is worth over $2,000,000,000. This property was bought with
Lefkowitz monies.

92) That since the sale of the Manhattan properties
Westreich and his son Adam and his ex wife Shira have
invested in over 100 or more real estate transactions with
funds coming from the sale of the Manhattan properties in
which Gary Lefkowitz was the General Partner. Westreich
brags that he uses his son Adam Westreich and or his wife

54

to invest, as Westreich's disbarment and other bad acts have hampered his ability to do deals or close deals and he used his son Adam Westreich or Shira Westreich close the deals. That Westreich proudly states that his company does well over $520,000,000 to a billion dollars of sales a year with funds from the sale of the Manhattan properties.

93) That Leslie Westreich was an attorney for Lefkowitz, holding Lefkowitz's power of attorney for many years. Leslie Westreich represented Lefkowitz in all investor note closings with Jericho State Capital and Richard Chwatt and with investor note closings with Axon Financial Group, Tom Axon. That Westreich represented Lefkowitz in a REMEC Transaction entitled Mortgage Conduit of America, which received a AA rating on its securities. That Westreich represented Lefkowitz in a transaction in Hartford Connecticut, one in Ft. Payne Alabama, one in Jacksonville Florida, sent letters to state regulators, negotiated a second REMIC entitled Mortgage Conduit of America II and III.

94) That in or about 1993 Lefkowitz hired Robinson Brog Leinwand Greene Genovese and Gluck located at 1345 Avenue of the Americas to negotiate to purchase the Coby

notes for under 10 cents on the dollar. That an invoice
dealing with this was sent to Lefkowitz on 5/01/1996
showing work cone in 1993 and in 1994 for Lefkowitz in the
attempt to purchase the Coby notes at a discount. When
Lefkowitz went to jail Leslie Westreich and Baruch Singer
used the information upon which Leslie was working for
Lefkowitz and used the information for their own good, in
violation of the fiduciary duty Leslie owed to Lefkowitz.

95) That in or July 18, 1995 Leslie Westreich and
Baruch Singer though a company called Coby Housing Corp.
had taken the information as to the purchase of the Coby
notes owned by the Partnership in which Lefkowitz was a
member and for and negotiated to purchase the Coby notes
themseveles with for the benefit of Lefkowitz. That on July
18, 1995 Baruch Singer of Coby Housing Corp and as a
partner in Affordable Housing LLC., entered into a series
of deals with Citi Equity Group, Inc. a corporation owned
solely by Lefkowitz, and with Jonathan Company-CM, Jonathan
Company, WH, with Jonathan Company-TW, with Jonathan
Company HH, and with Citi Manhattan Partners I, Citi
Manhattan Partners II, Citi Manhattan Partners III,  each
of which had Gary Lefkowitz as an individual General

56

Partner. That the goal of the agreement was to permit Baruch Singer, who was operating as an agent of and as a co-conspirator of Leslie Westreich to gain control of the partnerships and to purchase the Coby Debt and to foreclose on each of the partnerships.

96) That on or about August 4, 1995 an order was approved by the Federal Bankruptcy Court in Minnesota approving the sale of the Citi Equity Group interests in each of the partnerships to Affordable Housing General Partner, Inc. or to Affordable Housing LLC. The sale price was $50,000 for the entire Citi Equity Group interest in Citi Manhattan Partners I, Citi Manhattan Partners II, Citi Manhattan Partners III and the Highbridge Housing Partners in which Lefkowitz was a General Partner and a substantial Limited Partner.

97) That in or about December of 1995 that Citi Equity Group, still owned by Lefkowitz entered into an agreement with Affordable Housing LLC, located at 70 West 93d St. New York, the premises that contains the Citi Manhattan I property to increase the purchase price from $5,000 to $50,000. That this Agreement was signed By Affordable Housing LLC by Leslie Mark Westreich (Leslie Westreich).

98) That shortly after this transaction, Leslie began sending Lefkowitz religious books to Lefkowitz who was in prison. The agreement was that Leslie Westreich and Baruch Singer would gain control of the Manhattan and Bronx properties for Lefkowitz and for Leslie Westriech and for Baruch Singer at a 75% split to Lefkowitz and a 25% split for Leslie Westreich and for Baruch Singer.

99) That after Leslie Westreich and Baruch Singer purchased the Coby notes, they did a certificate of sale as to the Citi Manhattan I, Citi Manhattan II, Citi Manhattan III and the Highbridge Housing company or about the 24th of November 1997. That Westreich stated that the $1,000 that was paid for each of the notes was from the $500,000 thousand that Lefkowitz had sent to Westreich to be held by Triangle Industrial Re-Hab Corp. Westreich assured Lefkowitz that Triangle Industrial Re-Hab Corp was acting with information that Westriech has obtained from Lefkowitz while being Lefkowitz's attorney. Westreich assured Lefkowitz that he had nothing to worry about, as the money came from Lefkowitz and both Singer and Leslie Westreich were now controlling the Citi Equity Group interest in each of the partnerships and that they had a fiduciary duty to

Lefkowitz as the other general partner and had a fiduciary duty to Lefkowitz as a result of Leslie Westreich being Lefkowitz attorney.

100) That Westreich continued to talk in phone calls across interstate lines about the Manhattan and Bronx properties. In or about September of 1999 Leslie Westreich told Lefkowitz that there was a case entitled Kruch v. Affordable Housing LLC. Coby Realty Corp, Cody Housing Corp, in an attempt to undo the purchase of the Coby notes. This case was in the Supreme Court of New York as case No. 60607/97 in an opinion by Barry Cozier, Judge. In March of 2000, Leslie Westreich told Lefkowitz as to a new order made in this case also signed by Judge Crozier.

101) That in an article send to Lefkowitz by Leslie Westreich that appeared in Citi Limits Weekly, dated April 2, 2001, Number 273, it states that "Columbus Manor (the property owned by Citi Manhattan Partners I) was build pursuant to the Mitchell Lama program." It states that "HUD would do well to look at Columbus Manor: The high-rise owner Affordable Housing, has already had run ins with regulators. In 1996, finding the building in desperate need of a new elevator and a new roof, the agency demanded a

switch in building management. HUD quickly relented when
Affordable Housing principal Leslie Westreich promised to
improve conditions. To fund the repairs, the feds approved
the 36% rent increase, bringing the average rents to $600
for a one bedroom. HUD had too much faith it turned out. A
year later, an agency audit found building management
(Affordable) had inappropriately spent $28,000 in project
money for staff salaries. Another Affordable Housing owner
is Baruch Singer, perhaps best known for the collapse of
one of his buildings in Harlem in 1995, which killed three
Tenants. Westreich, a lawyer, was disbarred for
"dishonestly, fraud, misrepresentations, and deceit" in a
real estate transaction. Westreich refused to comment for
this story. "These are very very suspicious landords: said
Cynthia Doty, special assistant for State Assemblyman Ed
Sullivan."

102) That Lefkowitz continued to call Westreich and to
communicate with him regarding the Manhattan and Bronx
properties, on May 23, 2002, Lefkowitz sent a letter to
Westreich which was two pages. In it Lefkowitz states
"Please know that if the show g-d forbid was on the other
foot, (meaning that Leslie Westreich was in jail) that

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

Lefkowitz could b there for him...big time." Westreich never

who was now running the Manhattan Properties and Bronx

properties never told Lefkowitz that his interests has been

lost or foreclosed on.

103) That in a letter from Leslie Westreich to

Lefkowitz of May 10, 2002, Leslie Westreich states he tried

to visit Lefkowitz, and that Westreich's mother had

recently passed away. He states that Leslie Westreich and

his wife Shira Westreich speak of you (Lefkowitz) often and

are very distressed at how you were treated in prison.

Westreich states that "Gary, if there is anything I can do

assist you, plead us know." He then states Of course if you

desire that I visit you, I will at once. Also let me know

if you need something to be send to you (Food, Books, etc).

Please forgive me if I have seemed to be insensitive or

uncaring. That is not the case. Our Hearts and prayers go

out to you. Please let us hear from you soon. Your friend,

Leslie.

There was no mention of any foreclosure or lose of

Gary Lefkowitz interests in the Citi Manhattan I, II or III

or his interests in the Highbridge House partnership.

Clearly, Leslie Westreich as the principal of the

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

Affordable Housing LLC, general partner owed Lefkowitz a
fiduciary duty to advise Lefkowitz if his interests were at
risk, and a fiduciary duty as Lefkowitz former lawyer.

104) On June 17th 2002 Westreich wrote to Lefkowitz
stating they he had just returned from Israel where he had
placed his mother in her grave. He stated the affidavit on
Lefkowitz's 2255 arrived. Westreich stated he signed it and
gave Lefkowitz his mobile number. Then Leslie stated best
wishes. There was nothing about the damages to Lefkowitz or
Lefkowitz loss of his economic interests, and this was
probable as neither Baruch Singer or Leslie ever told
Lefkowitz that he had lost his interest in the Manhattan
properties or the Bronx properties.

105) The Lefkowitz received Westreich's Declaration in
support of Lefkowitz 2555 petition. In the Declaration he
states that Leslie Westriech worked as a transactional
attorney for Citi Equity Group from 1986 to 1991. In it he
sates that from February of 1992 to April of 1993, he
served as the ongoing legal transactional counsel for Citi
Equity Group. He states he traveled from New York to Los
Angeles 2 out of every four weeks each month, Monday
through Thursday to work at the Citi Equity offices in

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

Culver City California. He then states that he became
familiar with the occupancy reports for the partnerships in
which Gary Lefkowitz or Citi Equity Group were partners.
Westreich testified that he told Lefkowitz of the Target
Letter issued by the U.S. Attorneys office and that he told
Lefkowitz while he was refueling his jet at Reykjavik
Iceland and that Lefkowitz still returned to Los Angels
that night, and that he came into the office the next say.
Westreich states that he was still an attorney at the time
and that he would speak with Mr. Lefkowitz attorneys of
participate in the discussions as he was still an attorney.
While Leslie Westreich states he ceased working for
Lefkowitz in April of 2003, in fact he continued working
from New York, Westreich admits he was involved in the
Mortgage Conduit of America project which was created by
Mr. Lefkowitz. He admits this transaction received a AA
rating on the securities. He then admits he became working
on a second and a third REMIC transaction, In large 1993 or
early 1994 Westriech admits he began working a letter and
and a package. This was not any warning that Lefkowitz had
been hurt or lost his interests. As a special outside
counsel for Citi Equity Group and for Mr. Lefkowitz in a

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

transaction involving Greenwich Capital Markets then a wholly owned subsidiary of the Long Term Credit Bank of Japan. Greenwich had signed an agreement to finance $80,000,000 of mortgages in partnerships in which Gary Lefkowitz and Citi Equity Group were general partners.

106) On January 3, 2003 Leslie Westreich wrote to Lefkowitz. He states that he send Lefkowitz  He states that we all commit mistakes, Adam did, and so did Abraham, Sarah and Isaac and Rivka, and Jacob and the 10 brothers of Jacob. He states that your family and true friends will always be there for you, but what you have is your faith. He then signs it your friend, Leslie.

107) On July 11, 2003 Lefkowitz wrote to Westreich, again with no mention of a breach of fiduciary duty, fraud, breach of contract or RICO counts.

108) On August 23, 2003 Lefkowitz wrote to Leslie Westreich. Lefkowitz thanked Westreich for a $2,000 check and some issues involving Shira Westreich's mom. There is nothing in the letter regarding Westreich and Baruch Singer stealing Lefkowitz limited partnership interests.

109) On September 26, 2002 there is a card from Shira Westreich, Leslie Westreich and from their kids. It states

64

Happy new year, my your home be blessed with joy and love, fondly Shira Westreich, Leslie and the kids. Still no issue as the Lefkowitz's interest being lost.

110) On February 17th 2004 Lefkowitz wrote to Leslie Westreich and to Baruch Singer regarding the Manhattan I, Citi Manhattan II, and Citi Manhattan III Partnerships and the Citi New York Partnerships. Lefkowitz and that Lefkowitz; interests had been preserved. Any concerned that he had been removed as a General Partner and was asserting his rights as a general Partner or as a removed General Partner. Shortly thereafter, Leslie Westreich spoke with Lefkowitz on interstate telephone calls, and assured him that he still was the General Partner in each of the Partnerships and nothing had come down to change that and that Lefkowitz should relax and understand that Leslie Westreich and Baruch Singer were looking after Lefkowitz' interests and that

111) On May 28, 2004 Lefkowitz wrote to Westreich stating that Leslie had been approved as a visitor to meet with Lefkowitz. Again nothing about any loss of Lefkowitz interest or a foreclosure against Lefkowitz.

112) On July 14th 2004 Lefkowitz wrote to Leslie

65

Westreich. Lefkowitz thanks Leslie for taking a call the prior week, and that Shira Westreich and Lefkowitz has spoken. Lefkowitz then thanks Leslie for sending new religious books to Lefkowitz. Nothing about any foreclosure or a loss of Lefkowitz interests.

113) On May 19, 2005, Lefkowitz writes to Leslie Westreich. Lefkowitz reminds Leslie Westreich that he owes Lefkowitz about $500,000. Lefkowitz expresses interest I the Manhattan realty issues, Meadow Manner, Columbus Manor, Townhouse West and the Highbridge properties. During this letter Lefkowitz expresses that the properties have been subject to condominium conversion. Lefkowitz states this was never discussed with Lefkowitz. When was the decision made and why was Lefkowitz not consulted as the other General partner. Lefkowitz states that as the other general partner, Leslie owes Lefkowitz a duty of Disclosure. Lefkowitz asks for an accounting of all funds. Lefkowitz states that "you are my friend for some 20 years. I do not want this to spin out of control and into a courtroom. Leslie Westreich spoke with Lefkowitz on interstate telephone calls and Leslie Westreich and assured Lefkowitz that there was no condo conversation plan, that Lefkowitz

owned his interests and that Lefkowitz need not be concerned, he was not foreclosed and remained a general partner.

114) On August 24th 2005 Lefkowitz wrote to Leslie Westreich, Then Lefkowitz asks that Leslie send Gary Lefkowitz any co-op converting plans. Once again Leslie Westreich over interstate telephone calls stated there was no condo conversion plan or co-op plan, that Lefkowitz interests were preserved, that he was still a general partner and that there is no condo plan.

115) On December 15th, 2005 Lefkowitz wrote to Westreich. Lefkowitz says an article was in the Wall Street journal about 14 apartments being sold in the Bronx. Lefkowitz asks what "our 400 units in the Bronx built in the 1970's worth today." It must be significantly more. Then Lefkowitz states that should make our Manhattan really, (Columbus Manor, Westwood house and Townhouse west worth $200 to $500 per unit). Lefkowitz spoke to Leslie Westreich after this letter on interstate telephone calls and Westreich stated that the properties had not been sold and that Lefkowitz would be a truly success upon release from prison, as the properties were doing great and that

Manhattan real estate always goes up.

116) On February 1, 2007 Westreich writes to Lefkowitz about an eye infection. He states "I know you have tried a number of times to reach me, I wasn't answering the telephones-sorry. 90% of those dammed calls that do not show a number are from Rabbi's Priests or other assholes asking for money." He states a $2,000 check was mailed to Irvin. He also confirms that he has sent the New York Times, the Wall Street Journal and the Jewish Weekly to Lefkowitz. There was no mention of a breach of fiduciary duty, breach of contract, fraud or RICO events.

117) On March 1, 2006 Lefkowitz wrote to Leslie Westreich. There was no problem here. And Lefkowitz thanks Leslie Westreich for sending Irvin Rushall funds to supply to Gary

118) On August 18th 2006 Lefkowitz writes to Leslie Westreich. In this letter Lefkowitz responds to Leslie Westreich hiring counsel for Lefkowitz in his JP Morgan lawsuit or the planned Koll/GECC lawsuit. Lefkowitz I this letter asks Leslie to pay back some $100,000 that Irvin Rushall had advanced for Lefkowitz. Leslie Westreich stated that he would repay Irvin later, or at the time Lefkowitz

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

got out of jail, as the money was invested for Lefkowitz benefit.

119) On September 20. 2006 one of Leslie's checks arrived which was sent through the mails and was for $2000 dollars.

120) On January 24, 2007 Leslie writes to Irvin Rushall regarding Gary Lefkowitz. He still lists the offices at Columbus Manor as his offices, so it had not yet been should.

121) On May 13th 2007 Westreich writes to Irvin Rushall and sates that if Gary needs anything let me know.

122) On April 7, 2007 Leslie Westreich and Gary Lefkowitz talk. Leslie says he forfeited $4,500,000 on a North Miami property. Leslie said he is in litigation, but will lose it. Leslie says he has purchased properties for Lefkowitz in Niles Michigan, in Rochester New York and in China Town. Leslie stated that his son Adam now works for Leslie and that Leslie can use him as sometimes the banks will not want to do business with Leslie as he was disbarred and filed bankruptcy.

123) On April 25th 2008 Leslie sent Lefkowitz some

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

paperwork on a litigation involving Coby Grand Consours, LLC and several of the banks against JP Morgan Chase and Citi Bank involving a case heard by the Honorable Jacqueline Silberman in case no 1163310/2007.

124) On March 23, 2007 Leslie sends Gary Lefkowitz a number of emails. None of them speak of Lefkowitz losing his interests in the partnerships or being foreclosed out. Then Leslie sends Gary Lefkowitz another email here again nothing of Lefkowitz losing his interests in the partnerships or being foreclosed out.

125) Then on August 31, 2009 Westreich comes to Terminal Island to visit Lefkowitz and they shake hands and take a picture of this event as a testimony as to their agreement, that Leslie will continue to preserve Gary Lefkowitz's General Partnership interests and in the funds that were received by selling the partnership interests and in the equity build up by investing those funds for Gary Lefkowitz. This trip was part of the travel fraud under 18 U.S.C. 2314.

BREACH OF CONTRACT

126) Lefkowitz realleged paragraphs 1-126 as though fully set forth herein.

127) That Lefkowitz and Westreich, Singer and Triangle Management, had a contract for the holding and safe keeping of the $500,000 from 1993-1994 to present.

128) That Lefkowitz and Westreich had an agreement with respect to the confidential and attorney client information given to Westreich.

129) That Lefkowitz and Westreich had an agreement share the management fees from managing the real estate.

130) That Westreich, Singer and Triangle Management, breached the contract in May to June of 2016 by not paying over to Lefkowitz the $500,000 plus accrued interest.

131) That Westreich breached the contract by not giving to Lefkowitz his 75% of the management fees.

132) That Westreich breached his contract with Lefkowitz by not giving to him his 75% interest in the proceeds of the sale of the Manhattan properties and all that was made by Westreich on investing the sums to the amount of over $2,000,000,000.

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

133) That Westreich breached his contract as the De Facto General Partner or the Person controlling the General Partnership interests in Citi-Manhattan Partners I, Citi Manhattan Partners II, Citi Manhattan Partners III, Citi Equity Fund, Citi South, City New York Partners, Citi Frontiers Partners, and those acting in concert with Westreich are liable to Lefkowitz for their active and concerted actions in assisting Westreich in breaching the Contracts. That Westreich and Singer knew of the contract with the Partnerships and with respect to the sharing of money. That Singer and Westreich breached the contract knowing the existence of the contract. That Plaintiff adequately performed on his contract. That Lefkowitz has been damaged in the amount of over $2,000,000 according to proof.

## Breach of Fiduciary Duty

134) That Lefkowitz reallges paragraphs 1-133 as though fully set forth herein.

135) That there was a fiduciary duty between Lefkowitz and Westreich and Singer. That Lefkowitz was a General Partner in each of the Partnerships as alleged. That Westreich and Singer purchased the Citi Equity Group

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

interest in each of the partnerships and ran the
partnerships as the managing General Partner, and both
Singer and Westreich controlled the purchaser of the Citi
Equity Group General Partnership interest to such an extent
that both owned Lefkowitz a Fiduciary duty as the other
General Partner.

136) That Westreich and Singer breached that duty.
That those acting in Concert with Westreich and Singer, and
those aiding and abetting Them in that Breach of Fiduciary
Duty are also to be blamed for that breach of fiduciary
duty and are liable thereon. That Lefkowitz has pled the
existence of a fiduciary duty in Leslie Westreich being
Lefkowitz attorney, and for Leslie Westreich and Baruch
Singer being the control persons of Affordable Housing LLC
which purchased the Citi Equity Group interests from the
Bankruptcy courts in Minnesota in 1995. That Lefkowitz has
been damaged by the Breach of fiduciary duty to the tune of
over $2,000,000,000 as represented to Lefkowitz in meetings
with Leslie Westreich on June 10 and June 13, 2016 in Los
Angeles, another count of Travel Fraud under 18 U.S.C.
2314.

137) That damages in excess of $2,000,000,000 are due

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

to Lefkowitz.

138) That Lefkowitz is entitled to punitive damages as awarded by the court.

Fraud

139) Lefkowitz realleges paragraphs 1-138 as though fully set forth herein.

139) That Westreich made the promises to Lefkowitz without the intention to perform them. That those acting in Concert with Westreich and aiding and abetting him in that Fraud are also to be blamed for that Fraud, and are liable thereon. That Lefkowitz relied upon the representations made to him. That Lefkowitz had no reason not to believe Westreich. That Lefkowitz was damaged by the fraud from Leslie Westreich and by Baruch Singer and their co-conspirators and aiders and abettors.

140) That Lefkowitz only learned of Leslie Westreich's intention not to support his agreements between June of 2016. That Westreich continually told Lefkowitz that he had not been damaged, and that Westreich was holding the money for Lefkowitz and that he was investing the funds. Westreich told Lefkowitz continually, that he would be a

74

very very rich man when he was released from prison. Westreich made these statements and also told Lefkowitz that if he was to hurt Lefkowitz that he would not be supporting Lefkowitz from 1996 to 2015. These Statements were fraudulent. The statements were made in phone calls, and in visits to Lefkowitz at Terminal Island and in Taft (another Travel Fraud count under 18 U.S.C. 2314), and by the continual support from Westreich. The Statements were fraudulent as Westreich did not hold the money for Lefkowitz and was intended to defraud him and then to claim a statute of limitations defense, when in fact, Westreich and those acting in concert with him, were stating Lefkowitz was not damaged, and that he was very rich. That these statements were made with Malice, Intent, Knowledge and other conditions that give rise to a strong inference of fraudulent intent.

141) That Lefkowitz has been damaged in the amount of over $2,000,000,000 for the fraud.

142) That Lefkowitz is entitled to punitive damages by the court for Westreich's fraud.

RICO

143) Lefkowitz realleges paragraphs 1-142 as though

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

fully set forth herein.

101) That the conduct of Leslie Westriech, of Baruch Singer and of their affiliates and co-conspirators or aiders and abettor took place by using the United States Mails to defraud and harm Lefkowitz. The dates of the Mailings are set forth herein. The U.S. Mails were used to mail the materials in interstate trade across borders from New York to Lefkowitz throughout states other than New York.

102) That Westreich's conduct was of unfair competition, practices that are unlawful and practices that were unfair and fraudulent. That those acting in Concert with Westreich and aiding and abetting him in that Unfair Competition, are also to be blamed for that Unfair Competition, and are liable thereon.

103) That Lefkowitz is entitled to damages for the breach of this section in an amount in excess of $2,000,000,000.

104) That Lefkowitz is entitled to punitive damages as determined by the court.

105) Lefkowitz realleges paragraphs 1-104 as though

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

fully set forth herein.

106) That this Court has jurisdiction based upon 18 U.S.C. 1964(c) of RICO (1982) section 27 of the Exchange Act 15 U.S.C. 78aa, 28 U.S.C. 131 and principles of pendent jurisdiction.

107) That this court has jurisdiction of each of the co-defendants pursuant to section 1965(b) of Rico, 18 U.S.C. 1965(b).

108) That venue over this action is proper in this district as under section 1965 (a) of RICO, 18 U.S.C. 1965(a) because the defendants and each of them reside in or are found to have an agent and or transact their business in this district. That in accordance with section 1965(b) of RICO, the ends of justice requires that all defendants be brought before this court. Venue over this action is also proper under 18 U.S.C. 1391(b) because all of the defendants either live in this district or the claims asserted arose in this district.

109) As set forth herein, in connection with the acts, conduct, combination, and conspiracy alleged herein, the defendants and their co-conspirators, directly and indirectly have used the means and instrumentalities of

77

interstate and foreign commerce, including travel in interstate commerce, the use of the United States Mails and Interstate and International Wire Facilities. Many of the acts, as alleged herein and the preparation of the materially false and misleading statements and omissions and the acts comprising the Breach of Contract, Fraud, Breach of Fiduciary Duty and RICO occurred in this district.

110) That the limited partnership interests involved in this case were exempt from registration under Regulation D, but were registered as Securities with each state where each investor was residing pursuant to an SEC exemption, but were in fact securities, and obtained an SEC exemption.

111) That at least since 1995 until June of 2016 the Defendants have engaged and those others acting in concert with them, directly or indirectly have entered into a pattern of racketeering activity. The pattern includes predicate acts together with other predicate acts and unlawful schemes not yet known to plaintiff within the past 10 years.

112) That between August of 1995 through June 13th, 2016, that Defendants and others acting in concert with

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

them have agreed to and conspired among themselves to pursue their unlawful scheme against Lefkowitz. In furtherance of that scheme, Defendants purchased the Citi Equity Group Limited Partnership in each of the partnerships alleged herein. The defendants and each of them and their co-conspirators then purchased a debt owned by each limited partnership, in which Citi Equity Group was a general partner. That then the Defendants and each of them conspired to foreclose against the interests of each limited partnership for their own benefit and not for the benefit of each limited partnership. Then, once the foreclosure transaction was complete after only offering $1,000 for each claim, the Defendants and each of their co-defendants then sold the buildings for over $135,000,000 all for their benefit and nothing for Lefkowitz. That in doing these actions they committed acts of mail fraud in violation of 18 U.S.C. section 1341, wire fraud in violation of 18 U.S.C. 1343, acts of Travel Fraud 18 U.S.C. 2314.

113) That the letters, documents, phone calls, and travel and interstate wires were used to prevent Lefkowitz from knowing that the Defendants and each of them had

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

defrauded Lefkowitz, had breached their contracts, had broken the fiduciary duty, had committed fraud, all in furtherance of their RICO scheme. That none of the Defendants or those who were co-conspirators ever told Lefkowitz until June 14, 2016 that he had been defrauded and that he then owned no interest in each of the partnerships or in the proceeds from each partnership.

114) That each of the false and misleading statements contained in the letters which did not disclose the foreclosure or Lefkowitz not participating in the sale and the proceeds of the sale were material to Lefkowitz and were done with the intention of deceiving Lefkowitz.

115) That the mailing of letters and other matters to Lefkowitz, the wire fraud over the phone and in emails to Lefkowitz across interstate lines, and the travel fraud, the checks to Lefkowitz, the newspapers, religious books and other gifts and the travel fraud the without abiding by their duty to disclose any sale or foreclosure or of the defalcation of Lefkowitz proceeds from the sale and asset purchases was done to deprive Lefkowitz of his interest in each of the partnerships without disclosing that his interests had been sold and that he would share no portion

80

of the sale.

116) That the use of the mails to effectuate the fraud is an indictable offense under 18 U.S.C. 1341. That the use of the wires to perpetuate the fraud is an indictable offense in violation of 18 U.S.C. 1343. That the use of the the travel fraud is an indictable offense in violation of 18 U.S.C. 2314. That the use of mails to send checks in the mails to Lefkowitz is a violation of both 18 U.S.C. 1341 and under 18 U.S.C. 1343.

117) That the transfer of the real estate as alleged herein, was known to be fraudulent and of unconscionable, as was known to all the parties to the transaction.

That Lefkowitz is entitled as follows:

1) For damages in excess $2,000,000,000 as to each cause of action.

2) For treble damages pursuant to 18 U.S.C. 1364(c) of RICO.

3) For punitive Damages on the 2d, 3d and forth causes of action.

4) For an order of this court requiring the defendants

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

and each of them to disgorge their profits and or imposing a constructive trust thereon.

5) For costs of bringing this suit, including reasonable attorney fees and expert witness fees.

6) For an award of prejudgment and post judgment interest on all amounts awarded to the fullest extend of the law.

7) For punitive damages as awarded by the court as to all but the Breach of Contract action.

8) For such other relief as is proper.

Dated: November 14th, 2016

_____
Gary Lefkowitz

## PROOF OF SERVICE

That on November 14th, 2016 I served a copy of this First Amended Complaint on
Mary E. Flynn, Partner at Morrison and Cohen located at 909 Third Avenue, New York,
New York, 10022-4728.

FIRST AMENDED COMPLAINT
Lefkowitz v. Westreich, Case No. 1:11-cv-06845-JGK

Gary Lefkowitz
7447 N. Figueroa St. Suite 200
Los Angeles, CA 90041

213-820-0303

CLERK
UNITED STATES COURT HOUSE
DANILE MOIYNIHAN UNITED STATES COURTHOUSE
500 PEARL ST
NEW YORK, NY 10007

Dear Clerk:

Enclosed please find a First Amended Complaint.

Can you please file this.

Enclosed is a copy of the facing sheet which I would like to get a conformed copy of and
summons which I would like signed and returned to me.

Enclosed please find a self addressed envelope for this.

Thank you very much.

Gary Lefkowitz

RECEIVED
SDNY PRO SE OFFICE
2016 NOV 16 AM 11:00
S.D. OF N.Y.

# edEx
## Express





Align top of FedEx Express® shipping la

Part # 162297V-435 RIT2 APV EXP 08/17

FedEx
Express

ORIGIN ID:ANCA   (213) 820-0303
GARY LEFKAVITZ
7447 N FIGUEROA ST
#230
LOS ANGELES, CA 90041
UNITED STATES US

SHIP DATE: 14NOV16
ACTWGT: 1.00 LB
CAD: 6990581/SSF01722

TO   CLERK
     US DISTRICT COURTHOUSE
     500 NEW YORK

     NEW YORK NY 10007

(000) 000-0000
1M07
P01

REF:
DEPT:

BILL CREDIT CARD

TRK#     7846 4501 1398
0201

XA PCTA

REL#
3785346

E
Express

TUE – 15 NOV 10:30A
PRIORITY OVERNIGHT

10007
NY-US   EWR