UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY LEFKOWITZ

            Plaintiff,

               v.

LESLIE WESTREICH et al.

            Defendants.

Case No. 1:16-cv-06845-JGK

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Y. David Scharf
Mary E. Flynn
Jason P. Gottlieb
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600
*Attorneys for Defendants Leslie Westreich,*
*Shira Seidel Westreich, Adam Westreich,*
*Baruch Singer, Tryad, Inc., The Coby*
*Group, LLC, and Affordable Housing LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 5

    A.  Plaintiff's Conviction, Bankruptcy Proceedings and Property Sale in the Mid-1990s ....... 6

    B.  Plaintiff's Claims All Stem from Events in the Mid-1990s ................................................ 7

    C.  Plaintiff Sued Multiple Other Parties form Prison Over the Same Events ........................ 8

    D.  Plaintiff's Own Exhibits Demonstrate Awareness of His Claims in 2004 ...................... 10

    E.  Westreich Did Not Owe Defendant any Continuing Duty ................................................ 10

    F.  Neither Westreich Nor Singer Owed Defendant any Continuing Duty ............................ 12

    G.  Procedural History .......................................................................................................... 13

ARGUMENT .......................................................................................................... 14

I.      AS A THRESHOLD MATTER, CALIFORNIA LAW
        APPLIES TO THIS MOTION ....................................................................... 14

II.    ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED UNDER
        THE APPLICABLE STATUTES OF LIMITATION ................................... 16

    A.  Statute of Limitation Incarceration Tolling .................................................................... 16

    B.  The Breach of Contract Claim is Time-Barred ............................................................... 16

    C.  The Breach of Fiduciary Duty Claim is Time-Barred ..................................................... 18

    D.  The Fraud Claim is Time-Barred ................................................................................... 19

    E.  The RICO Claim is Time-Barred .................................................................................... 19

III.   THE STATUTES OF LIMITATIONS CANNOT BE TOLLED .............................. 20

    A.  Tolling Does Not Apply When Plaintiff is Aware of Defendant's Identity and
         Potential Liability But Chooses Not to Sue ................................................................... 20

B.  The Discovery Rule Does Not Apply .......................................................... 21

C.  Fraudulent Concealment Does Not Apply ................................................. 23

D.  Fiduciary Tolling Does Not Apply ............................................................ 24

E.  Equitable Tolling Does Not Apply ............................................................ 26

IV.  **PLAINTIFF'S AMENDED COMPLAINT MAKES NO
PLAUSIBLE CLAIMS ............................................................................ 27**

A.  The Amended Complaint Wholly Fails the *Twombly/Iqbal* Plausibility Standard..... 27

B.  Plaintiff Fails to State Plausible Claims Against the Other Individual Defendants ... 29

1.  The Amended Complaint is Implausible as to Shira Westreich .......................... 31

2.  The Amended Complaint is Implausible as to Adam Westreich ......................... 32

3.  The Amended Complaint is Implausible as to the Corporate Defendants............ 32

V.  **SHIRA WESTREICH HAS NOT BEEN PROPERLY SERVED, AND SHOULD
BE DISMISSED ..................................................................................... 33**

**CONCLUSION .......................................................................................... 34**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Abdullahi v. Pfizer, Inc.*,
  562 F.3d 163 (2d Cir. 2009)...................................................................................15

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
  483 U.S. 143, 107 S.Ct. 2759 (1987)....................................................................19

*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009)............................................................................27-28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................14, 27

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007),.....................................................................................14, 27

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
  369 F.3d 212 (2d Cir. 2004).....................................................................................6

*Caribbean Wholesales & Serv. Corp. v. US JVC Corp.*,
  855 F. Supp. 627 (S.D.N.Y. 1994)........................................................................15

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991).......................................................................................6

*Davis v Costa-Gavras*,
  580 F. Supp. 1082 (S.D.N.Y. 1984)......................................................................15

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001)...................................................................................31

*Diffley v. Allied Signal, Inc.*,
  921 F.2d 421 (2d Cir. 1990)...................................................................................14

*Gabelli v. SEC*,
  133 S. Ct. 1216 (2013).............................................................................................2

*Gerena v. Korb*,
  617 F.3d 197 (2d Cir. 2010)...................................................................................15

*Ghartey v. St. John's Queens Hosp.*,
  869 F.2d 160 (2d Cir. 1989)...................................................................................14

iii

*Holland v. Florida*,
    560 U.S. 631 (2010)..................................................................................26

*Johannson v. Wachovia Mortg., FSB*,
    No. 11-cv-02822 WHA, 2012 U.S. Dist. LEXIS 62936 (N.D.Cal. May 4, 2012) .......... 25

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...............................................................30

*Klehr v A.O. Smith Corp.*,
    521 U.S. 179 (1997).........................................................................19, 24

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991)..................................................................6

*Lefkowitz v. Citi-Equity Group, Inc.*,
    146 F.3d 609 (8th Cir. 1998) ...............................................................7

*Leyvas v. Bank of Am. Corp.*,
    601 F. Supp. 2d 1201 (S.D. Cal. 2009).................................................31

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................30

*Maccharulo v. Gould*,
    643 F. Supp. 2d 587 (S.D.N.Y. 2009)...................................................14

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................30

*Orenstein v. Figel*,
    677 F. Supp. 2d 706 (S.D.N.Y. 2009)...................................................5

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)..................................................................6

*Songbyrd, Inc. v. Estate of Grossman*,
    206 F.3d 172 (2d Cir. 2000)................................................................15

*U.S. v. Lefkowitz*,
    125 F.3d 608 (8th Cir. 1997) ............................................................3, 6

*Urenia v. Public Storage*,
       Civ. Action No. 13-01934 DDP (AJWx),
       2014 U.S. Dist. LEXIS 70647 (C. D. Cal. May 22, 2014) .............................................31

*Vincent v. Money Store*,
       915 F. Supp. 2d 553 (S.D.N.Y. 2012).................................................................................14

*Walter v. Drayson*,
       538 F.3d 12447 (9th Cir. 2008) ...................................................................................30

*Wang & Wang LLP v. Banco do Brasil S.A.*,
       No 2:06-cv-00761-JAM-KJM, 2008 U.S. Dist. LEXIS 99158
       (E.D. Cal. Nov. 25, 2008) ...........................................................................................20

*In re Wellpoint Out-of-Network "UCR" Rates Litig.*,
       865 F. Supp.2d 1002 (C.D. Cal. 2011) .........................................................................30

## STATE CASES

*Addison v. State*,
       21 Cal. 3d 313 (1978) ..................................................................................................26

*Alfaro v. Cmty. Housing Imp. Sys. & Planning Ass'n, Inc.*,
       171 Cal. App. 4th 1356 (2009) .....................................................................................25

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*,
       158 Cal. App. 4th 226 (2007) ......................................................................................30

*Balfour, Guthrie & Co. v. Hansen*,
       227 Cal. App. 2d 173 (1964) .......................................................................................21

*Bedolla v. Logan & Frazer*,
       52 Cal. App. 3d 118 (1975) .........................................................................................22

*Bernson v. Browning Ferris Indus. of Cal., Inc.*,
       7 Cal. 4th 926 (1994)....................................................................................................23

*Buffington v. Ohmert*,
       253 Cal. App. 2d 254 (1967) ......................................................................................17

*Carrasco v. Greco Canning Co.*,
       58 Cal. App. 2d 673 (1943) ........................................................................................17

*Casey v. U.S. Bank Nat. Assn.*,
       127 Cal. App. 4th 1138 (2005) ...............................................................................30-31

*Clunin v. First Fed'l Trust Co.*,
    189 Cal. 248 (1922) ........................................................................................................17

*Dover v. Sadowinski*,
    147 Cal. App. 3d 113 (1983) ..........................................................................................20

*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.*,
    122 Cal. App. 3d 834 (1981) ..........................................................................................25

*Grisham v. Philip Morris U.S.A., Inc.*,
    40 Cal. 4th 623 (2007) ....................................................................................................21

*Hatch v. Collins*,
    225 Cal. App. 3d 1104 (1990) ...................................................................................18, 19

*Lantzy v. Centex Homes*,
    31 Cal. 4th 363 (2003) ................................................................................................23, 26

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) ....................................................................................................30

*Lockton v. O'Rourke*,
    184 Cal. App. 4th 1051 (2010) ...................................................................................24-25

*McDonald v. Antelope Valley Community College Dist.*,
    45 Cal. 4th 88 (2008) ......................................................................................................26

*Norgart v. Upjohn Company*,
    21 Cal. 4th 383 (1999) ....................................................................................................21

*Reichert v. General Ins. Co.*,
    68 Cal. 2d 822 (Cal. 1968) .............................................................................................30

*Stalberg v. W. Title Ins. Co.*,
    230 Cal. App. 3d 1223 (1991) .........................................................................................18

*Truong v. Glasser*,
    181 Cal. App. 4th 102 (2009) ..........................................................................................24

## FEDERAL STATUTES

28 U.S.C. § 1404 ................................................................................................... 13, 14-15

28 U.S.C. § 1406 ...............................................................................................................13

## FEDERAL RULES

Fed. R. Civ. P. 8 ................................................................................................................14

Fed. R. Civ. P. 12 .........................................................................................................13, 14

## STATE STATUTES

Cal. Code Civ. Proc. § 337 ........................................................................................ 17-18

Cal. Code Civ. Proc. § 339 ..............................................................................................18

Cal. Code Civ. Proc. § 338 ........................................................................................ 18, 19

Cal. Code Civ. Proc. § 343 ..............................................................................................18

Cal. Code Civ. Proc. § 352.1 ...........................................................................................16

Cal. Code Civ. Proc. § 418.10 .........................................................................................15

Defendants Leslie Westreich ("Westreich"), Shira Seidel Westreich ("Shira"), Adam Westreich ("Adam"), Baruch Singer ("Singer"), Tryad, Inc. ("Tryad"), The Coby Group, LLC ("Coby"), and Affordable Housing LLC ("Affordable Housing"), collectively "Defendants,"[1] respectfully submit this memorandum of law in support of their joint motion to dismiss the November 14, 2016 First Amended Complaint ("Amended Complaint" or "Am. Compl.") filed by plaintiff Gary Lefkowitz ("Plaintiff" or "Lefkowitz").

## PRELIMINARY STATEMENT

This case is a wildly implausible shakedown effort brought by a plaintiff who spent two decades in federal prison, after having been convicted on 45 criminal counts, including fraud on several different courts. Even setting aside, for the purposes of this motion, the nonsensical nature of his claims, this case was brought years and years after all applicable statute of limitations had run. All of the wrongdoing Plaintiff alleges occurred two decades ago. The Amended Complaint fails to state any claim that can survive the statute of limitations, and Plaintiff articulates no cognizable tolling theory.

Despite his express assurance to this Court that he has not brought these claims previously, he has in fact been unsuccessfully suing other people and entities on these same facts

---

[1]      Plaintiff has sued "Triad, Inc. a New York Corporation" and "the Triad Group, LLC." The former does not exist (to Defendants' knowledge), and the latter appears to refer to Tryad Group, LLC, a company controlled by Westreich. For the purposes of this motion, we assume that all references to these entities refer to Tryad Group, LLC. Similarly, Plaintiff has sued Delancy Industrial Re-Hab Corp. ("Delancy"). This entity does not exist (to Defendants' present knowledge). Because of Plaintiff's fatal statute of limitations problems, these distinctions make no difference at this point.

1

and circumstances for the better part of two decades.  So he obviously cannot claim the alleged wrongs were somehow "concealed" from him.  As with his multiple previous attempts to assert these claims against others, dismissal with prejudice is appropriate.

The gravamen of the Amended Complaint is that, beginning in 1986 and continuing through 1997, defendants Westreich and Singer allegedly used confidential information obtained while employed as Plaintiff's purported attorney or partner to orchestrate the sale of interests in various New York apartment buildings held by Citi-Equity Group, Inc. ("CEG"), a corporation that had been formed by Plaintiff.  Plaintiff alleges that in the mid-1990s, after Plaintiff's criminal conviction and concomitant loss of control of CEG (and its interest in the New York apartment buildings) in a bankruptcy proceeding, Westreich and Singer promised Plaintiff, on the eve of his entering federal prison, 75% of all management fees, sale proceeds, and investment returns associated with these buildings – but subsequently failed to honor that agreement.  Plaintiff also alleges that Westreich and Singer failed to return $500,000 that Plaintiff purportedly asked Westreich to hold on his behalf in 1993 or 1994.

None of these allegations are remotely true, factually.  But what matters on this motion is that none of these alleged wrongs took place after 1997.  This case is a quintessential example of why statutes of limitation exist.  It is fundamentally unfair to expect a defendant to defend against charges from two to three decades ago.  Defendants are not expected to be able to unearth 25-year-old documents, or obtain testimony from witnesses whose "memories have faded," *Gabelli v. SEC*, 133 S. Ct. 1216, 1221 (2013) (emphasizing importance of statutes of limitations) – even assuming the relevant witnesses are still with us.

Plaintiff explains his decades-long delay in filing the Amended Complaint by suggesting that the alleged wrongdoing was somehow concealed from him, or remained

2

undiscovered, until 2015.  That claim is demonstrably untrue:  public records demonstrate that Plaintiff has known about the sale of CEG's partnership interests and the removal of his partnership interests for over twenty years.

As these public records show, in 1995, Plaintiff was convicted of forty-five federal crimes, including managing a continuing financial crimes enterprise; committing fraud on his investors; builders, and housing agencies; defrauding a United States agency; making false statements in connection with a bankruptcy case; the preparation of false tax returns; mail and wire fraud; and obstruction of justice. *U.S. v. Lefkowitz*, 125 F.3d 608, 612 (8th Cir. 1997) (Dkt. No. 13-10) [2], attached as Exhibit 1 to the February 21, 2017 Declaration of Jason Gottlieb ("Gottlieb Decl.").  Plaintiff was sentenced to 293 months in prison. *Id.*

Plaintiff had been the President of CEG.  Concomitant with the criminal charges, CEG went into involuntary bankruptcy.  In 1995, a bankruptcy judge in the District of Minnesota approved the sale of various CEG partnership interests to Affordable Housing General Partner, Inc. ("AHGP") and others.  In 1995, Plaintiff was notified of his removal as an officer of CEG, and of the removal of CEG as a general partner of the CEG projects, and of the sale of many of the CEG interests to third parties including AHGP.

This sale of Plaintiff's interests, and his removal from CEG, is Plaintiff's core complaint in the instant litigation.  Plaintiff has sued over these issues before.  While in prison, Plaintiff filed lawsuits against CEG and twenty-eight other parties (though not Westreich or Singer) about the purported wrongful loss of his partnership interests in CEG and his removal as general partner.  One previous lawsuit was fully and finally resolved against Plaintiff in 1998 by

---

[2]      All references to docket numbers are to the docket entries in this case currently pending before this Court, 1:16-cv-06845-JGK, unless otherwise specified.

the Court of Appeals for the Eighth Circuit.  Another attempt was fully and finally resolved against Plaintiff in 2014 by the California Court of Appeals.

Plaintiff, himself a lawyer, knows full well that his earlier lawsuits betray his awareness of the circumstances he now raises, ending any possible tolling argument.  Perhaps that is why, during the October 18, 2016 conference before this Court, Plaintiff concealed these previous lawsuits from the Court:

> **The Court**:  Have you brought any other actions raising any similar issues?
>
> **Mr. Lefkowitz**:  Absolutely not.  Of course this [the instant action] was filed in the state court in California.

*See* Transcript from the October 18, 2016 hearing before this Court, p. 5, lines 15-18, attached as Gottlieb Decl. Ex. 2.

Public records confirm that before telling this Court he had not brought any other actions raising similar issues, Plaintiff brought multiple actions based on these same facts and circumstances.  His first attempt was dismissed <u>almost two decades ago</u>.  Plaintiff now attempts to resurrect these same claims against different defendants, before a different court.  This Court should end Plaintiff's charade.

Moreover, even if this suit were not time-barred, multiple other problems require dismissal at this stage.  He failed to properly serve Shira.  And his case has absolutely no plausibility whatsoever, much less what the Supreme Court required in *Twombly* and *Iqbal*.  He is suing Leslie's son, Adam, for purported wrongs that took place between 1986 and 1997 – between the time Adam was three and fourteen years old.  Plaintiff is suing several corporations (Affordable Housing, Tryad, Coby, and Delancy) without ever alleging a single thing they were supposed to have done wrong.  And as to the "main" defendants, Westreich and Singer,

Plaintiff's core contention is that on the eve of his going to prison for decades, Westreich and Singer agreed to work for Plaintiff while Plaintiff sat in prison, and give Plaintiff 75% of all their profits, in perpetuity, in violation of a series of bankruptcy court orders stripping Plaintiff of his interests.  Plaintiff alleges that Westreich and Singer agreed to this arrangement despite representations that had been made to the bankruptcy court that Plaintiff "holds no interest in and exercises no control" over the buyer of the CEG interests.  And Plaintiff alleges that this agreement was made in exchange for some consideration that is never mentioned, let alone memorialized anywhere.  "Implausible" is an understatement.

Plaintiff's case, alleging a nice, even $2 billion in damages – plus treble damages and punitive damages, of course – is the work of a fraudster who spent two decades in prison repeatedly and unsuccessfully suing dozens of parties on the same basic theory.  The Amended Complaint cannot survive Rule 12(b)(6).

## STATEMENT OF FACTS

While Defendants strongly disagree with the factual allegations in the Amended Complaint, for the purposes of this motion, plausible factual allegations are assumed to be true.  "However, this assumption is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orenstein v. Figel*, 677 F. Supp. 2d 706, 709 (S.D.N.Y. 2009) (internal quotations and citations omitted) (dismissing with prejudice).

## A.    Plaintiff's Conviction, Bankruptcy Proceedings and Property Sale in the Mid-1990s

In 1994, Plaintiff Lefkowitz, who had been the president of CEG, was convicted on 45 counts relating to his fraud on investors, fraud on builders, fraud on government agencies

(including the IRS), and fraud on a bankruptcy court.  *Lefkowitz*, 125 F.3d at 612.[3]  In parallel

with the criminal proceedings against Lefkowitz, an involuntary Chapter 11 bankruptcy petition

was filed against CEG on May 18, 1994 in the United States Bankruptcy Court for the District of

Minnesota ("Bankruptcy Court") (Case No. 3-94-2494).  In or around July 1995, CEG filed a

"Motion for Order Approving Assumption and Assignment and Certain Partnership Interests to

Affordable Housing General Partner, Inc."  Gottlieb Decl. Ex. 3 (Dkt. No. 13-8).  In that sale

motion, CEG specifically represented that "Gary W. Lefkowitz holds no interest in and exercises

no control over Buyer.  Mr. Lefkowitz will have no role in managing the Partnerships (at issue in

this matter) if the proposed assignment of the Partnership Agreements is approved by the

Bankruptcy Court."  *Id.* at  p. 4, ¶ 13.

On August 8, 1995, the Bankruptcy Court ruled that "the assumption and

assignment of the Partnership interests … is approved."  Gottlieb Decl. Ex. 4 (Dkt. No. 13-9).

On November 13, 1995, Plaintiff received a letter informing him that he was removed as a

general partner of the CEG partnerships.  Gottlieb Decl. Ex. 5 (decision in *Lefkowitz v. Wirta*,

---

[3]      On a Rule 12(b)(6) motion, the Court may take judicial notice of public records,

including pleadings and documents filed in other cases.  *See Blue Tree Hotels Inv. (Canada),*

*Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (taking

judicial notice of complaints filed in related state court actions on motion to dismiss); *Pani v.*

*Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  In addition, in a Rule 12(b)(6)

motion, the court may consider "documents attached to the complaint as exhibits or incorporated

in the complaint by reference," *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991),

as well as documents that the pleader either possessed or knew about and that are integral to the

complaint.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

Dkt. No. 13-13, p. 4).  On November 24, 1997, the limited partnership interests at issue in this matter were sold at a public foreclosure action in New York under the Uniform Commercial Code to satisfy certain debts.  Gottlieb Decl. Ex. 6 (Dkt. No. 13-11).

Plaintiff was well aware of these bankruptcy proceedings and the subsequent sale of CEG's assets:  he actively challenged his removal, and the asset sale, in bankruptcy court.

Under CEG's bankruptcy reorganization plan, KEG Equity Group agreed to purchase CEG's partnership interests in 70 other limited partnerships conditioned on Plaintiff's removal as general partner of those partnerships.  Gottlieb Decl. Ex. 7 (*Lefkowitz v. Citi-Equity Group, Inc.*, 146 F.3d 609, 611 (8th Cir. 1998) (Dkt. No. 13-12).  CEG filed an adversary proceeding seeking to remove Plaintiff as the general partner of those limited partnerships.  *Id.* Over Plaintiff's opposition, the bankruptcy court ruled that Plaintiff had been removed as general partner.  Plaintiff appealed to the district court, which affirmed the bankruptcy court's order. Plaintiff did not further appeal.  *Id.* at 611, n.3.  However, Plaintiff filed a counterclaim against CEG, claiming that CEG breached a fiduciary duty to Plaintiff, and that an accounting was necessary.  *Id.* at 611.  The bankruptcy court ruled against Plaintiff on all counts, a decision affirmed by the district court, and reaffirmed in 1998 by the Eighth Circuit Court of Appeals (146 F.3d 609).

**B.       Plaintiff's Claims All Stem from Events in the Mid-1990s**

Despite the 1995 court-mandated sale order, the 1997 UCC foreclosure sale and the related litigation at the time, Plaintiff now alleges that he never agreed to the elimination of his general partner interest in CEG.  Rather, he alleges that in **the mid-1990s**, he entered into an undocumented business arrangement with Westreich (whom Plaintiff describes as his former

attorney[4]) and Singer (who Plaintiff alleges controlled, along with Westreich, the purchaser of

the assets in the bankruptcy auction).   In this new alleged arrangement, Westreich and Singer

purportedly agreed to ignore all the orders of the bankruptcy court, district court, and Eighth

Circuit, and instead to participate with Plaintiff on a new fraud on the bankruptcy court and the

limited partners who had suffered losses due to Plaintiff's wrongdoing – to continue to honor

Plaintiff's status as a general partner, allegedly promising to provide Plaintiff (while he sat in

prison for the next 25 years) with "75% of the management fees, sale proceeds, and investment

returns associated with the properties in question."  Am. Compl. ¶¶ 98, 128, 129, 131, 132.

More specifically, the Amended Complaint alleges, in relevant part, that:

- In or about 1995, Westreich purchased the interest in each of the
  properties owned by Citi Equity Group, Inc.  Am. Compl. ¶ 52.

- Westreich utilized confidential information obtained through Lefkowitz to
  purchase other real estate properties in which Lefkowitz held an interest as
  well.  Am. Compl. ¶ 52.

- Plaintiff hired Westreich to purchase the deed of trust on the Manhattan
  properties owned by a company called Coby, Inc., and Westreich did so,
  for 8 cents on the dollar, in or about 1995-1997.  Am. Compl. ¶ 53.

- Plaintiff did not consent to a reduction of his interests.  Am. Compl. ¶ 55.

---

[4]       Plaintiff alleges that "that from 1984 through 1994 Westreich represented Lefkowitz in

connection with payments issues and disputes with the sellers of the equitable interest that were

purchased by Lefkowitz from the sellers of the properties."  Am. Compl. ¶ 33.  This allegation is

untrue; Westreich never served as Plaintiff's attorney.  But even accepting Plaintiff's factual

assertion for the purposes of this motion, by Plaintiff's own admission, that purported

representation ended in 1994.  Moreover, as Plaintiff alleges, Westreich was no longer a member

of the bar from 1995 onward.  Am. Compl. ¶ 85.  Thus he could not have been Plaintiff's

attorney since then, and no continuing representation relationship could have existed past 1995.

- In or about 2006, Westreich – "with the consent of Plaintiff" – sold the Citi Manhattan I building, the Citi Manhattan II building and the Citi Manhattan III building for a price alleged to be in excess of $135 million. Am. Compl. ¶ 88.

Plaintiff also asserts that he gave Westreich $500,000 for safekeeping sometime in 1993-1994, which was not returned to Plaintiff when he allegedly demanded the money.  Am. Compl. ¶ 65.

## C.    Plaintiff Sued Multiple Other Parties from Prison Over the Same Events

In addition to participating in (and instituting) actions in the bankruptcy proceedings that divested him of his general partner status in CEG, Plaintiff sued other parties for similar claims, also purportedly arising from the sales of limited partnership interests in the CEG bankruptcy.

On April 14, 2010, Plaintiff filed a complaint (the "Koll Complaint") against the Koll Company and some 27 other defendants.  Gottlieb Decl. Ex. 5 (*Lefkowitz v. Wirta*, Dkt. No. 13-13).  In the Koll Complaint, Plaintiff alleged that in 1995, Koll Company and its affiliates misused confidential information obtained under a non-disclosure agreement to take control of CEG and related assets, obtain income from them, and divest Plaintiff of his partnership interest and income.  He alleged that certain individuals had assured him that despite the CEG bankruptcy proceedings, he continued to be a partner in certain partnerships – allegations very similar to those in the instant suit.  The Koll Complaint was dismissed on statute of limitations grounds, without leave to amend.  *Id.*

The California Court of Appeals affirmed the trial court's dismissal, holding that Plaintiff had notice and opportunity to bring his claims much earlier – beginning in 2003 at the latest, because he was specifically informed that his partnership interests had been terminated by the bankruptcy court.  *Id.* at p. 17 ("As of June 2003, appellant was on notice of his claims, and had an affirmative obligation to discover the facts supporting his causes of action.").

9

**D.      The Amended Complaint Reveal Plaintiff's Continuous Awareness of His Claims From 1995 Onward**

In the Amended Complaint, Plaintiff alleges that Westreich made statements to Plaintiff to allay his fears, thus presumably concealing alleged wrongdoing.  Plaintiff alleges:

- "Westreich kept on telling Lefkowitz from 1995-2016, that Westreich would not be supporting Lefkowitz if Westreich had hurt or damaged Lefkowitz…"  Am. Compl. ¶ 65.

- "…the payments each month proved that Westreich had not damaged Lefkowitz, and that Lefkowitz could trust Westreich and the Co-Defendants in that Lefkowitz had not been damaged."  *Id.*

- Westreich allegedly told him, "if I had f-cked you, then why would I be sending you money and religious books and gifts."  Am. Compl. ¶ 22; *see also* Am. Compl. ¶¶ 25, 99.

These alleged statements appear to suggest that Plaintiff had no reason to suspect that Westreich would violate their alleged agreement.  But the statements, assuming they were truly spoken, only underline that Plaintiff had persistent suspicions about Westreich's potential liability as early as 1995.

**E.      Plaintiff's Own Exhibits Demonstrate Awareness of His Claims in 2004**

Earlier in this action, Plaintiff opposed the motion to transfer or, in the alternative, to dismiss filed in the United States District Court for the Central District of California.  (The "Transfer Motion" is Dkt. # 10, and the Opposition to the Transfer Motion is Dkt. # 16.)  In his opposition, Plaintiff appended exhibits containing letters he sent to Westreich (and sometimes Singer) from prison.  These letters demonstrate that in 2004, Plaintiff was aware of the causes of action he now brings.

In a letter dated February 17, 2004, Plaintiff stated:

It is my understanding that you are the principals in Affordable Housing General Partner, Inc.  It is my further understanding that Affordable Housing General Partner, Inc. became the sole general partner of Citi Manhattan Partners I, II, and III (including Citi New York Partners I and

10

> II, Citi East River Partners and Citi Frontiers, Citi Equity Fund and Citi
> South), all California Limited Partnerships, upon sale by Citi Equity
> Group, Inc. of its general partner interest in said partnerships to
> Affordable Housing General Partner, Inc. and upon my removal as the
> individual General Partner in said partnerships.

Gottlieb Decl. Ex. 8 (Dkt. No. 16-16, pp. 9-11).[5]  In the same letter Plaintiff claimed that upon

his removal, he was entitled to "75% of operating profits, losses, credits and deductions" – the

same claims he makes in this lawsuit.

Plaintiff went on to note that "Mr. Westreich has refused to accept my telephone

calls. He has also refused to accept the calls of my cousin, Mr. Irvin Rushall regarding my

interests in the partnerships."  *Id.*  Plaintiff also requested information, including financials, of

the properties in question.  He concluded that "[i]f I do not receive this information (including

information regarding the above-referenced properties) by March 5, 2004, I will file an action to

compel this information from you with the California Corporations Commissioner and with the

Los Angeles Superior Court."  *Id.*  Thus, Plaintiff was aware enough of his purported claims on

his interests in the partnerships in 2004 that he threatened to sue Westreich on that issue.

One year later – on May 19, 2005 – Plaintiff again threatened to bring litigation

against Westreich regarding the same properties at issue in this action:

> [Y]ou owe me a duty of disclosure.  To the extent you have begun sales of
> any of the apartments, I hereby request an accounting of all funds…. The
> conversion of these buildings was always our purpose.  What I do not
> understand is why you would not have told me that you were finally doing
> it.  Can you please tell me what is going on with these buildings? ...
> Please be a mentch and either come out here and let me know what is
> going on, or respond to this letter…   I do not want this to spin out of
> control and into a courtroom.

---

[5]      Plaintiff references this letter in paragraph 110 of the Amended Complaint.

Gottlieb Decl. Ex. 9 (Dkt. No. 16-16, pp. 12-13).[6]  When Westreich still did not respond, Plaintiff followed up in a letter dated August 24, 2005:  "I have been calling your cell number but you have not been answering.  I do not know if you are out of the country, sick, or avoiding me."  Gottlieb Decl. Ex. 10 (Dkt. No. 16-16, p.14).[7]

Thus, Plaintiff was pointedly aware of the issues of which he now complains, over 10 years before he filed the instant action.  Instead of being reassured that his interests were being protected (as he alleges), he complains he was being ignored, even after threatening to sue.

Plaintiff also concedes that "in or about 2006, Westreich **with the consent of Lefkowitz** sold the Citi Manhattan I building, the Citi Manhattan II building and the Citi Manhattan III building for a price represented by Westreich to be in excess of $135,000,000.  Lefkowitz has learned that the amount actually paid was well in excess of that amount…."  Am. Compl. ¶ 88 (emphasis added).  If these sales happened with Plaintiff's consent in 2006, and if he believed he was owed money from their sale, the limitations period began to run at that time (at the latest).

## F.    Neither Westreich Nor Singer Owed Defendant any Continuing Duty

Plaintiff alleges that "that from 1984 through 1994 Westreich represented Lefkowitz in connection with payments issues and disputes with the sellers of the equitable interest that were purchased by Lefkowitz from the sellers of the properties."  Am. Compl. ¶ 33.  As a matter of fact, Westreich never served as Plaintiff's attorney.  But even accepting the allegation as true for this motion, by Plaintiff's own description, that representation ended in 1994.  There is no support to infer that Westreich continuously represented Plaintiff from 1995

---

[6]    Plaintiff references this letter in paragraph 113 of the Amended Complaint.

[7]    Plaintiff references this letter in paragraph 114 of the Amended Complaint.

until 2015.  Indeed, by Plaintiff's own words, *supra*, Westreich was disbarred in the mid-1990s

and could not practice law.  Furthermore, Plaintiff concedes that Westreich refused to answer

Plaintiff's inquiries about the properties in question for at least 18 months – hardly the

description of a continuously-engaged attorney.  Even in a light most generous to Plaintiff,

Westreich's purported representation of Plaintiff ended two decades ago.

Plaintiff also alleges some kind of business partnership amongst himself,

Westreich, and Singer, triggering some kind of fiduciary duty to Plaintiff.  Am. Compl. ¶ 99.

Any "partnership" duty, even if it ever existed, ended with the termination of the CEG

partnership and Plaintiff's removal from the partnerships by the bankruptcy court in 1995-97.

## G.      Procedural History

Plaintiff commenced this action by filing a complaint on June 10, 2016 in the

Superior Court of the State of California, County of Los Angeles.  Dkt. No. 1-1.  On July 13,

2016, Westreich removed the action to the United States District Court for the Central District of

California.  Dkt. No. 1.  On July 20, 2016, Westreich moved to dismiss the action or transfer

venue pursuant to 28 U.S.C. §§ 1404, 1406, Fed. R. Civ. P. 12(b)(2), (3), and (5), or, in the

alternative, to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 10.  On August

25, 2016, Westreich withdrew his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5)

(insufficient service of process) and 12(b)(2) (lack of personal jurisdiction) while retaining the

motion on all other grounds.  Dkt. No. 25.  On August 30, 2016, the Honorable Dale S. Fischer

ordered the transfer of venue of the present action to the Southern District of New York under 28

U.S.C. § 1404(a), but did not rule on Westreich's motion to dismiss.  Dkt. No. 26.

During the October 18, 2016 conference in the Southern District of New York,

this Court granted Plaintiff leave to file an Amended Complaint in this action by November 4,

2016.  Plaintiff did so on November 14, 2016.  All defendants were timely served except for

13

Shira Westreich; service was attempted on Shira at her former abode in New York City, but she has not lived there for several years.

**ARGUMENT**

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint that lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While facts alleged must be taken as true for these purposes, a complaint's conclusory allegations and legal conclusions are not entitled to the assumption of truth. *Iqbal* at 679. Claims that do not cross the "line from conceivable to plausible" must be dismissed. *Id.* at 683.

Statute of limitations arguments are properly raised on a Rule 12(b)(6) motion when the complaint shows on its face that the limitations period has run. *See* Fed. R. Civ. P. 8(c)(1); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 592 (S.D.N.Y. 2009).

## I.   AS A THRESHOLD MATTER, CALIFORNIA LAW APPLIES TO THIS MOTION

At the October 18, 2016 conference, the Court queried whether New York or California substantive law applies to the issues raised by this motion.  The answer is that California law will govern the statute of limitations issues.

Typically, a federal court sitting in diversity applies the forum state's statute of limitations provisions, as well as any provisions that govern the tolling of the statute of limitations. *See Diffley v. Allied Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990); *Vincent v. Money Store*, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2012).  However, this case was transferred to the Southern District of New York from the Central District of California under 28 U.S.C.

14

§1404(a).[8]  The Second Circuit has held that a §1404(a) transfer brings the transferor state law with it, and thus, California law properly applies to the determination of the applicable statutes of limitations.  *See, e.g., Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 190 (2d Cir. 2009); *Gerena v. Korb*, 617 F.3d 197, 204-05 (2d Cir. 2010); *Caribbean Wholesales & Serv. Corp. v. US JVC Corp.*, 855 F.Supp. 627, 629 (S.D.N.Y. 1994) ("As a general matter, the law applicable subsequent to a transfer depends upon the statutory provision pursuant to which the transfer was made….  If the transfer was made pursuant to 28 U.S.C. 1404(a), for the convenience of the parties and related considerations, then the transferor state's law is generally applicable.").

The rationale for this rule is to prevent defendants from forum-shopping, obtaining a "change of law as a bonus for a change of venue."  *Davis v Costa-Gavras*, 580 F. Supp 1082, 1086 (S.D.N.Y. 1984).

Section 1406 – transfer for improper venue reasons – does not apply here.  "In a transferred action the law of the transferor jurisdiction applies … only if the transferor court has personal jurisdiction."  *Songbyrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179-80 (2d Cir. 2000).  Because Westreich withdrew his objections to personal jurisdiction prior to Judge Fischer's ruling (Dkt. No. 25), Westreich agreed that the Central District of California properly had personal jurisdiction over him under Cal. Cod. Civ. Proc. § 418.10(e)(3).  Accordingly, the transfer was under Section 1404, and California law applies to the relevant statutes of limitation.

---

[8]     28 U.S.C. § 1404(a) states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or jurisdiction where it might have been brought."

Proceeding under California law could in no way prejudice Plaintiff, who chose to bring the case in California (and indeed opposed the transfer to this jurisdiction), thus himself opting for California law.[9]

## II.   ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED UNDER THE APPLICABLE STATUTES OF LIMITATION

### A.   Statute of Limitation Tolling Due to Incarceration

Plaintiff was in prison for much of the time since the alleged events in question took place from 1986 through 1997.  Under California Code of Civil Procedure Section 352.1(a), "if a person entitled to bring an action … is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a party of the time limited for the commencement of the action, **not to exceed two years**."  (Emphasis added.)  Accordingly, California law permits an extension of the relevant statutes of limitation by two years if a plaintiff is incarcerated when the cause of action accrues.  For purposes of this motion, Defendants will add the additional two-year grace period to each of Plaintiff's claims to determine their expiration dates as generously in favor of Plaintiff as possible.

### B.   The Breach of Contract Claim is Time-Barred

Plaintiff alleges two purported breaches of contract, each of which is time barred.

First, Plaintiff pleads that he asked Westreich "to hold" $500,000 for him in 1993 or 1994.  The Amended Complaint does not allege when, if ever, Westreich was purportedly

---

[9]   The choice of law issue is important, of course, but it would not affect the ultimate disposition.  Given Plaintiff's extreme delay in filing this action, it would be time-barred under New York law as well.

obligated to return this money to Plaintiff.  This alleged "contract" is therefore one for money payable on demand.  California law has long held that a cause of action for money payable on demand accrues with the inception of the obligation.  *See Buffington v. Ohmert*, 253 Cal. App.2d 254, 256 (1967); *Carrasco v. Greco Canning Co.*, 58 Cal. App. 2d 673, 675 (1943); *Clunin v. First Fed'l Trust Co.*, 189 Cal. 248, 249 (1922).  Thus the obligation began, at latest, in 1994.[10]

Second, Plaintiff alleges that from 1986 through 1997, Westreich and Singer utilized "confidential information" obtained as Plaintiff's purported attorney and/or business partners to (1) orchestrate the sale of interests in certain New York properties held by CEG to Westreich and Singer's alleged affiliate, Affordable Housing,  and (2) to deprive Plaintiff of "75% percent" of management fees, sale proceeds, and investment returns related to these New York apartment buildings to which Plaintiff was allegedly entitled.  The purported failure to give Lefkowitz his 75% interest in the sale of the properties in question would have accrued in 1997 at the latest, when the properties were sold to Affordable Housing per the bankruptcy court order.  Similarly, the second part of the purported breach occurred in 1997 at the latest, when the properties were allegedly sold to Westreich, because such fees, proceeds, and returns could no longer accrue after the sale.

An action on "any contract, obligation or liability founded upon an instrument in writing" must be commenced within 4 years after accrual of the action.  Cal. Code Civ. Proc.

---

[10]    Indeed, by his own admission, Plaintiff started receiving monthly payouts of the purportedly-held $500,000 in 1996.  Am. Compl. ¶ 20.  Plaintiff also notes that Westreich gave money to Plaintiff's daughter at Plaintiff's direction while Plaintiff was in prison.  Am. Compl. ¶ 25.  These admissions demonstrate that Plaintiff could have requested the return of the money that was allegedly his at any time – and did so.

17

§ 337(1).  An action on a "contract, obligation or liability not founded upon an instrument of writing" must be commenced within 2 years after accrual.  Cal. Code Civ. Proc. § 339(1).

The Complaint does not allege that any of the alleged agreements or contracts were in writing.  Nor has Plaintiff attached any written agreements or contracts to the Complaint, his opposition to the Transfer Motion, or the Amended Complaint.  But even giving Plaintiff the benefit of the doubt that some such agreements were memorialized in writing, so the longer, four-year, statute of limitations applies, and even with the additional two-year grace period for incarceration, the breach of contract claim would still have expired in 2003.

C.    The Breach of Fiduciary Duty Claim is Time-Barred

An action for breach of fiduciary duty that does not amount to actual or constructive fraud is governed by the "catch-all" statute of limitations, which provides a four-year limitations period.  Cal. Code Civ. Proc. § 343.  *See also Hatch v. Collins*, 225 Cal. App. 3d 1104 (1990) ("Where property is acquired by a breach of fiduciary duty not amounting to actual fraud, the four year 'catch-all' statute, section 343, is applicable.").  Alternatively, if the argument for the breach of fiduciary duty claim is rooted in actual or constructive fraud, the applicable statute of limitations is California Code of Civil Procedure Section 338(d), which affords a three-year statute of limitations period.  *See, e.g.*, *Stalberg v. W. Title Ins. Co.*, 230 Cal. App. 3d 1223, 1230 (1991) (stating that "a breach of fiduciary duty claim is based on concealment of facts, and the statute begins to run when plaintiffs discovered, or in the exercise of reasonable diligence could have discovered, that facts had been concealed").

Whether the statute is three or four years in this case is irrelevant, as none of the alleged wrongful conduct took place after 1997.  To the extent that Plaintiff predicates his breach of fiduciary duty claim on the loss of his general partnership interests, Plaintiff previously sued

18

CEG and others for fraud and breach of fiduciary duty related to the loss of his CEG partnership interests, and, thus, has been on notice of his claims based upon these same losses for two decades.  Even with the four-year statute of limitations and a two-year incarceration grace period, the action was time-barred by 2003.

D.     The Fraud Claim is Time-Barred

The statute of limitations for fraud claims is three years.  Cal. Code Civ. Proc. § 338(d), *Hatch,* 225 Cal. App. 3d at 1110-11.  Again, Plaintiff has not alleged any purported wrongful conduct on the part of defendants beyond 1997, when Westreich and Singer allegedly orchestrated the purchase of the properties in question.  At the latest, and including the prison grace period, the cause of action for fraud would have expired in 2002.

E.     The RICO Claim is Time-Barred

A plaintiff seeking relief under the civil RICO statute must file an action within four years of accrual.  *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759 (1987).  Though Plaintiff would like to convince the Court that the statute of limitations on this claim did not begin to run until "the last predicate act of the same pattern of racketeering activity" has occurred – here, allegedly the last check or Judaica book received from Westreich in 2014 or 2015[11] – that is simply not the law.  The limitations period starts to run when a plaintiff knew **or should have known** that the RICO claim existed.  *Klehr v A.O. Smith Corp.*, 521 U.S. 179, 186-87 (1997) (explicitly rejecting the argument that a civil RICO claim does not accrue until the last predicate act and finding that "[b]ecause a series of predicate acts… can continue indefinitely, such an interpretation, in principle, lengthens the limitations period dramatically.  It thereby conflicts with a basic objective – repose – that underlies limitations

---

[11]     *See, e.g.*, Am. Compl. ¶¶ 20-22, 27.

periods…. Indeed, the rule would permit plaintiffs who know of the defendant's pattern of activity simply to wait, sleeping on their rights, as the pattern continues and treble damages accumulate, perhaps bringing suit only long after the memories of witnesses have faded or evidence is lost.") (internal citations and quotations omitted). Adding the two-year incarceration grace period, the purported cause of action for RICO had to be brought in 2003 at the latest.

Accordingly, all of Plaintiff's causes of action lapsed long before this action was originally filed on June 10, 2016.

## III.   THE STATUTES OF LIMITATIONS CANNOT BE TOLLED

### A.   Tolling Does Not Apply When Plaintiff is Aware of Defendant's Identity and Potential Liability But Chooses Not to Sue

If a plaintiff is aware of the identity of a potential defendant and has reason to suspect that defendant's potential liability, but the plaintiff chooses not to sue in a timely manner, that plaintiff is not rewarded with the tolling of the applicable statutes of limitations. *See, e.g., Wang & Wang LLP v. Banco do Brasil S.A.*, No 2:06-cv-00761-JAM-KJM, 2008 U.S. Dist. LEXIS 99158, at *10-12 (E.D. Cal. Nov. 25, 2008) ("[t]he statute is not tolled while [the] plaintiff searches for evidence to make out its case."); *see also Dover v. Sadowinski*, 147 Cal. App. 3d 113 (1983) (upholding dismissal of action against a defendant who was tardily brought into action when plaintiff was aware of defendant's involvement in the cause of action but claimed not to know the depth of involvement).

Plaintiff was well aware of the purchase of the CEG partnership interests in 1995, and subsequent foreclosure on other interests in 1997. He contested the sale in the Bankruptcy Court, and, as he alleges, he voiced repeated and continued suspicions to Westreich starting in 1995. By Plaintiff's own admission, Westreich did not quell his suspicions in 1995. Plaintiff's letters demonstrate continued and repeated concerns in 2004 and 2005. He knew that Westreich

sold the properties in question in 2006, and he claims not to have received any "due" profits at

that time.  Nevertheless, he made the deliberate choice not to include Westreich and Singer in his

various previous lawsuits, and not to commence a timely lawsuit against them until the statutes

of limitations on all of Plaintiff's present claims long passed.  A California state appellate court

previously affirmed dismissal of similar claims filed in 2010 against some 43 separate

defendants on statute of limitations grounds.  *See* Gottlieb Decl. Ex. 5.  Plaintiff cannot now

benefit from his deliberate decision to delay filing a suit against Westreich, Singer, and the other

defendants in this litigation.

     B.     <u>The Discovery Rule Does Not Apply</u>

     Neither can Plaintiff cannot rely upon the "discovery rule" to toll the statute of

limitations.  The discovery rule can only apply if Plaintiff can meet his burden of pleading the

inability to have made earlier discovery despite reasonable diligence.  *Grisham v. Philip Morris*

*U.S.A., Inc.*, 40 Cal. 4th 623, 638 (2007).

     California law makes clear that a plaintiff discovers a cause of action when he at

least suspects a factual basis for such cause of action to exist, or, simply put, he "at least suspects

… that someone has done something wrong to him."  *Norgart v. Upjohn Company*, 21 Cal. 4th

383, 397 (1999).   The plaintiff "has reason to suspect" when he has "notice or information of

circumstances to put a reasonable person on inquiry."  *Id.* at 398.  The plaintiff "cannot wait for

[the facts] to find him and sit on his rights."  *Id.*  "[D]iscovery is different from knowledge, [so]

that where a party defrauded has received information of facts which should put him upon

inquiry, and the inquiry if made would disclose the fraud, he will be charged with a discovery as

of the time the inquiry would have given him knowledge."  *Balfour, Guthrie & Co. v. Hansen*,

227 Cal.App.2d 173, 190 (1964) (internal quotation and citation omitted).  "It is black letter law

that the statute of limitations commences to run after one has knowledge of facts sufficient to

make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Bedolla v. Logan & Frazer*, 52 Cal.App.3d 118, 130 (1975).

Plaintiff has been on notice **since 1995** that the Bankruptcy Court approved the sale of CEG's interests in the properties in question to Affordable Housing.  Plaintiff went to court to challenge the Bankruptcy Court's decision, and the sale of CEG's interests, and his removal as the general partner.  The Eighth Circuit resolved these claims against Plaintiff in 1998.  Gottlieb Decl. Ex. 7 (Dkt. No. 13-12).  Assuming *arguendo* that Westreich agreed to ignore the aforementioned court decisions and promised to preserve a 75% interest in the properties in question for Plaintiff (for some unexplained reason), by his own admissions, Plaintiff was suspicious about the status of his interest.  He required repeated reassurance since 1995 from Westreich that his interests were protected.  Yet Plaintiff provides no adequate explanation for why he failed to act on his continuous and reoccurring suspicions.

Moreover, Plaintiff's own exhibits submitted in opposition to the Transfer Motion reveal that Plaintiff was aware of the exact claims he brought in 2016 more than a decade earlier, but failed to act on them timely.  In 2004, Plaintiff wrote to Westreich, requesting information about the properties in question, and threatening litigation of the very claims he brings in the present action.  By his own admission, Lefkowitz learned about and consented to the sale of the buildings in question in 2006, yet (by his own allegations) did not receive any proceeds of the sale at that time.  Rather, he waited over ten years to sue Westreich, despite his self-professed suspicions that his alleged interests were not being, and would not be, honored.

Even if Plaintiff's causes of action could be tolled until 2006 – when he acknowledges his awareness of the buildings' sale and lack of any benefits therefrom – all his causes of actions are still time-barred.  Applying the two-year grace period for incarceration, his

latest possible claims for fraud expired in 2011; his latest possible claims for breach of contract, breach of fiduciary duty and RICO expired in 2012.

     C.    <u>Fraudulent Concealment Does Not Apply</u>

       Nor has Plaintiff alleged facts that would support a "fraudulent concealment" theory. Under this doctrine, a "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by exercise of reasonable diligence, should have discovered it." *Bernson v. Browning Ferris Indus. of Cal., Inc.*, 7 Cal.4th 926, 931 (1994). This doctrine applies only if "the plaintiff proceeds diligently once the truth is discovered." *Lantzy v. Centex Homes*, 31 Cal.4th 363, 384 (2003).

       As demonstrated above, Plaintiff admits he has known about his claims, and expressed serious suspicions about Westreich's and Singer's conduct, in 2006 at the latest. To the extent that Plaintiff's causes of action ever had any merit, he failed to act reasonably or diligently in pursuing them.

       Even the allegations Plaintiff advances of Westreich's purported concealment and misdirection scream out Plaintiff's suspicions. Plaintiff alleges that Westreich "kept [reassuring] Lefkowitz from 1995-2016" that he has not hurt Plaintiff. Am. Compl. ¶ 65. That phrase can only mean that Plaintiff expressed repeated concerns that his interests were not protected, and persistently asked Westreich to reassure him over the years. Evidently, Plaintiff's suspicions were not quelled by a one-time promise from Westreich. Plaintiff even alleges that Westreich told him, "if I had f-cked you, then why would I be sending you money?" Am. Compl. ¶ 22. That sentence (if actually uttered), would **only** make sense in response to a question from Plaintiff expressing concern or suspicion: Plaintiff flatly told Westreich that he thought

Westreich was "wronging" him.  Any other context or interpretation would render Westreich's alleged statement implausible, if not downright nonsensical.

By his own admissions, Plaintiff remained distrustful of Westreich and Singer for over twenty years, yet chose to sit on his putative claims.  If Plaintiff were concerned that his interests were in jeopardy as early as 1995, and his suspicions were not allayed – which he admits – then the fraudulent concealment doctrine cannot save his claims.  As the U.S. Supreme Court has held – specifically in the RICO context – "reasonable diligence does matter, and a Plaintiff who is not reasonably diligent may not assert fraudulent concealment."  *Klehr*, 521 U.S. at 194 (internal quotations and citations omitted).

> D.     Fiduciary Tolling Does Not Apply

Plaintiff cannot toll his claims on the basis of the related doctrines of continuous representation or fiduciary tolling.  First, even accepting Plaintiff's factual assertion that Westreich served as Plaintiff's attorney, by Plaintiff's own admission, that representation ended in 1994.  Am. Compl. ¶ 33.  Plaintiff cannot now argue that Westreich's representation was somehow continuous until Plaintiff's discharge from prison.  "Continuity of representation ultimately depends, not on the client's subjective beliefs, but rather on evidence of an ongoing mutual relationship and of activities in furtherance of the relationship."  *Truong v. Glasser*, 181 Cal.App.4th 102, 116 (2009) (internal quotations and citations omitted).

Indeed, "[i]n cases where the attorney unilaterally withdraws or abandons the client, the representation ends when the client actually has or reasonably should have no expectation that the attorney will provide further legal services…. This may occur upon the attorney's express notification to the client that the attorney will perform no further services, **or, if the attorney remains silent, may be inferred from the circumstances**."  *Lockton v.*

*O'Rourke*, 184 Cal.App.4th 1051, 1063 (2010) (internal quotations and citation omitted) (emphasis added).  Certainly, Westreich's 18-month silence in 2004-2005 regarding the very claims that Plaintiff now brings – coupled with Plaintiff's threats of litigation over them – were enough to disabuse Plaintiff of any notion that Westreich continued to represent him as his personal attorney.  Westreich's disbarment in the mid-1990s further underlined that he could not have been acting continuously as Plaintiff's attorney past that point.  Plaintiff's belief in continuous representation simply could not be reasonable.

Nor could any alleged "partnership" between Plaintiff and Westreich/Singer between 1995 and 2015 be characterized as fiduciary.  First, the CEG partnership was dissolved by the bankruptcy court in 1995.  Second, Plaintiff alleges no reasonable basis to assume a partnership existed afterwards, and indeed alleges facts that vitiate the existence of a partnership.

A "plaintiff does have a duty to investigate even where a fiduciary relationship exists when he has notice of facts sufficient to arouse the suspicions of a reasonable man ….  If such facts actually do come to his attention he may not sit idly by for at that point the statute of limitations begins to run." *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.*, 122 Cal.App.3d 834, 855 (1981) (internal quotations and citations omitted).   Furthermore, a "person in a fiduciary relationship may relax, but not fall asleep.  [I]f she became aware of facts which would make a reasonably prudent person suspicious, she had a duty to investigate further, and she was charged with knowledge of matters which would have been revealed by such  an investigation .... " *Alfaro v. Cmty. Housing Imp. Sys. & Planning Ass'n, Inc.*, 171 Cal. App. 4th 1356, 1394 (2009); *Johannson v. Wachovia Mortg., FSB*, No. 11-cv-02822 WHA, 2012 U.S. Dist. LEXIS 62936, *12-13 (N.D.Cal. May 4, 2012).

By his own admissions, Plaintiff was suspicious of Defendants' conduct as early as 1995, when he required assurance from Westreich that his interests were protected.  His suspicions were further memorialized in his 2004 and 2005 letters.  He learned of the sale of the properties in question in 2006 and claims to have received no proceeds from that sale at that time.  His decade-long delay in pursuing his claims cannot be deemed reasonable.

      E.      <u>Equitable Tolling Does Not Apply</u>

Finally, Plaintiff fails to demonstrate his entitlement to "equitable tolling," which requires that:  (1) the defendant must have had timely notice of the claim; (2) the defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) the plaintiff's conduct must have been reasonable and in good faith.  *Addison v. State*, 21 Cal.3d 313, 319 (1978).  Generally speaking, equitable tolling applies "when an injured person has several legal remedies and reasonably and in good faith, pursues one."  *McDonald v. Antelope Valley Community College Dist.*, 45 Cal.4th 88, 100 (2008).  Equitable tolling applies only in "extraordinary circumstances" which cause an untimely filing.  *Holland v. Florida*, 560 U.S. 631 (2010).  The California Supreme Court has made clear that equitable tolling applies when a plaintiff was pursuing another equitable remedy, such as another lawsuit or an administrative claim, which gave defendants sufficient notice of the proceedings.  *Lantzy*, 31 Cal.4th at 370.

None of the requisite elements are met here.  Plaintiff has brought no other proceedings against these Defendants to provide adequate warning that would justify the tolling of the statutes of limitations.  Certainly Defendants would be prejudiced to have to defend these otherwise barred claims twenty years after the events in question occurred.  The ability to locate relevant documents, or find witnesses who will recall these events, are obvious impediments.  Lastly, and most significantly, Plaintiff's conduct was neither reasonable nor conducted in good

faith.  At the very latest, he was aware of the sale of the buildings in question for the last decade.
Such a lengthy, unexplained delay cannot be deemed reasonable.

The equities weigh heavily against Plaintiff, who is well aware that his actions are
time-barred.  His 2010 Koll Complaint pled very similar causes of action, and was dismissed on
statute of limitations grounds.  A California appellate court wrote a detailed analysis of why
Plaintiff's causes of actions could not be saved by any tolling doctrine.  Knowing full well that a
similar action was time-barred in 2010, Plaintiff decided to try his luck six years later, before a
different judge.  And when asked point blank by this Court whether he had brought up these
claims in any other lawsuits, Plaintiff stated that he had not – which obviously was not true.

Plaintiff should not be rewarded for knowingly wasting yet another Court's time.
Indeed, in light of the clear bar of the statute of limitations, Rule 11 sanctions may be appropriate
for filing a patently frivolous lawsuit, as Defendants have been forced to expend funds to dismiss
a lawsuit that, on its face, could not possibly have been brought in good faith.

## IV.    PLAINTIFF'S AMENDED COMPLAINT MAKES NO PLAUSIBLE CLAIMS

### A.    The Amended Complaint Wholly Fails the *Twombly/Iqbal* Plausibility Standard

Setting aside the obvious statute of limitations obstacles, the Amended Complaint
is entirely implausible.  Under the *Twombly/Iqbal* standard, only complaints that provide
"enough facts to state a claim to relief that is plausible on its face" can survive motions to
dismiss.  *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678-79.   Claims that cannot cross the line
from "conceivable to plausible" fail.  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.  Where
there is an "obvious alternative explanation" that is more likely than what the plaintiff asks the
court to infer, the plaintiff's cause of action is implausible and must be dismissed.  *Iqbal*, 556 at
682 (*quoting Twombly*, 550 U.S. at 567); *see also Arar v. Ashcroft*, 585 F.3d 559, 617 (2d Cir.

2009) (en banc) (allegations "become implausible when the court's commonsense credits far more likely inferences from the available facts.").

The Amended Complaint cannot survive this standard.  Plaintiff's core story is that as his real estate business crumbled in the wake of his massive fraud, and as he was about to head to prison for two decades, his alleged former business partners Westreich and Singer agreed to flout multiple judicial rulings that divested Plaintiff of all interests in the properties in question, conspired with Plaintiff to lie to the bankruptcy court about Plaintiff's involvement in the sale of the interests to Westreich and Singer, and instead gift to Plaintiff a 75% share of those interests for no apparent reason or consideration.  Plaintiff asserts this 75% entitlement despite the fact that (as Plaintiff admits throughout the Amended Complaint) he held, at most, a 25% stake in the partnerships connected to these properties.  *See, e.g.*, Am. Compl. ¶¶ 47-50.

Indeed, Plaintiff wants this Court to believe that Singer and Westreich agreed to work for two decades to generate optimum returns on the properties in question, just to give 75% of those profits up to Plaintiff, who would have no obligations to do anything at all while in prison.  Plaintiff would like this Court to surmise that Westreich and Singer literally agreed to give Plaintiff over a billion dollars, merely because – after a stretch of silence over many years – Westreich later communicated occasionally with Plaintiff, who claimed to be growing more religiously observant, by sending him religious publications and small sums of money during his imprisonment.  Small pities on an erstwhile acquaintance in need of religious consolation while in prison do not form the basis for a secret agreement worth a billion or two.

Indeed, the astronomical relief that Plaintiff seeks – a nice even $2,000,000,000, which he claims should be trebled under RICO law and then punitive damages added on top of that – is alone strong evidence of a wholly invented complaint.  It defies all logic to believe that

28

Plaintiff, a former lawyer and businessman, would not have memorialized in writing his alleged

entitlement to such significant profits, if such entitlement existed.

       As *Iqbal* and *Twombly* hold, if there is an "obvious alternative explanation" that is

plausible, and the plaintiff's story is not, then the complaint must be dismissed.  Here, there is a

painfully obvious alternative explanation:  Plaintiff is a fraudster.  He has a history of fraud,

specifically including lying to courts, and he served over 20 years in federal prison for his many

fraud-based crimes.  During his prison years, he sued a host of other people on these same

charges, all unsuccessfully.  His claims were repeatedly rejected; first on the merits, and then

later on statutes of limitations because he brought them too late.  Now, years later and out of

prison, Plaintiff hopes to take yet one more swing at collecting a cool $2 billion for alleged

wrongs from 25 years ago.  There is simply no plausible way to make sense of Plaintiff's claims.

The Amended Complaint is a textbook example of a complaint that should be dismissed under

the *Twombly/Iqbal* plausibility standard.

    B.    <u>Plaintiff Fails to State Plausible Claims Against the Other Individual Defendants</u>

       The Amended Complaint is similarly implausible against the individual named

defendants beyond Westreich and Singer, because it simply does not allege how these defendants

wronged Plaintiff.   None of the causes of action asserted against Shira, Adam, Tryad, Coby,

Affordable Housing and Delancy are independent – rather, they all are derivative of Westreich's

and/or Singer's alleged wrongdoing.  Because the Amended Complaint provides insufficient

facts – and often no facts at all – about these defendants to satisfy the *Twombly/Iqbal* plausibility

standard, the Amended Complaint must be dismissed against them.

       To state a claim for breach of contract, a plaintiff must plead (1) the existence of a

contract between the parties (2) plaintiff's performance of contractual duties or excuse from

29

nonperformance (3) defendant's breach of that contract, and (4) damage to plaintiff resulting

therefrom. *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (Cal. 1968); *Low v. LinkedIn Corp.*,

900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012).

        To state a claim for breach of fiduciary duty, a plaintiff must allege (1) the

existence of a fiduciary relationship, (2) breach of that fiduciary duty, and (3) damage

proximately caused by the breach. *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158

Cal. App. 4th 226, 244 (2007); *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp. 2d 1101, 1137

(C.D. Cal. 2003).

        The elements of fraud are (1) misrepresentation, (2) knowledge of falsity,

(3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the

misrepresentation, and (5) resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638

(1996). Fraud must be pled specifically; general and conclusory allegations do not suffice. *Id*. at

645. *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009).

        To state a claim under RICO, Plaintiff must allege (1) conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity. *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th

Cir. 2008). "Where RICO is asserted against multiple defendants, a plaintiff must allege at least

two predicate RICO acts by each defendant." *In re Wellpoint Out-of-Network "UCR" Rates

Litig.*, 865 F. Supp.2d 1002, 1035 (C.D. Cal. 2011) (*citing United States v. Persico*, 832 F.2d

705, 714 (2d Cir. 1987)).[12]

---

[12]     Although Plaintiff alleges, with no explanation, that certain Defendants aided and abetted

Westreich and Singer, he does not advance a cause of action for aiding and abetting. Even if he

did, no such cause of action could survive. Aiding and abetting requires actual knowledge and

substantial assistance (*see, e.g., Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144-53

1.    <u>The Amended Complaint is Implausible as to Shira Westreich</u>

Even if service on Shira were proper (it was not), the Amended Complaint fails to allege a cause of action against her.  Though Plaintiff conclusorily asserts that Shira assisted her ex-husband in concealing his alleged wrongdoing from Plaintiff, the Amended Complaint makes no allegations about what Shira actually did to assist Westreich.  Indeed, the entirety of Plaintiff's allegations regarding Shira are:

- Shira served as the President of Tryad.  Am. Compl. ¶¶ 3, 26.

- In 1991, Shira pleaded with Plaintiff to employ Westreich.  Am. Compl. ¶ 75.

- Shira acknowledged that Plaintiff helped Westreich get rich and helped her family financially.  She thanked Plaintiff for helping her family in the early 1990s.  Am. Compl. ¶ 26.

- Shira invested in over 100 real estate transactions with funds from the sale of the properties in question in this litigation.  Moreover, Westreich used Shira to facilitate and close on various real estate transactions (not involving Plaintiff).  Am. Compl. ¶ 92.

- In 1990, Westreich transferred his ownership interest in an apartment located at 210 W. 90th Street to Shira.  Am. Compl. ¶ 74.

- Shira sent a New Year card to Plaintiff in prison in 2002 (Am. Compl. ¶109) and accepted a call from Plaintiff in 2004.  Am. Compl. ¶ 112.

---

(2005), and there are no such allegations for any defendant other than Westreich and Singer (who are the alleged primary violators).  Further, the Ninth Circuit does not recognize a private right of action for aiding and abetting RICO.  *See, e.g. Leyvas v. Bank of Am. Corp. (In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.)*, 601 F. Supp. 2d 1201, 1219 (S.D. Cal. 2009); *Urenia v. Public Storage*, Civ. Action No. 13-01934 DDP (AJWx), 2014 U.S. Dist. LEXIS 70647, *18 (C. D. Cal. May 22, 2014). *See also DeFalco v. Bernas*, 244 F.3d 286, 329-30 (2d Cir. 2001) (affirming district court's dismissal of a civil aiding and abetting RICO claim).

Even assuming these allegations were true, there are absolutely no allegations in the Amended Complaint of any contract between Shira and Plaintiff; of conceivable fiduciary relationship between Shira and Plaintiff; of any misrepresentation that Shira ever made to Plaintiff; nor any involvement in a RICO enterprise or acts in furtherance thereof.  Consequently, the Amended Complaint against Shira must be dismissed in its entirety.

        2.      The Amended Complaint is Implausible as to Adam Westreich

Similarly, the Amended Complaint makes no mention of how Adam, Westreich's now 33-year-old son, supposedly wronged Plaintiff.  All Plaintiff alleges is that Adam is the vice president of Tryad, and serves as a control person or chief operating officer at Affordable Housing.  Am. Compl. ¶¶ 4, 26.  Like Shira, Adam also allegedly thanked Plaintiff for helping Westreich get on his feet and urged his father to visit Plaintiff in prison in 2009 and 2014.  Am. Compl. ¶ 26.  Adam also allegedly works for his father, and invested in real estate transactions with the proceeds of the sale of the properties at issue in this matter.  Am. Compl. ¶¶ 92, 122.

As is the case with Shira, there is no reference in the Amended Complaint to any contract or agreement between Adam and Plaintiff; any conceivable fiduciary relationship between Adam and Plaintiff; any misrepresentation that Adam ever made to Plaintiff; or any alleged involvement in the alleged RICO enterprise.  Nor could there be:  Plaintiff's alleged wrongs took place between 1986 and 1997 – between the time Adam was three and fourteen years old.  It is beyond implausible to allege that an elementary school student was committing predicate RICO acts and breaching his fiduciary duties in various real estate partnerships.

        3.      The Amended Complaint is Implausible as to the Corporate Defendants

Plaintiff includes Tryad, Coby, Affordable Housing, and Delancy as defendants in this case without alleging anything at all about their supposedly wrongful actions.  All that

Plaintiff mentions about Tryad is that Westreich, Shira, and Adam have operated it.  Am. Compl. ¶¶ 2, 3, 4, 26.  The only reference to Coby is that Westreich formed it with proceeds from the sale of the properties at issue in this case.  Am. Compl. ¶ 90.  The only mention of Delancy is the allegation that it is a New York corporation controlled by Singer and Westreich (Am. Compl. ¶ 15).  But Plaintiff has not pled any facts to support that these three entities actually did anything, much less anything that would satisfy any of the four stated causes of action.

The only substantive allegation against Affordable Housing is that it purchased the general partner interests owned by Citi Equity Group following the bankruptcy proceedings that divested Plaintiff of any interests in the properties later sold by Westreich and Singer.  Am. Compl. ¶ 23.  But Plaintiff does not plead any facts sufficient to suggest that Affordable Housing did anything wrong, much less satisfy the requisite elements of any of the four causes of action. Thus the Amended Complaint against Affordable Housing cannot survive either.

## V.   SHIRA WESTREICH HAS NOT BEEN PROPERLY SERVED, AND SHOULD BE DISMISSED

Even if not dismissed on statute of limitations grounds or because of the implausibility of the allegations, the Amended Complaint as against Shira Westreich should be dismissed for improper service.

On Saturday, January 14, 2017, a person left two summons and complaints for Shira with Leslie Westreich's doorman at his Manhattan address.  *See* Declaration of Shira Westreich dated February 17, 2017 ("Shira Decl.") ¶ 2; Dkt # 55 (return of service). Additionally, service by USPS was attempted on Shira at that same Manhattan address and rejected.  Plaintiff knows that Westreich and Shira have separated; the Amended Complaint refers to Shira as Westreich's "ex" or "then" wife (¶¶ 74, 92).  Plaintiff (himself a lawyer) knew that service upon Shira at Westreich's current address would not be proper.

Shira Westreich and Leslie Westreich were married, but separated over three years ago.  *See* Shira Decl. ¶ 3.  Shira no longer lives at the residential location at which she was served, and she has not lived there for the last three years.  *See id.*

A person also attempted to serve Shira in Greenpoint, Brooklyn, at Westreich's office.  *See* Shira Decl. ¶ 2; Dkt # 54 (return of service).  Shira does not work there, and has never worked there.  *Id.* ¶ 4.  Shira did not authorize anyone in New York to accept service of legal papers on her behalf.  *Id.* ¶ 8.   Plaintiff has made no other attempts to serve Shira.  *Id.* ¶ 9.  Thus, Shira was not served by the Court's service deadline for this Amended Complaint, and at the very least, she should be dismissed.

## CONCLUSION

For the reasons set forth above, the Court should enter an Order dismissing the Amended Complaint in its entirety, with prejudice, and for such other and further relief as is just and proper.

Dated: New York, New York
        February 21, 2017

                            MORRISON COHEN LLP


                            By:      /s/ Jason P. Gottlieb
                                    Y. David Scharf
                                    Mary E. Flynn
                                    Jason P. Gottlieb
                                    909 Third Avenue
                                    New York, New York 10022
                                    (212) 735-8600
                                    *Attorneys for Defendants Leslie Westreich,*
                                    *Shira Seidel Westreich, Adam Westreich,*
                                    *Baruch Singer, Tryad, Inc., The Coby*
                                    *Group, LLC, and Affordable Housing LLC*