UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**GARY LEFKOWITZ,**

**Plaintiff,**

**- against -**

**LESLIE WESTREICH, ET AL.,**

**Defendants.**

**16-CV-6845 (JGK)**

**MEMORANDUM OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

The plaintiff, Gary Lefkowitz, appearing pro se, filed this action against the defendants Leslie Westreich (“Westreich”), Shira Seidel Westreich (“Shira”), Adam Westreich (“Adam”), Baruch Singer (“Singer”), Tryad, Inc. (“Tryad”), The Coby Group, LLC (“Coby”), and Affordable Housing LLC (“Affordable Housing”) for breach of contract, breach of fiduciary duty, fraud, and for violating the Racketeer Influenced and Corrupt Organizations Act (“RICO”), 18 U.S.C. §§ 1961 et seq. The defendants now move to dismiss the claims in the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

[1] The Amended Complaint names as defendants “Triad, Inc. a New York Corporation” and “the Triad Group, LLC.” According to the defendants, the former does not exist, and the latter appears to refer to Tryad Group, LLC, a company controlled by Westreich. The plaintiff also names as a defendant Delancy Industrial Re-Hab Corp., which, according to the defendants, does not exist. The motion to dismiss is brought on behalf of Westreich, Shira, Adam, Singer, Tryad, Coby, and Affordable Housing.

**I.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.; see also Springer v. U.S. Bank Nat'l Ass'n, No. 15-CV-1107 (JGK), 2015 WL 9462083, at *1 (S.D.N.Y. Dec. 23, 2015).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced

in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Energy Intelligence Grp., Inc. v. Canaccord Genuity, Inc., No. 16-CV-8298 (JGK), 2017 WL 1967366, at *1 (S.D.N.Y. May. 11, 2017).

**II.**

The following facts alleged in the complaint are accepted as true for the purposes of this motion to dismiss.

In 1984, the plaintiff formed Citi Equity Group ("CEG") to act as a corporate general partner in certain limited partnerships formed by the plaintiff in relation to real estate investments. (Am. Compl. ¶¶ 44-45.) The plaintiff alleges that from 1984 through 1994, Westreich represented the plaintiff in legal matters related to real estate investments. (Am. Compl. ¶¶ 28-34.)

The plaintiff left CEG in 1995, and was subsequently sentenced to 293 months in prison upon being convicted for using CEG as a vehicle to commit fraud; specifically, the plaintiff was convicted on 43 different counts for mail and wire fraud, managing a continuing financial crimes enterprise, defrauding an agency of the United States, aiding in the preparation of false tax returns, making a false statement in connection with a

bankruptcy case, and obstruction of justice. See U.S. v. Lefkowitz ("Lefkowitz I"), 125 F.3d 608, 612, 619, 621 (8th Cir. 1997) (affirming conviction on 43 of 45 counts, including for making a false statement in connection with a bankruptcy case because a "jury could reasonably find that Lefkowitz lied to the bankruptcy court to cover up his effort to profit from the prior embezzlement of CEG property") reh'g and suggestion for reh'g en banc denied, (8th Cir. Apr. 16, 1998), reh'g and suggestion for reh'g en banc denied, (8th Cir. May 6, 1998), cert. denied, 118 S. Ct. 1527 (1998); U.S. v. Lefkowitz ("Lefkowitz II"), Nos. 97-4248, 97-4249, 1999 WL 597232, at *1 (8th Cir. Aug. 9, 1999), cert. denied, 120 S. Ct. 1246 (2000), reh'g denied 529 U.S. 1125 (2000); Lefkowitz v. U.S., 446 F.3d 788 (8th Cir. 2006) (affirming denial of post-conviction relief), reh'g and reh'g en banc denied, (8th Cir. 2006), cert. denied, 127 S. Ct. 843 (2006).

CEG was forced into Chapter 11 bankruptcy in May 1994. Lefkowitz I, 125 F.3d at 619. The plaintiff challenged aspects of the bankruptcy proceedings but the challenge was ultimately unsuccessful. See Lefkowitz v. Citi-Equity Grp., Inc., 146 F.3d 609, 611–12 (8th Cir. 1998), cert. denied, 525 U.S. 1154 (1999).

In July of 1995, as part of the bankruptcy proceedings, CEG submitted a motion to the United States Bankruptcy Court for the District of Minnesota requesting approval for the assumption and

assignment of certain CEG partnership interests to the entity Affordable Housing, which, according to the plaintiff, is controlled by Westreich and Singer. (See Gottlieb Decl. Ex. 3; Am. Compl. ¶ 23.) The motion to the Bankruptcy Court represented that "Gary M. Lefkowitz holds no interest in and exercises no control over [Affordable Housing]. Mr. Lefkowitz will have no role in managing the Partnerships if the proposed assignment . . . is approved by the Bankruptcy Court." (Gottlieb Dec. Ex. 3, at 4.) The Bankruptcy Court, in part "[b]ased upon the verified motion," approved the assumption and assignment of the CEG interest to Affordable Housing on August 8, 1995. (See Gottlieb Dec. Ex. 4; Am. Compl. ¶ 96.)

Despite CEG's representations to the Bankruptcy Court, at some point in 1995, the plaintiff alleges that he entered into a "business arrangement" with Westreich and Singer in which the plaintiff would "not oppose" the purchase of the plaintiff's interest in CEG by Westreich and Singer, such that Westreich and Singer would have a 25% ownership interest while Lefkowitz would retain a 75% ownership interest in certain CEG connected entities that held real estate properties in New York City. (Am. Compl. ¶ 2.) No copy of this purported business arrangement is provided by the plaintiff.

The plaintiff alleges that on or around November 24, 1997, Westreich and Singer, through the use of the entities including

Affordable Housing and Coby, finalized a series of transactions that gave them complete control of certain real estate properties in New York City and effectively eliminated any interest that the plaintiff purportedly had in these entities and properties. (Am. Compl. ¶¶ 51-55, 95-99.)

On February 17, 2004, the plaintiff, while serving his federal sentence, wrote a letter to Westreich and Singer in which the plaintiff acknowledged his "removal as the individual General Partner" of CEG but asserted that he maintained an interest as a limited partner. (Gottlieb Dec. Ex. 8 at 1.)[2] In the letter, the plaintiff complained that "Mr. Westreich has refused to accept my telephone calls. He has also refused to accept the calls of my cousin . . . regarding my interests in the partnerships." (Gottlieb Dec. Ex. 8 at 2.) The plaintiff demanded annual K-1s and other financial information related to his alleged partnership interests, and stated that if he did not receive this information by March 5, 2004, he would "file an action to compel this information. . . ." (Gottlieb Dec. Ex. 8 at 3.) According to the plaintiff, shortly after sending the letter, Westreich called the plaintiff and "assured [the plaintiff] that he still was the General Partner in each of the

[2] The Amended Complaint contains two sets of paragraphs numbered 101–17. The Court will cite to paragraphs in the first set with the suffix "A," and those in the second set, if applicable, with the suffix "B." The plaintiff references this letter in ¶ 110A of the Amended Complaint.

Partnerships and nothing had come down to change that and Lefkowitz should relax and understand that Leslie Westreich and Baruch Singer were looking after Lefkowitz'[s] interest. . . ." (Am. Compl. ¶ 110A.)

In May 2005, the plaintiff sent a letter to Westreich, expressing concern because the plaintiff saw a newspaper advertisement indicating that certain New York real estate properties were in the process of a co-op or condominium conversion, but that the plaintiff was not consulted in this decision. (See Gottlieb Decl. Ex. 9 at 1-2; Am. Compl ¶ 113A.) He demanded a "copy of any condo or coop conversion plan," asserted that Westreich "owe[d] [the plaintiff] a duty of disclosure," and requested an accounting. (Gottlieb Dec. Ex. 9 at 2.) The plaintiff then stated: "I do not want this to spin out of control and into a courtroom." (Gottlieb Dec. Ex. 9 at 2; see Am. Compl. ¶ 113A.) According to the plaintiff, in a subsequent phone call, Westreich assured the plaintiff that he "need not be concerned." (Am. Compl. ¶ 113A.)

In August 2005, upon seeing another newspaper advertisement confirming conversion plans for the properties, the plaintiff again wrote to Westreich. (Gottlieb Dec. Ex. 10; Am. Compl. ¶ 114A.) He stated that despite seeing the confirmed conversion plans, he had "not received any information from [Westreich]." (Gottlieb Dec. Ex. 10.) The plaintiff also stated: "I have been

calling your cell number but you have not been answering. I do not know if you are out of the country, sick, or avoiding me." (Gottlieb Dec. Ex. 10.) According to the plaintiff, Westreich later reassured him that there were no conversion plans. (Am. Compl. ¶ 114A.)

In December 2005, the plaintiff wrote a letter to Westreich discussing, among other things, the plaintiff's plan to file a lawsuit against certain entities -- not parties to this litigation -- "for breach of fiduciary duty, fraud, breach of contract, RICO, tortious interference with contract, etc[.] for taking the position that [the plaintiff] somehow lost [his] interest in the Limited Partnership as a removed General Partner." (Lefkowitz Decl. Ex. 56; see Am. Compl. ¶ 115A.) It appears that the plaintiff eventually filed this lawsuit in 2010, but the claims were denied on statute of limitations grounds. See Lefkowitz v. Wirta, 2014 WL 129634, at *8, *18 (Cal. Ct. App. Jan. 15, 2014) (unpublished) (affirming the dismissal of the plaintiff's claims), reh'g denied, (Feb. 7, 2014), review denied, (Apr. 9, 2014), cert. denied, 135 S. Ct. 713 (2014).

In June of 2016, the plaintiff filed this action in the Superior Court of the State of California alleging breach of contract, breach of fiduciary duty, fraud and RICO claims, and seeking damages in excess of $2,000,000,000, treble damages

under RICO, and punitive damages. (See Docket No. 1.) Thereafter, the case was removed to the United States District Court for the Central District of California and subsequently transferred to this Court. (See Docket No. 1; Docket No. 26.) The defendants[3] now move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

**III.**

**A.**

The defendants argue that each claim is barred by the statute of limitations.[4] The plaintiff responds by arguing that

[3] The plaintiff's Amended Complaint focuses on alleged acts committed by Westreich and Singer, but also names Tryad, Coby, and Affordable Housing, which the plaintiff alleges are entities used by Westreich and Singer to extinguish the plaintiff's partnership interest. The Amended Complaint also names Westreich's wife and son, Shira and Adam. Shira and Adam's connection to the factual allegations alleged in the complaint are unclear; the plaintiff sues each as a "co-conspirator" and an "aider and abettor." (See Am. Compl. ¶¶ 3-4.)

[4] While not argued by the defendants, it is doubtful at best whether the alleged "business arrangement" between the plaintiff, Westreich, and Singer is an enforceable contract as a matter of law. See In re Cromer, 153 B.R. 391, 397-98 (Bankr. E.D.N.Y. 1993)(concluding that an alleged side agreement, pursuant to which purchaser of corporate real estate would make payments to corporate officer in his individual capacity, was void as contrary to public policy); cf. Brisbane Lodging, L.P. v. Webcor Builders, Inc., 157 Cal. Rptr. 3d 467, 477 (Cal. Ct. App. 2013) (noting that for a contract to be contrary to public policy under California law, "courts must carefully inquire into the nature of the conduct, the extent of public harm which may be involved, and the moral quality of the conduct of the parties in light of the prevailing standards of the community").

Here, it appears that representations were made to the Bankruptcy Court in 1995 that the plaintiff would hold "no interest" and have "no role" in Affordable Housing, the purchaser of the CEG partnership interests at issue, and the Bankruptcy Court approved the sale in part "[b]ased upon the verified motion." (See Gottlieb Dec. Ex. 3, at 4; Gottlieb Dec. Ex. 4.) The plaintiff now seeks damages related to an

the statute of limitations on his claims should be tolled based on a variety of different theories.

Under California law, the statute of limitations generally begins when a cause of action "accrues," in other words, "on the date of injury." See Bernson v. Browning-Ferris Industries, 30 Cal. Rptr. 2d 440, 442 (1994) (internal citations omitted); see also Aryeh v. Canon Business Solutions, Inc., 151 Cal. Rptr. 3d 827, 832 (2013) (noting that a "cause of action accrues when [it] is complete with all of its elements—those elements being wrongdoing, harm, and causation.").

The plaintiff argues that the discovery rule provides a basis to toll the statute of limitations here. The discovery rule delays the accrual date "until the plaintiff is aware of [his] injury and its negligent cause." See Bernson, 30 Cal. Rptr. 2d at 442 (internal citations omitted). "[T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof – when, simply put, he at least 'suspects . . . that someone has done something wrong' to him, 'wrong' being used, not in any technical sense, but rather

alleged "business arrangement," the terms of which appear to be in conflict with representations made to the Bankruptcy Court. While serious questions remain as to whether such a contract is enforceable as a matter of public policy, because the plaintiff's claims are plainly barred under the relevant statutes of limitations, it is unnecessary to reach the issue.

in accordance with its ‘lay understanding.’” Norgart v. Upjohn Co., 21 Cal. 4th 383, 397–98 (1999) (citations omitted). A plaintiff has reason to suspect wrongdoing when he has notice or information of circumstances that would put a reasonable person on inquiry. Id. at 398. Even if a plaintiff does not know the specific facts necessary to establish a cause of action, he must “seek to learn the facts necessary to bring the cause of action in the first place — he cannot wait for them to find him and sit on his rights; he must go find them himself if he can and file suit if he does.” Id. (internal citation and quotation marks omitted).

Here, it is plain that the plaintiff had reason to suspect he had been wronged by the defendants as early as February 17, 2004. It is on that date that he wrote to Westreich and Singer threatening litigation if he did not receive K-1 forms and other financial documents related to his purported partnership interests. Indeed, the California Court of Appeal has already concluded –- in a case brought by this plaintiff alleging breach of contract, breach of fiduciary duty, fraud, and RICO claims -- that the plaintiff’s contemplation of filing a lawsuit upon failing to receive K-1 forms began the accrual of his causes of action. See Wirta, 2014 WL 129634, at *13 (unpublished)[5]

[5] California Court Rule 8.1115(a) states that “an opinion of a California Court of Appeal . . . that is not certified for publication

(concluding that assurances from a defendant that the plaintiff remained a partner was insufficient to further toll the statute of limitations because "[i]f [the plaintiff] was not receiving such a significant document from every partnership in which he believed he still had an interest, he had reason for far more than a suspicion of wrongdoing"). Accordingly, the plaintiff's causes of actions related to his alleged loss of his partnership interests began to accrue as of February 17, 2004.

**B.**

The plaintiff maintains that the statute of limitations for his claims should be tolled under the fraudulent concealment doctrine, which states that a "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." See Bernson, 30 Cal. Rptr. 2d at 442. A "close cousin of

---

or ordered published must not be cited or relied on by a court or a party in any other action." However, unpublished decisions from the California Court of Appeal may be relied upon as persuasive authority. See Am. Zurich Ins. Co. v. Country Villa Serv. Corp., No. 14-CV-03779 (RSWL), 2015 WL 4163008, at *12 n.24 (C.D. Cal. July 9, 2015) ("[F]ederal courts may consider unpublished California opinions as persuasive authority.") (citing Emp'rs Ins. of Wausau v. Granite St. Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003)); see also Washington v. Cal. City Correction Ctr., 871 F. Supp. 2d 1010, 1028 n.3 (E.D. Cal. 2012) ("The Court may cite unpublished California appellate decisions as persuasive authority.").

the discovery rule," the fraudulent concealment doctrine "is an equitable principle designed to effect substantial justice between the parties." Id.

As explained above, the plaintiff plainly harbored deep suspicions about his alleged partnership interests and the status of his alleged business arrangement with Westreich and Singer, mentioning the prospect of litigation in 2004 and 2005, complaining about Westreich's ignoring him on numerous occasions, and discussing filing a lawsuit very similar to this one against certain entities for allegedly extinguishing his interest in partnerships related to CEG. Faced with this information, the plaintiff should have exercised reasonable diligence as of February 17, 2004 when these suspicions first became apparent.[6]

Moreover, as a matter of equity, "substantial justice" would not be advanced by tolling the statute of limitations to permit the plaintiff to pursue claims that would be in direct conflict with representations made to the Bankruptcy Court about the plaintiff's having "no interest" and playing "no role" in

---

[6] The plaintiff's lack of reasonable diligence also forecloses any argument that the statute of limitations should be tolled under the fiduciary tolling doctrine. See Electronic Equip. Express, Inc. v. Donald H. Seiler & Co., 176 Cal. Rptr. 239, 251 (Cal. Ct. App. 1981) (noting that under the fiduciary tolling doctrine, "the limitations period for professional negligence begins to run when the negligence is discovered or with reasonable diligence could have been discovered" (citations omitted)).

the purchaser of CEG partnership interests. The plaintiff's argument to toll the statute of limitations on the grounds of fraudulent concealment is without merit.

**C.**

The plaintiff also argues that the doctrine of equitable estoppel should estop the defendants from asserting a statute of limitations defense. Equitable estoppel applies to "circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." Lantzy v. Centex Homes, 2 Cal. Rptr. 3d 655, 673 (2003). To invoke the doctrine of equitable estoppel, a plaintiff must plead facts showing that the defendants' conduct "actually and reasonably induced plaintiffs to forbear" filing suit. Id. at 674.

The plaintiff alleges that Westreich induced the plaintiff to refrain from suing by visiting the plaintiff in prison, sending the plaintiff books, letters, and newspapers, and reassuring the plaintiff that his interests were safe. But the plaintiff's Amended Complaint and the documents incorporated by reference show that it was not reasonable for the plaintiff to forego filing suit until 2016. The plaintiff threatened to sue on February 17, 2004 because he had not received K-1 forms and

other financial information related to his alleged partnership interests, but does not allege that he ever received any such documentation. He again made veiled threats of a lawsuit in 2005 and demanded conversion plans related to the real estate, but does not allege that he ever received any such plans. Instead, he simply alleges only that Westreich sent gifts and made assurances that the plaintiff "would be a very very rich man when he was released from prison." (Am. Compl. ¶ 140.) In the face of the evidence before him indicating that he no longer had a partnership interest, the plaintiff was not "reasonably induced" to forego filing suit. Lantzy, 2 Cal. Rptr. 3d at 674. The plaintiff's argument that the defendants should be equitably estopped from asserting a statute of limitations defense is without merit.[7] See Wirta, 2014 WL 129634, at *15-16 (rejecting

[7] The plaintiff asserts a variety of other theories to argue that the statute of limitations should be tolled, but each are without merit.

There is no basis to toll the statute of limitations on the basis of the continuous representation doctrine, which "applies only so long as [legal] representation continues 'regarding the specific subject matter in which the alleged wrongful act or omission occurred." Lockton v. O'Rourke, 109 Cal. Rptr. 3d 392, 400 (2010) (emphasis and citation omitted). The plaintiff's own Amended Complaint asserts that Westreich was disbarred in 1995, (see Am. Compl. ¶ 85), and the plaintiff does not allege that Westreich represented the plaintiff in legal matters after 1994, (see Am. Compl. ¶¶ 33-34). Accordingly, the plaintiff cannot invoke the continuous representation doctrine to toll the statute of limitations here.

The continuing conspiracy doctrine, which tolls the statute of limitations until the "last overt act" of the alleged conspiracy, is likewise inapplicable. See State ex rel. Metz v. CCC Info. Servs., Inc., 57 Cal. Rptr. 3d 156, 168-69 (Cal. Ct. App. 2007). To the extent that an alleged conspiracy to extinguish the plaintiff's interests existed in this case, the "primary purpose of the alleged

this plaintiff's argument that defendants should be equitably estopped from relying on a statute of limitations defense).

The causes of action alleged by the plaintiffs began accruing on February 17, 2004, when it became apparent that the plaintiff "suspect[ed] . . . that someone ha[d] done something wrong" to him, and had "reason to suspect" based on "notice or information of circumstances [that would] put a reasonable person on inquiry.'" See Norgart, 21 Cal. 4th at 397–98. The plaintiff's remaining arguments seeking to toll the statute of limitations are without merit.

**V.**

The plaintiff alleges breach of contract, breach of fiduciary duty, fraud, and violations of RICO. The Court addresses each in turn.

---

conspiracy had been realized" by 1997 when Westreich and Singer allegedly eliminated the plaintiff's interests. Accordingly, "the statute of limitations on the conspiracy commence[d] running, and subsequent conduct related to the conspiracy, such as flight or concealment, does not constitute 'overt acts' sufficient to recommence the statutory period." Id. (citation omitted). There is therefore no basis to toll the statute of limitations pursuant to the continuing conspiracy doctrine.

The plaintiff also makes a vague reference to the continuing accrual doctrine, which states that "[w]hen an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs." See id. at 168 (internal citations omitted). Here, however, the plaintiff "has not alleged facts that show a continuing violation" because his causes of action "are based on . . . a loss of partnership interests that he believed were protected." Wirta, 2014 WL 129634 at *17.

**A.**

The plaintiff alleges that the defendants Westreich and Singer breached the alleged "business arrangement" between the plaintiff, Westreich, and Singer for 75% of the ownership interests purchased from CEG.

"An action upon any contract, obligation or liability founded upon an instrument in writing" must commence within four years of the action. See Cal. Code Civ. Proc. § 337(1). But "an action upon a contract, obligation or liability not founded upon an instrument of writing" must commence within two years of the action. See Cal. Code Civ. Proc. § 339(1).

Under California law, if "at the time the cause of action accrued" a plaintiff is "imprisoned on a criminal charge," the statute of limitations on a cause of action is tolled for a period "not to exceed two years." Cal. Code Civ. Proc. § 352.1(a).

Any cause of action related to the defendants' alleged elimination of the plaintiff's partnership interests began to accrue on February 17, 2004, when the plaintiff expressed suspicions regarding his interests and threatened to sue Westreich and Singer to compel them to provide certain financial documents. Because the plaintiff was incarcerated as of that date, the statute of limitations was tolled for two years, and

began to accrue on February 17, 2006. The plaintiff does not claim that his alleged "business arrangement" was memorialized in writing, but even applying the longer four year statute of limitations applicable to a breach of contract action for written agreements, the plaintiff was required to file suit on this breach of contract claim by February 17, 2010.[8] Accordingly, the plaintiff's breach of contract claim related to his partnership interests was time-barred when he filed suit in June of 2016.

**B.**

The plaintiff also alleges a breach of fiduciary duty. The statute of limitations for a breach of fiduciary duty in California is four years. See Thomson v. Canyon, 129 Cal. Rptr. 3d 525, 534 (Cal. Ct. App. 2011) ("The Code of Civil Procedure

---

[8] Although unmentioned in his opposition to the motion to dismiss, the plaintiff's Amended Complaint alleges another claim for breach of contract related to $500,000 that the plaintiff allegedly entrusted to Westreich in 1993 or 1994 –- prior to the plaintiff's incarceration. The Amended Complaint does not specify when repayment of this loan was due. The loan is therefore one "payable on demand," which is "deemed payable at . . . inception, and the statute begins to run from such time." Buffington v. Ohmert, 61 Cal. Rptr. 360, 360 (Cal. Ct. App. 1967); see also Ames v. Ames, No. 13-CV-0405 (TOR), 2016 WL 7015642, at *2 (E.D. Wash. Nov. 30, 2016) (noting that under California law, a loan is payable on demand when a loan "does not state any time of payment"). Accordingly, the statute of limitations on the loan began to run, at the latest, in 1994. Even applying the longer four-year statute of limitations applicable to a breach of contract action for written agreements, the plaintiff was required to file suit, at the latest, in 1998. Accordingly, the plaintiff's breach of contract claim for the $500,000 allegedly entrusted to Westreich, filed as part of the plaintiff's suit in 2016, is time-barred.

does not specify a statute of limitations for breach of fiduciary duty. The cause of action is therefore governed by the residual four-year statute of limitations in Code of Civil Procedure section 343.”). After tolling the statute of limitations for two years because of the plaintiff’s incarceration, his breach of fiduciary duty claim began to accrue on February 17, 2006. The plaintiff was required to bring his breach of fiduciary claim by February 17, 2010. Accordingly, his breach of fiduciary claim, filed in June of 2016, is time-barred.

**C.**

The plaintiff alleges fraud, which is subject to a statute of limitations under California law of three years from the date of the discovery of the facts constituting the fraud. Cal. Code Civ. Proc. § 338(d). Due to the plaintiff’s incarceration, this cause of action began to accrue on February 17, 2006 and the plaintiff was therefore required to file suit by February 17, 2009. Because this claim was filed in June of 2016, it is time-barred.

**D.**

The plaintiff alleges civil violations of RICO, which is subject to a four year statute of limitations. See Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987). A cause of action under RICO accrues when the plaintiff

suffers an injury, and the statute of limitations begins to run when the plaintiff discovers or reasonably should have discovered that injury. Koch v. Christie's Int'l PLC, 699 F.3d 141, 148-49 (2d Cir. 2012). The plaintiff's RICO claim thus began to accrue on February 17, 2004[9], and the plaintiff was required to file suit by February 17, 2008. Accordingly, the filing of the plaintiff's RICO claims in June of 2016 is time-barred.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit.[10] For the

---

[9] It appears that the California law permitting the tolling of a statute of limitations for the period when a litigant is incarcerated is inapplicable to the plaintiff's civil RICO claim. See Lakin v. Skaletsky, No. 08–C–842 (JWD), 2008 WL 4662846 at *5 (N.D. Ill. Oct. 15, 2008) (concluding that "Illinois savings statute is inapplicable" for a civil RICO claim in federal court because civil RICO is "a federal cause of action with federally defined statute of limitations"). In any event, even if the statute of limitations for the plaintiff's civil RICO claim were tolled for two years due to the plaintiff's incarceration, the plaintiff was required to file suit by February 17, 2010, making his June 2016 civil RICO claim time-barred.

[10] As part of his opposition to the motion to dismiss, the plaintiff has submitted an array of extraneous documents. The plaintiff has also submitted a sur-reply. Both are improper. See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nig., 265 F.R.D. 106, 122-123 (S.D.N.Y. 2010) ("Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss."); Kapiti v. Kelly, No. 07-CV-3782(RMB)(KNF), 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) ("Allowing parties to submit surreplies is not a regular practice that courts follow, because such a procedure has the potential for placing a court 'in the position of refereeing an endless volley of briefs.'"). In any event, the

reasons explained above, the defendants' motion to dismiss is **granted**.

The Clerk is directed to enter judgment dismissing the Amended Complaint. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated: New York, New York**
**August 11, 2017**

_____________/s/_______________
**John G. Koeltl**
**United States District Judge**

improperly filed documents and sur-reply do not change the result in this case.